# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

Franklin Mendez,

Plaintiff,

Civil Action No. _____

v.

Molly Wasow Park Commissioner, in Official and Unofficial capacity of New York City Department of Social Services; Human Resources Administration; and Department of Homeless Services,

Defendant.

---

## COMPLAINT FOR VIOLATION OF THE FAIR HOUSING ACT, AMERICANS WITH DISABILITIES ACT, THE REHABILITATION ACT, *OLMSTEAD v. L.C., 527 U.S. 581 (1999)* INTEGRATION MANDATE RULING, AND VIOLATION OF THE *SANDRA BUTLER ET AL. V. CITY OF NEW YORK ET AL., NO. 15-CV-3783 (RWS) (JLC) (S.D.N.Y. 2017)*, STIPULATION OF SETTLEMENT (CLASS ACTION)

Plaintiff, **Franklin Mendez**, is legally blind and registered with the State Commission for the Blind and hereby files this Complaint against Defendant, **Molly Wasow Park** Commissioner of New York City Department of Social Services; Human Resources Administration; and Department of Homeless Services, alleging violations of the **Fair Housing Act**, **Americans with Disabilities Act**, the **Rehabilitation Act**, Olmstead v. L.C., **527 U.S. 581 (1999)** integration mandate ruling, **Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action)** and related state and federal laws.

## INTRODUCTION

Your Honor, this case represents an egregious violation of the protections federal disability laws afford to one of our most vulnerable populations - the blind. For the blind, existence itself is a precarious state without proper accommodations - a sighted world full of obstacles, hazards, and

barriers that able-bodied individuals can easily overcome or remain oblivious to. My client's blindness is not a mere inconvenience - it's a fundamentally insecure way of being that society has an ethical and legal obligation to accommodate through accessibility...Which makes the Defendants' discriminatory conduct even more deplorable.

While numerous institutions bent over backwards to accommodate my client's disability, the Defendants erected discriminatory barrier after barrier that unlawfully marginalized and excluded him from equal housing opportunities solely because of his blindness.

What makes this conduct unconscionable is the profound disconnect between how my client's needs were accommodated across all other facets of life as a disabled individual actively seeking independence and inclusion - and the defendants' deliberate disregard and mistreatment of those very same needs when it came to housing.

Let me be direct - my client is the type of disabled individual these laws were intended to empower and protect. A young person managing their blindness admirably while pursuing higher education, advocating for their community, responsibly following approved processes to secure independence through housing accommodations...And yet he faced insurmountable discriminatory exclusion at every turn simply because the Defendant could not look past the disability he has accommodated everywhere else.

What makes the Defendant's discriminatory conduct toward my client even more repugnant, is that at the very same time they were actively erecting barriers to his accessibility needs, they were publicly touting their record, on affordable housing initiatives in a push to provide CityPHEPS vouchers to residents in need of subsidies.

As the defendant's own press release from December 21, 2024 at https://www.nyc.gov/site/dhs/about/press-releases/dss-commissioner-park-announces-key-agency-accomplishments-in-2023.pageURL states:

**DSS Commissioner Molly Wasow Park.** *"From connecting more households in shelter to permanent housing and further expanding CityFHEPS to <u>using social services contracts to support the creation of permanent housing</u> and replacing stolen public benefits, DSS has taken meaningful action to enhance the supports and services we offer. We have seen the positive impacts of these changes, and we look forward to building on these successes with all our partners in the new year."*

**(See Exhibit A).**

2 of 44

While paying lip service to creating more equal access to affordable housing opportunities, the Defendants willfully denied and delayed affording those very same housing accommodations they promised to my client - a blind individual who embodied the precise population they claimed to be empowering.

As news releases celebrated their purported efforts to ease housing burdens through rental assistance programs, my client's repetitive pleas for accessible, affordable housing suited to his disability went utterly disregarded in contravention of those very obligations under federal law. The Defendant also engaged in disparate treatment, accomodating other groups of individuals, miggrants, assalymn seekers, and still following the same disability laws., yet denying them to a U.S. born Citizen.

The Defendants' empty publicity signals a deliberate indifference, if not outright hypocrisy, when it came to ensuring legally-mandated equal housing access for a disabled individual like my client demonstrably in need of accommodations.

The City provided accommodation Ride services, Access-A-Ride.  His college prescribed eleven (11) separate auxiliary aids. Even the shelter granted seven (7) additional accommodations for his heightened blind needs. And yet, when my client tried to navigate the proper housing processes with a specialist's assistance, that same disability became the discriminatory basis for violating federal laws.

I urge the Court to contemplate for a moment being deprived of your home as a blind person...The isolation, loss of dignity, and fear one would experience without the accommodations to safely move about, live independently, or perform basic tasks in an unfamiliar, inaccessible environment. That is the inhuman discrimination my client endured for seven (7) excruciating months.

Over thirty (60) reasonable accommodation requests detailing his accessibility needs were systematically denied or ignored despite being submitted properly. Providers unlawfully withheld applications once they identified his blindness. And waitlist policies utterly disregarded federal mandates by consciously refusing to expedite his placement into an available accessible unit - a facially reasonable ask given his patent eligibility and need.

As this morally-bankrupt discrimination piled upon my client week after week, these government Defendant never once seemed to care about the human suffering and deprivations they were cavalierly inflicting on a blind individual simply pursuing his dreams of independent, integrated life. Their indifference speaks volumes about the need for this Court to be the voice of justice.

With accessible units concededly available and *being readily handed to body-abled miggrants asylum seekers and demonstic violence victims*, their unjustified inaction represented deliberate,

discriminatory disregard for the equal protections he was due as a disabled individual following approved processes.Their conduct culminated in the discriminatory outcome most anathema to disability laws - forcibly institutionalizing my client into a segregated shelter environment never intended to properly accommodate his precarious existence.

To add insult to injury, the Defendant when presented with unconverted medical documentation from numerous eye and rehabilitate professionals requesting for Plaintiff to be placed in a single room in a Manhattan shelter, failed to meet the reasonable accommodations standard per the precedent set in *Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action)*. Not only did the Defendant fail to honor the reasonable accommodations until compelled, but their eventual response was laden with a cynical twist. They begrudgingly offered a single room at a shelter on Randall's Island, a location so distant and inaccessible that it posed a treacherous journey for the plaintiff. This callous decision not only disrupted the vital services the Plaintiff direly needed but also demonstrated a blatant disregard for the recommendations of esteemed medical experts who had deemed such accommodations necessary for this legally blind individual.

In *Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement* it outlined the explictte steps and prcess the Defendant is to make for reasonable accommodations for disabled homeless individuals by placing them in shelters accessible to their medical providers, treatment programs, and other supportive services.

Plaintiff's situation directly parallels the issues addressed in *Butler.* Despite being legally blind and reliant on a network of vision care, rehabilitation, educational, and psychotherapy services concentrated in Manhattan, he was placed by the Defendants on Randall's Island - a location extremely remote and inaccessible given his disability and needs. Against a wealth of medical and rehabiltiative doctors treating this legally blind indiviiduals did the Defedant deny him his basic needs by law.

**Dr. Andrea Zimmerman**, Lighthouse Guild, Eye Specialist, stated:

*"It is my professional medical opinion that a private room placement would best accommodate Mr. Mendez's needs and allow him to care for himself safely. Additionally, as his low vision optometrist, I ask that you strongly consider shelter locations in Manhattan so that he may continue receiving specialized medical and rehabilitative services from Lighthouse Guild and partners at Visions Therapeutic Centers, SUNY Optometry where he is being treated by a retinal specialist without impediment."*

Dr., **Kamila Mikos**, Retinal Specialist from SUNY University Eye Center, at Advance Care Clinic, stated:

*"I am writing on behalf of mypatiant Franklin Mendez to request reasonable accomodations such that he be placed in a single room in a homeless shelter in manhattan so he can access his medical care. She went on to further emphasis the dangers of not honoring such accomodations, it would otherwise put him at risk for a having a retinal detachment if he falls or bumps into to something".*

Dr., **Mikos,** then went on to state *"Mendez is regulary followed up for his eye conditions at Advanced Care Clinic and Low Vision Clinic at University Eye Center in Manhattan. He would benefit from being in closer proximety to the locations of his medical services to ensure that he is able to more easialy and safely commute to his doctors appointments and safely return to the shelter before dark".*

Dr., **Mikos,** also emphasised *"this will ensure he attends programs like VISIONS in manhattan, and would also make sure he is able to make his appointments and recieve medical care and additional care he needs".*

**Dr. Susan Weinstein,** and part of **Mendez** Advanced Care Team at SUNY University Eye Center, at Advance Care Clinic, also endorsing the letter written by **Dr. Kamila Mikos** as the treating specialist, reiterated:

*"the importance of placing Mr. Franklin Mendez in a single room in a homeless shelter in Manhattan to ensure access to necessary medical care. As another medical professional involved in Mr. Mendez's treatment, Dr. Weinstein supports the recommendation for reasonable accommodations to mitigate the risk of retinal detachment and facilitate easier access to medical services and programs essential for Mr. Mendez's well-being and health management".*

**Susan Miller** from Lighthouse Guild, treating therapist for **Franklin Mendez**, stated:

*"Miller requested that he be placed in a shelter close to her office at 250 West 64th Street. As Mr. Mendez is legally blind and attends psychotherapy sessions in person every week, Mrs. Miller emphasized the vital importance of continuing this service consistently. She highlighted that, given his blindness, traveling long distances imposes significant stress and safety risks. Therefore, a proximal shelter placement is crucial for ensuring Mr. Mendez's access to care".*

**Susan Miller**, stated that;

*"given his blindness, traveling long distances imposes significant stress and safety risks. Therefore, a proximal shelter placement is crucial for ensuring Mr. Mendez's access to care".*

**Susan Miller** further emphasized that;

*"Mr. Mendez attends college courses near her office and pointed out the unreliability of Access-A-Ride. Given his reliance on this service and the challenges posed by its unreliability, it is imperative that Mr. Mendez be placed in a shelter close to her office to ensure he can access both his education and essential healthcare services without unnecessary barriers".*

**Ann De Shazo, the Director of VISIONS,** wrote a letter stating that:

*"Mr. Franklin Mendez attends multiple times during the week and emphasized that for accessibility reasons, it would be easier for him during this transition to be placed in a shelter in Manhattan".*

This endorsement underscores the practical necessity of accommodating Mr. Mendez's needs, particularly in facilitating his access to essential services and support systems provided by VISIONS.

By disregarding these well-substantiated accommodation requests from credible subject matter experts intimately familiar with Plaintiff's condition and care requirements, the Defendant have failed to fulfill their obligation to make reasonable accommodations as mandated by the ADA, Rehabilitation Act and the ***Butler*** precedent, instead Defendant chose to ignore, dismiss, and ultimately, inflict harm.

The extreme difficulty and heightened risks Plaintiff faces in traveling between Randall's Island and his lifeline of services in Manhattan poses a severe, undue burden that qualifies as discrimination by denying him the opportunity to benefit from a shelter to these services. This discriminatory treatment based on his disability violates the ADA's prohibitions.

Furthermore, in light of medical opinions warning about the potential for retinal detachment and other safety hazards if Plaintiff is not properly accommodated, the Defendants' actions display a callous disregard for his rights and well-being as a disabled individual under the law when they placed in a insufficient ADA complaint shelter in Randals Island.

As the ***Butler*** case underscored, disabled homeless persons cannot be treated worse than the non-disabled homeless when it comes to shelter assignment and accommodation. By placing Plaintiff in an exceedingly inaccessible and isolating shelter location against explicit medical advisories, the Defendant have perpetuated discrimination, violated his statutory rights, and undermined the core purpose of these civil rights laws - *to integrate disabled individuals fully into society.*

At its core, your Honor, this case will shape the very scope of what 'reasonable accommodation' means under federal disability laws. Whether public entities can effectively define it down and impose discriminatory institutionalization by willfully delaying and denying facially reasonable requests for

disability needs as fundamental as safe, accessible housing.

While the laws demand equal access, the Defendants denied it. While they require accommodations, the Defendants refused my client but provided them to others. While they protect integration, the Defendants forced harmful segregation.

This inexcusable discrimination warrants stern repudiation to:

1. Compel the reasonable accommodation of immediate accessible shelter in Manhattan;
2. Compel the reasonable accommodation of immediate accessible housing placement;
3. Award damages recognizing the severe dignitary, emotional, and discriminatory injuries inflicted;
4. Remind federally-funded entities that they must proactively accommodate the disabled across all programs - not marginalize based on disability in contravention of civil rights laws.

My client did everything required, had his needs accommodated elsewhere, yet faced devastating discrimination when seeking housing independence and shelter placement. This betrays a rule of systemic indifference to the blind community over the rule of law this Court must forcefully vindicate.

## JURISDICTION

This Court has jurisdiction over this lawsuit pursuant to **28 U.S.C. §§ 1331 and 1343(a)(3).**

## VENUE

Venue is proper in this Court because the Defendant's is located within the Southern District of New York and the events giving rise to this lawsuit occurred within this district.

## PARTIES

The Plaintiff, **Franklin Mendez,** is a legally blind individual registered with the **Commission for the Blind under #189038.** Plaintiff is a resident of New York City. The Plaintiff is an individual with a disability in the form of a significant visual impairment that substantially limits his ability to see and process visual information. Specifically, the Plaintiff suffers from Pathological Myopia and Large Angle Estropia, which are eye conditions resulting in secondary complications including night blindness, headaches, nausea, and dizziness. Due to the nature and severity of these visual impairments, the Plaintiff meets the criteria to be considered an individual with a disability under the Americans with Disability Act.

Moreover, as a consequence of being legally blind, the Plaintiff regrettably faces a ninety percent (90%) probability of suffering a retinal detachment. In the grave circumstance of a retinal detachment occurring, the Plaintiff risks requiring an enucleation procedure, which is the complete surgical removal of the eyeball(s) to prevent further medical complications stemming from the detached retina(s). The potential need for this invasive surgical procedure underscores the severe and disabling nature of the Plaintiff's visual impairments.

Defendant **Molly Wasow Park** in her Official and Unofficial capacity as the Commissioner of the Department of Social Services (DSS), bears significant responsibility for ensuring compliance with federal and state laws protecting the rights of individuals with disabilities, including the blind Plaintiff in this case.

In her capacity overseeing DSS, **Wasow Park** is charged with upholding the requirements of the **Fair Housing Act**, **Americans with Disabilities Act**, **Bulter v. NYC**, decree, **Rehabilitation Act**, and **Olmstaed v. L.C.**, and other applicable statutes prohibiting discrimination against individuals with disabilities in programs and services administered by her agency. These laws mandate the provision of reasonable accommodations and equal access for disabled individuals, including those with profound disabilities such as blindness.

Specifically, **Wasow Park's** oversight of the Department of Homeless Services (DHS) makes her directly responsible for policies, practices, and procedures related to the provision of emergency shelters, transitional housing, and support services to homeless individuals, including the blind plaintiff. Any alleged failures to reasonably accommodate the Plaintiff's blindness or provide equal access to such services could implicate violations under **Wasow Park's** leadership.

Furthermore, as the head of the Human Resources Administration (HRA), **Wasow Park** is accountable for ensuring public assistance programs like cash aid, SNAP, and Medicaid operate in compliance with disability rights laws. Alleged discrimination or inequitable access barring disabled individuals like the blind plaintiff from fully benefiting from HRA's services may expose deficiencies attributable to the Defendant.

Given the profound nature of blindness as a disability substantially limiting major life activities, **Wasow Park** possessed heightened duties to implement policies, training, and oversight mechanisms to proactively identify and resolve accessibility issues impacting this population. Any systemic deprioritization, delays, or disparate treatment of blind individuals accessing DSS's services could demonstrate intentional discrimination violating federal protections.

As the highest authority over these agencies, **Wasow Park** may be held liable for failures to uphold the rights of the blind Plaintiff and ensure his disabilities were reasonably accommodated without discrimination throughout DSS's housing, shelter, and public assistance programs. Ultimately, she bears responsibility for creating an institutional environment free from disability-based discrimination.

The Defendant bears the legal responsibility to uphold the **Americans with Disabilities Act, Fair Housing Act, Rehabilitation Act,** the **Olmstead v. LC,** integrate mandate ruling and *Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action).* Failure to comply with these laws and legal precedents may result in violations of federal law and significant legal consequences. Therefore, the Defendant must be held accountable for ensuring accessibility, accommodation, and non-discrimination for individuals with disabilities receiving federal assistance through their agencies.

## FACTUAL ALLEGATIONS

1. In January of 2023 as a registered disabled individual with the New York State Comission for the Blind # 189038 and with the life time appointment of a New York State Counselor **Kalim Masud** from the New York State Commission for the Blind. Plaintiff instrusted to **Mr., Masud,** that given his disability of legal blindness he was in need of accessable housing because his curent rsidentce at the time was not accessable. **Mr., Kalim Masud,** informed social worker **Pascual** from Lighthouse Guild to make a refereal to the Center for the Living of the Independent of the Disabled New York for a housing specialist.

2. At the time Plaintiff was disabled, Legal Blindness, and regsitered with the Commission for the Blind and also received Social Security Income (SSI) given his disability, and also SNAP benefits.The city also provides Access-A- Ride paratransit with call out and assist. Plaintiff also has the assistance of mobile aid. Plaintiff also receives accomodations from his attending city college John Jay College for Criminal Justice.

3. In May of 2023, Plaintiff was assinged **Warleny Colon**, Borough Manager, NY Connects, City-contracted, Manhatten Center for Independence of the Disabled in New York (CIDNY) who met with Plaintiff and explainted to him the housing options given his disability he could apply for the housing program avaialable to him. **Mrs., Colon,** would be requesting from a New York City database of property mangagement offices who are contracted with the city to provide accessable apartments that meet the needs for the legally blind, applications for housing, and

would request accomodations that would meet my disability, Legal Blindness. **(See Exhibit B)**

4. Plaintiff requested the following accommodations that would aid his legal blindness. Namely:

- Adaptive Technology: Inquiring about technology or devices that can assist with daily tasks or enhance accessibility.

- Grab Bar: This ADA-compliant grab bar is designed for shower handicap use and can be suitable for wide entrance bathrooms.

- Accessibility in Visual Content: Audio descriptions enhance accessibility by providing detailed descriptions of actions, visual cues, and scenes, allowing individuals with low vision to fully engage with visual media.

- Enhanced Audio Descriptions: Advanced audio description techniques include audiovisuals, audio spatialization, and first-person narration to create interactive and accessible audio experiences for visually impaired audiences.

- Accessible Building Entrance: Requesting an accessible building entrance on an accessible route to facilitate easy entry and exit.

- Environmental Controls in Accessible Locations: Asking for light switches, electrical outlets, thermostats, and other environmental controls to be placed in accessible locations for ease of use.

5. Plaintiff would meet every other week with **Mrs., Colon,** to discuss and have follow up meetings with regard to the housing applications and there status.

6. In October,, 2023, Plaintiff's residency also had an asbestos inspectiion by the City of New York were 80% percent of abestos was found and notice was provided that the reseidents would have to move out, in do time.

7. Plaintiffs was making preperations to find accessable housing and returned to **Warleny Colon,** who infomred him that she had applied to over sixty (60) properties that have contractrual obligations with the Defendants but Plaintiff assured her that he had not received any notice or confirmation. Plaintiff inquired as to why legally blind individuals were not given priority for accessable housing, the housing specialist also found this violated federal disability laws.

8. Unfortunately and out of the control of Plaintiff he was forced to enter the New York City shelter system upon becoming homeless due to asbestos exposure at his prior residency.

9. Despite his disability and the accommodations he is entitled to Plaintiff has been denied

permanent accessible housing by Defendants.

Plaintiff's Advocacy and Accommodation Efforts in the Face of Homelessness: Seeking Support from Medical Professionals and Blind Advocacy Organizations

10. Plaintiff in liu of his homelessness sought the assistance of Eye Doctors and Blind orgranizations which advocate for the blind for accommodations to have the city shelter provide him with reasonable accomodations to allow him to continue his services and medical appointments, namely,

11. **Dr. Andrea Zimmmerman.** Lighthouse Guild, Legal blindness with disability needs per medical records. **(Exhibit C).**

12. **Warleny Colon**, Borough Manager, NY Connects, City-contracted, Manhatten Center for Independence of the Disabled in New York (CIDNY) advocated for my housing needs by submitting accommodation requests and applications on my behalf **(Exhibit B)**.

13. Legal blindness with disability needs per medical records. SUNY College of Optometry Univesrity Eye Center **Dr. Kamila Mikos (Exhibit D).**

14. Legal blindness with disability needs per medical records. SUNY College of Optometry Univesrity Eye Center **Dr. Susan Weinstein (Exhibit E).**

15. Educational accommodations through John Jay Collge's Accessibility Office Services **Dr. Elena Beharry (Exhibit F).**

16. Approved for Access-A-Ride paratransit services by NYC Paratransit due to blindness/limited mobility **Dr. Andrea Zimmerman (Exhibit G).**

17. VISIONS Rehabilitative Services for the Blind, Programs and Services, Director **Ann De Shazo (Exhibit H).**

18. Legal blindness with disability needs per medical Specialist. Lighthouse Guild Therapist **Susan Miller  (Exhibit I).**

Entering the Shelter System

19. In February 21, 2024, Plaintiff was forced to enter the New York City shelter system. Plaintiff went to the Mens Intake Shelter at Bellevue in New York City.

20. The Intake personall noticed he was legally blind and notified her supervisior who then informed Plaintiff that he could not be sheltered at the shelter because it was not ADA compliant for individual with your type of disability and they would be liable if something happened to him, but before that determantion could be confirmed he would have to be seen by the doctors.

21. Plaintiff, was seen by the doctor at <u>Bellevue</u> who upon examination determined Plaintiff suffered legal blindness and would need reasonable accomodations.

22. Plaintiff also provided the medical letter requesting resonable accomodation by **Dr. Andrea Zimmmerman** with attached medical recrods which the <u>Bellevue</u> doctor photocopied and placed along with the Plaintiff's file. **(See Exhibit C).**

23. The doctor approved a list of accomodations given Plaintiff's legal blindness, among them;

• Single Room

• Assistance with Filling Forms and Applications

• First Floor Placement

• Bourough Placement of Manhattan

• Transportation

24. As a result Plaintiff was immediately transferred to an assessment shelter in Brooklyn.

25. Plaintiff was transffered to the <u>BRC Acessment Shelter 146 Clay Street, in Brooklyn</u> were it was accessable for interim duration for Plaintiff but this was an <u>Intake Assessment Shelter</u>, and therefore, Plaintiff would have to be proceed and sent to a permenant shelter for his placment that was ADA compliant.

26. While at <u>BRC</u> Plaintiff requested and with assistnace filed another resonable accomodations for shelter placement in manhattan and in a single room per his doctors. **(See Exhibit J)**

<u>Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action)</u>

27. On March 1, 2024, Pliantiff was transferred to Help-Sec Shelter on Randals Island, and placed in a single room in the first floor.

28. Despite multiple agencies and medical professionals advocating for Plaintiff's needs as a blind individual, the request to have him placed in a shelter within the Manhattan borough was disregarded. Instead, Plaintiff was assigned to a temporary shelter located on Randall's Island, an isolated location significantly distanced from his established network of primary care and support services.

29. The distance between 40th Street and 5th Avenue in Manhattan, where Plaintiff received essential vision care from <u>SUNY College of Optometry</u>, and Randall's Island is approximately 5-6 miles. However, this distance belies the substantial challenges and barriers Plaintiff would face in attempting to traverse it independently as a legally blind person.

30. Not only was the Randall's Island shelter removed from his optometry care at <u>SUNY</u>, but it also

placed him far from other critical resources and services he relied upon, such as the <u>Lighthouse Guild</u>, <u>VISIONS</u>, <u>John Jay College of Criminal Justice,</u> and the <u>Center for Independence of the Disabled of New York</u> (CIDNY) - all located in the Manhattan borough.

31. Compounding these difficulties, <u>Access-A-Ride</u>, the paratransit service deemed necessary for Plaintiff by the city, does not actually provide door-to-door service at the Randall's Island shelter, the actual address of the shelter is listed as a "black site." This forces the blind Plaintiff to navigate a further hazardous commute after being dropped off at an undisclosed location away from the shelter entrance, making his travels to and from the isolated island an even more daunting and unsafe nightmare.

32. By situating Plaintiff in a shelter so remotely distanced from his established care network and services specifically tailored to supporting blind individuals, coupled with the barriers posed by paratransit limitations, the Defendant's have effectively isolated him from the very resources, accommodations and safe transportation necessary for him to maintain his independence, health, and quality of life with his disabling visual impairment.

33. This failure to reasonably accommodate Plaintiff's disability demands by ensuring his proximity to known and trusted providers, as well as providing adequate paratransit access, represents a dereliction of the duty to provide appropriate housing placement and transit accommodations for disabled individuals under laws like the Americans with Disabilities Act and the Rehabilitation Act.

34. If situated in a Manhattan shelter, Plaintiff's commute to his established physicians and services would be relatively straightforward. However, being placed on Randall's Island has made basic access an ordeal:

- To reach SUNY College of Optometry at 40th St/5th Ave from Randall's Island via public transit now takes over 1 hour each way, involving a slow bus route and 2 subway transfers.

- Getting to the Lighthouse Guild, which provides critical vision rehabilitation services, from the island requires over 90 minutes of travel each direction.

- Plaintiff's commute to classes at John Jay College has ballooned from a 20-minute travel time to over 1.5 hours per trip from Randall's Island.

- The dramatically increased travel times and physical difficulties have made maintaining his medical care, education, and independence training an undue hardship.

35. Plaintiff has been forced to routinely miss or delay critical treatments and vision therapy sessions, putting his eye health at severe risk of further deterioration and complications like retinal detachment.

36. Extended and frequent absences have severely jeopardized his ability to complete coursework, participate in discussions, and continue making progress toward his degree at John Jay College.

37. Lapses in vision rehabilitation services at providers like Lighthouse Guild have stunted his skills development with essential mobility, life, and assistive technology tools that foster independence for the blind. Lacking this training, Plaintiff's ability to safely navigate environments, manage daily tasks, and use critical accessibility tools has stagnated.

38. Disruptions to mental health counseling and support groups have left Plaintiff suffering heightened anxiety, depression, and emotional distress without an outlet to process the turmoil of his living situation.

39. Missed assistive technology instruction has prevented Plaintiff from gaining proficiency with software, devices and strategies that could mitigate his disability's impacts on education and employment goals.

40. The isolation from his established support network of providers, instructors, and peers has severely impacted Plaintiff's sense of self-reliance and confidence as a blind individual. Without this community, he feels adrift and alone in facing his disability's challenges.

41. The negligence shown by the Defendant in accommodating his basic needs has shaken Plaintiff's belief in his rights and human dignity as a disabled person. He experiences feelings of marginalization, inadequacy, and being devalued by society.

42. The constant struggles with transportation barriers, hazardous paths, and inability to reliably access vital services has diminished Plaintiff's independence. Simple tenets of self-sufficiency have become grueling battles, stripping him of autonomy.

43. The compounding stresses from this inadequate living situation have taken a massive mental health toll. Plaintiff now suffers from anxiety so crippling it renders him homebound for days and depressive episodes requiring acute treatment.

44. The onerous commutes have left Plaintiff physically and mentally exhausted, compounding the detrimental impacts on his health from skipped medical appointments.

45. Exacerbating Plaintiff's challenges is Access-A-Ride's refusal to provide door-to-door service at the Randall's Island shelter, which is inexplicably listed as a "black site." He is forced to navigate a hazardous final leg after being dropped some distance from the entrance. The path

presents a treacherous gauntlet for a blind individual like Plaintiff:

- A complete lack of tactile guides or textured surfaces to signal the route.
- Unpredictable obstacles like construction equipment, debris, and haphazardly placed objects obstructing the way.
- Unprotected crossing of an active parking lot/roadway with vehicle traffic threats.
- Grooved surfaces and uneven terrain that could easily cause trips/falls.
- No audible cues to orient himself to the entrance.

46. On multiple occasions, Plaintiff's safety has been severely compromised on this inaccessible route:

- On March 6th, 2024, Plaintiff fell hard after failing to detect a construction barrel, suffering a knee injury.
- Just a week later, he had a near collision with a vehicle in the parking lot after being unable to perceive its approach.
- Most alarmingly, on March 27th, 2024, Plaintiff became disoriented and accidentally entered an active construction zone before a worker's shouting alerted him to the life-threatening mistake.

47. Each incident represents an utterly unacceptable risk faced due to the Defendant's failure to ensure accessible, safe transportation all the way to Plaintiff's dwelling. The constant threat of bodily harm is a dehumanizing injustice no disabled person should be subjected to.

48. Despite the Defendant's being legally obligated to provide reasonable accommodations, Plaintiff has instead faced tremendous negligence, unacceptably impairing his access to basic health services, educational opportunities, and ability to develop essential daily living skills to achieve independence as a blind individual. The Defendant's dereliction has deprived Plaintiff of comprehensive vision rehabilitation, psychological support services, and critical skills training - all components necessary for fostering independence and maximizing his capabilities as a disabled individual.

49. The Defendant has utterly failed to account for Plaintiff's needs as a blind individual, shattering his independence, self-worth and outlook through isolation, hazards, and deprivation of essential services. This negligence represents an inexcusable violation of the accommodations legally required to integrate disabled individuals into society. This injustice continues to inflict severe, enduring psychological and emotional harm with each day of unmet accommodations.

50. On March 1, 2023, Plaintiff was proceessed at the Shelter by the case manager **Mrs., Monsuntu.**

51. On March 27, 2023,  Plaintiff was informed he had an appointment with his housing specialist **Lamar Thomas.** Plaintiff was informed that he would apply for housing.

52. On March 23, 2003, Plaintff met with his case worker **Korely Malcolm** and discussed a bed permit given his disability.

Plaintiff's Affidavit Detailing Detrimental Impacts and Systemic Failures in Temporary Shelter Accommodations for Plaintiff a Blind Individual

53. Affidavit of Franklin Mendez

I, **Franklin Mendez,** solemnly bring forth this affidavit to expose the grim reality faced by blind individuals like myself within temporary shelters. Through this sworn statement, I aim to thrust into the glaring spotlight the profound challenges and injustices endured by those with disabilities as blindness in such settings.

**Stripped Independence**

Imagine traversing a maze without a guide, a city bereft of directional signs. This is my daily struggle in a temporary shelter as a blind person. Crucial aids for autonomy, like braille signs and unobstructed pathways, are absent. Instead, I'm left reliant on others, with my independence slipping through my fingers each passing day.

**Emotional and Psychological Strain**

The shelter environment breeds emotional turmoil. There's no escape from the cacophony, the disorder, the lack of privacy. It's an unrelenting assault on the senses, leaving me feeling exposed and anxious. In a world where every step is shrouded in uncertainty, the weight of it all is suffocating.

**Disrupted Educational Trajectory**

I once harbored dreams of academic achievement, but now they seem distant and unattainable. Shelter life has disrupted my education, rendering it impossible to focus on my studies. With each missed class, each abandoned assignment, my hope for a better future dwindles.

**Adverse Health Ramifications**

Shelter living shouldn't come at the expense of my well-being, yet that's precisely what's happening. The unsanitary conditions, the lack of basic hygiene facilities – it's a recipe for

disaster. I find myself perpetually fatigued, my body worn down by the constant stress of inhabiting such inhospitable conditions.

**Attempts to Communicate with Shelter Authorities**

Despite my efforts to advocate for myself, my pleas fall on deaf ears. Shelter staff, untrained and unequipped, fail to comprehend the gravity of my situation. Their indifference only amplifies my struggles, leaving me feeling abandoned and utterly hopeless.

**Disparate Treatment of Asylum Seekers**

In stark contrast, asylum seekers are granted accommodations in hotels with en-suite bathrooms and close proximity to their children's schools. This sharp disparity between their treatment and mine – as a blind individual seeking shelter – exposes the systemic inequities and discriminatory practices inherent in the shelter system.

**Response from Mr. Park and Mr. Springer**

Upon notifying Mr. Park and Mr. Springer of the legal precedent set forth in Butler v. NYC, demanding a response within 24 to 48 hours regarding my request for reasonable accommodations, I received a reply. However, the accommodations provided came with significant hurdles. The walkways were strewn with buckets to catch leaks, posing a perilous obstacle for navigation, especially for a blind person. Moreover, I was assigned to a shelter in Rikers Island, a commute fraught with challenges for someone with a visual impairment. These conditions only compound the obstacles I face and underscore the urgent need for sweeping reforms to ensure equitable treatment and access to suitable accommodations for individuals with disabilities in temporary shelter settings.

In conclusion, I implore the court to acknowledge the pressing need for change within temporary shelters. Blind individuals like myself deserve better – better access, better support, better treatment. It's not merely about securing a roof over our heads; it's about preserving our dignity, independnce, and fundamental right to live free from fear and discrimination.

Respectfully submitted, **Franklin Mendez.**

Compliants Went Unheard And State and Federal Officials Were on Notice

54. In a number of complaints Plaintiff reached out to Defendant and state and city officials requesting their intervention and assistance to the ongoing discrimination. Among them:

Hon. **Jumaane Williams**, Public Advocate, Public Advocate's; Hon. **Brad Lander**, Controller, Controller's Office; **Annabel Palma**, Chair and Commissioner, New York City Commission on Human Rights; **Molly Wasow Park** Commissioner, New York City Department of Social Services **Christina Curry** Commissioner Mayor's Office for People with Disabilities; **Diana Ayala** New York City Council Member and Deputy Speaker District Office; **Maria Torres-Springer** Deputy Mayor Housing Economic Development and Workforce in New York, **Kathy Hochul,** Governor of New York State, and  Chief Judge **Laura Taylor Swain** United States District Court Southern District of New York.

55. In a February  27th , 2024, complaint Plaintiff wrote:

Commissioner Christina Curry Mayor's Office for People with Disabilities 100 Gold Street, 2nd Floor New York, NY 10038

Commissioner Molly Wasow Park New York City Department of Social Services
Human Resources Administration Department of Homeless Services 150 Greenwich St., 40th Floor, New York, NY 10007

Deputy Mayor Maria Torres-Springer Housing Economic Development and Workforce in New York Cityffice of the Mayor City Hall Park New York, NY 10007

Titled: Urgent Request for Reasonable Accommodation Under ADA for Accessible Shelter Placement for Legally Blind Student Franklin Mendez, Who Against Doctors' Professional Judgement and Against the Butler v NYC Decree is Being Unjustly Denied Single Room and Placement in a Manhattan Shelter

**(See Exhibit K)** (Note: The exhibits are distributed throughout)

56. Given the Plaintiff's assertion that the Defendants breached the ***Butler v. NYC, decree***, which stipulated a response time of 24-48 hours for all reasonable accommodations, the Plaintiff was compelled to draft this letter. Despite the Plaintiff's adherence to the established protocols and timelines outlined in the Butler decree, the Defendants failed to approve and process the requested accommodations at Bellevue within the mandated timeframe. This failure on the part of the Defendant constitutes a violation of the ***Butler v. NYC, decree*** and underscores the urgency and necessity of the Plaintiff's correspondence.

57. In a March 10, 2024, complaint Plaintiff wrote Commissioner **Molly Wasow Park** New York City Department of Social Services Human Resources Administration Department of Homeless

Services 150 Greenwich St., 40th Floor, New York, NY 10007 Commissioner **Christina Curry** Mayor's Office for People with Disabilities 100 Gold Street, 2nd Floor New York, NY 10038 **Diana Ayala** New York City Council Member and Deputy Speaker District Office East Harlem Office:, 105 East 116th Street, New York, NY 10029

Re: Ongoing Disability Discrimination For Blind Homeless College Student- Denial of Permanent Accessible Housing Despite Granted Accommodations in Violation of Butler Decree, Fiar Housing Act, Americans with Disabilty Act, Rehabilitation Act, and Olmstead v. L.C. 527 U.S. 581 (1999)

**(See Exhibit  L)** (Note: The exhibits are distributed throughout)

58. In a March 19th, 2024, complaint Plaintiff wrote a follow-up letter to the following officials: Commissioner **Molly Wasow Park; Commissioner Christina Curr, Diana Ayala, Council Member,**

From: Franklin Mendez CARES ID # 7642640 Help USA Shelter Resident-Homeless-Blind

Re: Acknowledgment of Receipt & Legal Obligations - Disability Discrimination/Denial of Accessible Housing for Legally Blind Homeless Individual Registered with the NYS Commission for the Blind # 189038

**(See Exhibit M).** (Note: The exhibits are distributed throughout)

59. In a March 21, 2024, complaint Plainitff wrote Hon. **Jumaane Williams,** Public Advocate, Public Advocate's; Hon. **Brad Lander,** Controller, Controller's Office; **Annabel Palma**, Chair and Commissioner, New York City Commission on Human Rights; **Molly Wasow Park** Commissioner, New York City Department of Social Services **Christina Curry** Commissioner Mayor's Office for People with Disabilities; Diana Ayala New York City Council Member and Deputy SpeakerDistrict Office; **Maria Torres-Springer** Deputy Mayor Housing Economic Development and Workforce in New York, **Kathy Hochul,** Governor of New York State, and Chief Judge **Laura Taylor Swain** United States District Court Southern District of New York with a letter titled Subject: Notice of Alleged Violation of the Americans with Disabilities Act and Fair Housing Act Involving Failure to Accommodate a Legally Blind Individual in New York City Shelters,. **(See Exhibit N).** (Note: The exhibits are distributed throughout)

**Defendant Department of Social Services (DSS) was Responsible to Properly Oversee and Enforce Fair Housing Act Compliance and Ensure Reasonable Accommodations**

60. As the state/local agency receiving federal funding for housing programs, Defendant has an obligation to ensure all housing providers they contract with or provide listings for are complying with FHA requirements around reasonable accommodations for disabled individuals.

61. If the housing specialist repeatedly requested priority placement as a reasonable accommodation due to the client's blind disability status and those requests were ignored by over sixty (60) different property management offices, that is a clear systematic violation of FHA rules.

62. Defendant should have been monitoring and tracking these accommodation requests, especially after numerous denials. Their oversight responsibility is to intervene when housing providers are refusing to make accommodations in violation of FHA mandates.

63. The fact that this went on for seven (7) months with no accessible housing provided, ultimately forcing the blind individual into a shelter, indicates a failure by Defendant to take corrective action against these derelict property managers.

64. The housing specialist was applying for these Property Management Systems application for housing and in those applications from the database that the city contracted with she pointed out that he was legally blind and requested first floor audio, and garb bar for the shower.

65. The actions of the property management companies in consistently failing to provide applications or consider the reasonable accommodation requests for the blind individual would constitute a violation that Defendant should have addressed under the Fair Housing Act.

66. The housing specialist was properly submitting housing applications through the city's contracted database and clearly indicating the blind applicant's disability and need for specific accommodations like first floor unit, audio/visual aids, accessible shower, etc. However, the property managers were frequently not even sending the actual housing applications in response, let alone considering or granting the requested accommodations.

67. Under the Fair Housing Act, housing providers are required to consider reasonable accommodation requests from disabled applicants and provide any feasible accommodations that do not represent an undue burden. Blanket denial or ignoring of accommodation requests violates FHA rules.

68. By not even providing applications when the disability need was indicated, the property managers were effectively denying the blind applicant the ability to be considered for housing.

69. As Defendant, the agency administering these contracted housing databases and provider relationships using federal funding, Defendant had an obligation to:

- *Monitor the property managers' responsiveness to accommodation requests.*
- *Identify the pattern of not providing applications once a disability need was indicated.*
- *Intervene and enforce the FHA rules requiring consideration of accommodations.*
- *Potentially penalize or remove non-compliant properties failing to follow the law.*

70. The consistent failure across numerous property managers to properly intake and process the blind applicant's accommodation requests should have raised red flags at DSS. Their lack of oversight and enforcement of FHA compliance by their contracted housing providers perpetuated this discriminatory denial of access.

71. Defendant further failed in their responsibility to:

- *Ensure contracted properties had appropriate policies and queues to expedite disabled applicants per FHA rules.*
- *Identify the clear pattern of discrimination in not granting priority or providing accommodations.*
- *Intervene and enforce the reasonable accommodation requirements of the FHA.*
- *Penalize properties consistently denying accommodations in violation of the law.*

72. While the housing specialist was properly submitting the requests, Defendant dropped the ball in allowing the property managers to simply disregard those requests without consequence, which is a violation of the FHA that Defendant should have remedied as the federally-funded housing agency. Their lack of oversight perpetuated this discriminatory treatment of the blind applicant.

73. For seven (7) months across multiple properties, the blind individual remained on standard waitlists with no accommodation.

74. Consequently, the blind individual was forced into a shelter due to lack of accessible housing. This extended delay and unnecessary institutionalization violates the FHA's intent.

75. Participation in blind community organizations indicates his commitment to advocacy and ensuring equal rights/access for the visually impaired population.

- Registration with the <u>Commission for the Blind</u> officially establishes and documents his legally blind/disabled status that housing providers must accommodate under the FHA.

- Being a college student utilizing disability accommodations shows he is actively participating in society and has consistent, verified needs for accessibility measures.

- Use of city para-transit/travel services demonstrates his level of independence requires reasonable housing accommodations to facilitate that lifestyle.

76. Collectively, these factors undeniably demonstrate that he is a responsible individual with verified disabilities actively seeking independence and full community integration. This amplifies the need for accessible, reasonably accommodated housing.

77. Given his clear disabled status, proactive use of supports/services, and involvement in the blind community, there is no ambiguity about Defendant's obligation to ensure this individual received legally mandated accommodations from their contracted housing providers, such as:

- *Priority consideration and move-in policies for disabled applicants.*

- *Accessibility features like audio/visual aids, first-floor unit, etc.*

- *Avoidance of unnecessary segregation or institutionalization.*

78. By failing to compel housing providers to make these reasonable accommodations for someone so clearly qualified and actively seeking independent living, Defendant fell far short of its FHA oversight responsibilities.

79. These additional details provide further evidence that Defendant systematically neglected its enforcement duties under the FHA to ensure this blind individual received lawful access to reasonably accommodated housing options without discrimination. Their failures perpetuated segregation and marginalization of someone actively combating those very issues.

- *He was enrolled in college receiving eleven (11) different accommodations for his visual impairment.*

- *Upon entering the shelter, he was granted seven (7) additional accommodations like a single room, assistance with forms/applications, and transportation.*

- *Registration with the Blind Commission is official documentation of his legally disabled status that must be accommodated without discrimination.*

- *Utilizing Access-A-Ride shows he relies on specialized disability services/accommodations to maintain independence and integration in the community.*

80. Collectively, this paints a clear picture of someone actively living with and accommodating for

significant visual impairments across all facets of their life - housing, education, transportation, services, etc.

81. The fact that temporary shelter accommodations were provided underscores the housing providers' knowledge of his accessibility needs. Yet they still failed to expedite FHA-mandated housing accommodations, necessitating the temporary shelter placement.

82. This wasn't a case of ambiguity around the individual's disabled status or accommodation requirements. Defendant had ample evidence and was compelled to ensure their contracted housing facilitated his equal access to an integrated living situation with reasonable modifications like:

- *Being prioritized on waitlists.*

- *Receiving requested accessibility features like audible aids.*

- *Avoiding unnecessary institutionalization in shelters.*

83. Their failure to enforce these FHA requirements perpetuated discrimination and hindered his ability to maintain maximum independence and community integration despite receiving accommodations in other areas of his life. These facts create an even more striking repudiation of Defendant's complacency in allowing such overt disregard for reasonable accommodation rules under the FHA for someone so clearly identified as a qualified individual with a disability. The details amplify Defendant's systematic neglect of their civil rights oversight duty.

<u>Systemic Failure to Provide Reasonable Accommodations: Violation of the Rehabilitation Act and Discrimination Against Blind Plaintiff by Federally-Funded Defendants</u>

84. Defendant was and is receiving federal funding and are mandated to ensure that individuals with disabilities are provided reasonable accommodations and equal access to programs and services. In the present case, the Defendant, as recipients of federal funding, were entrusted with the responsibility to adhere to the provisions of this Act and accommodate the needs of individuals with disabilities, including the Plaintiff who is blind. ***See generally, 160 ALR Fed 297*** *(commenting on the recipient of federal financial assistance and what constitutes a program or activity receiving such assistance for the purposes of **Section 504 of the Rehabilitation Act (29 USCA Section 794)**, which prohibits any program or activity receiving financial assistance from discriminating on the basis of disability and applies to states or local government).*

85. Despite being well aware of the Plaintiff's disability and their persistent efforts to secure

23 of 24

accessible housing accommodations, the Defendants failed to fulfill their obligations under the Rehabilitation Act. Over a period of seven (7) months, the Plaintiff, through their housing specialist, diligently sought accessible housing, utilizing the same city database accessed by domestic violence victims. However, while domestic violence victims were expeditiously provided with priority housing access within weeks, the Plaintiff was subjected to prolonged homelessness and inadequate shelter placements, reflecting the Defendant's systemic failure to accommodate the needs of disabled individuals. Additionally, even migrants and asylum seekers were prioritized over the Plaintiff, further highlighting the Defendant's discriminatory practices.

86. This failure to provide reasonable accommodations not only constitutes a violation of the Rehabilitation Act but also perpetuates discrimination against individuals with disabilities. By neglecting to prioritize the needs of the Plaintiff and failing to provide the necessary accommodations, the Defendant breached their duty to ensure equal access to housing opportunities for disabled individuals.

87. As recipients of federal funding, the Defendant had a legal obligation to accommodate the Plaintiff's disability and provide them with accessible housing options. However, their failure to do so not only undermines the principles of equality and nondiscrimination mandated by the Rehabilitation Act but also exacerbates the challenges faced by disabled individuals seeking to integrate into society.

<u>Plaintiff Was Segregated Based Soely On His Disability Incontravention of the Integration Mandate of Olmstead v. L.C., 527 U.S. 581 (1999)</u>

88. As evidenced by the Plaintiff's comprehensive documentation, the city and state have already acknowledged the Plaintiff as a qualified individual with a disability by providing other reasonable accommodations. These include services from the <u>State Commission for the Blind</u>, <u>Access-A-Ride</u> transportation, accommodations through the <u>John Jay College Accessibility Office</u> and the Shelter necessitated by the Plaintiff's blindness.

89. Despite having "a well-resourced plan" in place with these supports, they still ended up unjustifiably institutionalized in a homeless shelter rather than community housing as originally sought through reasonable accommodation requests.

90. However, the Defendant's refusal to grant the reasonable accommodation of accessible permanent housing relegates the Plaintiff to unjustified segregation and institutionalization, rather than facilitating integration into the community. This violates the core holding of,

*Olmstead v. L.C., 527 U.S. 581 (1999)* which ruled that the unjustified institutionalization of persons with disabilities constitutes unlawful discrimination under Title II of the ADA.

91. In *Olmstead,* the Supreme Court found that the ADA prohibits the segregation of persons with disabilities into institutions when their needs could be reasonably accommodated in integrated, community-based settings. The Plaintiff has demonstrated their qualifications and receipt of other accommodations proves integrated housing is reasonable for them.

92. The Plaintiff has met all eligibility requirements to receive accessible permanent housing placement as mandated by *Olmstead*. Yet the Defendant discriminatory denial perpetuates the plaintiff's segregation solely on the basis of their disability.

93. This unjustified isolation deprives the Plaintiff of their qualified right under *Olmstead* to receive supportive services in the most integrated setting appropriate to their needs. The Defendants actions represent unlawful discrimination and a violation of the Plaintiff's rights under **Title II of the ADA** and the *Olmstead* integration mandate.

Disparate Treatment

94. The Plaintiff, amidst a relentless pursuit of independence and adherence to the prescribed procedures, found themselves ensnared in a web of systemic neglect and discriminatory practices perpetuated by the Defendant. Despite the Plaintiff's unwavering commitment to following the rules and advocating for their rights, the Defendant brazenly extended preferable treatment to other groups, leaving the Plaintiff to languish in a state of uncertainty and deprivation.

95. While the Plaintiff meticulously navigated the labyrinth of bureaucratic hurdles, their efforts were met with indifference and callous disregard by the Defendant. In contrast, illegal migrants and victims of domestic violence were granted expedited access to housing opportunities, leaving the Plaintiff relegated to the sidelines of society, relegated to a shelter placement ill-suited to accommodate their disability.

96. This flagrant disparity in treatment not only violates the Plaintiff's rights under federal disability laws but also strikes at the very heart of our societal values of fairness and equality. By subjecting the Plaintiff to a cycle of systemic discrimination and neglect, the Defendant have perpetuated a grave injustice, depriving the Plaintiff of the opportunity to live independently and with dignity.

97. Such disparities in the pace of processing, placement rates, and ultimate outcome where this blind individual was rendered homeless while others without disabilities were provided housing access, could constitute unlawful disparate treatment discrimination under federal disability laws like the ADA, Section 504, and FHA. While applying neutral policies, housing providers must still make exceptions and reasonable modifications when needed to afford equal housing opportunities for the disabled.

98. By failing to prioritize and provide this blind, disabled individual with accessible community housing consistent with other non-disabled applicants during that period, despite their active seven (7) months effort, the housing provider may have isolated them in a segregated shelter setting in violation of *Olmstead* while simultaneously delaying and denying their access to housing in a discriminatory manner constituting disparate treatment.

## Count I

### First Cause of Action
### Violation of Fair Housing Act - Failure to Ensure Reasonable Accommodations
### (42 U.S.C. §3604(f))

**Plaintiff** incorporates by reference all preceding paragraphs as if fully set forth herein.

Defendant, Department of Social Services (DSS) violated the reasonable accommodation provisions of the **Fair Housing Act** by failing to ensure that housing providers receiving federal funds made reasonable accommodations available to a qualified blind individual, thereby discriminating against him on the basis of disability.

The Fair Housing Act makes it unlawful to discriminate against any person in the provision of services or facilities in connection with such dwelling because of a handicap. **42 U.S.C. §3604(f)(2).** Discrimination includes a refusal to make reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling. **42 U.S.C. §3604(f)(3)(B).**

In this case, the Plaintiff is a qualified individual with a disability as established by his legal blindness, registration with the Commission for the Blind, and need for numerous accommodations for independent living provided by the city, college, and temporary shelter. This triggers protections under the **FHA.**

Defendant, as the city agency administering and monitoring housing programs utilizing federal funds, had an obligation to ensure housing providers granted reasonable accommodations to Plaintiff. This includes policies for prioritizing disabled individuals on waitlists and providing disability-specific accessibility modifications like audible/visual aids.

However, Defendnat failed to meet this obligation in multiple ways:

1. Despite submitting over 60 accommodation requests, housing providers under contract with DSS consistently denied applications or failed to properly consider and process the requests, in violation of **FHA** reasonable accommodation rules.
2. When applications were submitted noting disability status, providers refused to implement any measures to expedite waitlist placement or provide requested accessibility features like first-floor units.
3. This systemic failure by housing providers to consider or implement reasonable accommodations persisted for over 7 months with no substantive action taken by Defendant to intervene and enforce compliance.
4. The prolonged denial of accommodations forced Plaintiff into an unnecessarily segregated shelter placement, contradicting **FHA's** integration mandate.

By allowing this discriminatory pattern by its contracted housing providers to continue unabated for months despite disability documentation and accommodation requests, Defendant evinced a complete disregard for its duty under the **FHA** to ensure meaningful access and equal housing opportunity for disabled individuals.

Their oversight failures perpetuated discrimination through delayed provision of legally-mandated reasonable accommodations, causing direct injury of hindered housing access, compromised independence and quality of life for Plaintiff.

As Defendant in charge with **FHA** enforcement, DSS's inaction allowed an overt, unjustified denial of equal housing rights that Congress intended to remedy when it prohibited disability-based discrimination in the **Fair Housing Act.**

For these violations, Plaintiff is entitled to injunctive relief compelling implementation of reasonable accommodation placing him in immediate accessible affordable housing as well as compensatory and punitive damages to the fullest extent permissible under the ***Fair Housing Act, American with Disability Act, Rehabilitative Act, and Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action).***

## Count II

### Second Cause of Action
### Violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794)

**Plaintiff** incorporates by reference all preceding paragraphs as if fully set forth herein.

The Plaintiff's invocation of **Section 504 of the Rehabilitation Act (29 U.S.C. § 794)** underscores a blatant violation committed by the Defendant-Department of Social Services (DSS). As outlined in preceding paragraphs, Defendant, as a recipient of federal financial assistance, falls squarely within the purview of **Section 504.**

**Section 504** unequivocally prohibits discrimination based on disability by any entity receiving federal funding. Within the scope of this litigation, Defendant's housing programs undoubtedly qualify as recipients of such funds. However, despite this legal obligation, DSS engaged in discriminatory housing practices that systematically excluded and marginalized the Plaintiff solely because of his blindness.

Despite the Plaintiff's persistent and legally valid requests for reasonable accommodations tailored to his disability, Defendant callously dismissed or ignored them. This disregard not only represents a failure to fulfill its legal obligations under **Section 504** but also constitutes a reprehensible violation of the Plaintiff's fundamental civil rights.

By denying the Plaintiff meaningful access to its housing services and refusing to provide the reasonable accommodations mandated by law, Defendant perpetuated the Plaintiff's segregation and exclusion. Such actions starkly contradict the principles enshrined in **Section 504**, which aim to ensure equal opportunities and access for individuals with disabilities.

In light of these egregious violations, Plaintiff warrants relief in the manner of placing him in the next available accessible and affordable housing unit, also to address the harm inflicted upon the Plaintiff. Justice necessitates full accountability for these flagrant violations of federal disability rights law.

## Count III

### Third Cause of Action
### Violation of Title II of the Americans with Disabilities Act
### (42 U.S.C. §§ 12131–12134)

**Plaintiff** incorporates by reference all preceding paragraphs as if fully set forth herein.

The Plaintiff brings forth a substantive claim under **Title II of the Americans with Disabilities Act (ADA)** against Defendant- Department of Social Services (DSS), highlighting its discriminatory practices in housing services provision. **Title II** of the **ADA** imposes a stringent duty upon public entities to refrain from discriminating against qualified individuals with disabilities in their administration of public services, programs, or activities. Specifically, it mandates that public entities ensure the accessibility of their programs to individuals with disabilities, thereby facilitating their unfettered participation.

In the present litigation, Defendant, as a state/local government entity, unequivocally falls within the ambit of **Title II of the ADA.** The Plaintiff, a bona fide individual with a disability, has endured systematic exclusion from the benefits conferred by Defendant's housing programs on account of his blindness. Despite his indisputable eligibility and persistent entreaties for reasonable accommodations, Defendant demonstrated a lamentable failure to uphold accessibility standards, consequently depriving the Plaintiff of the substantive benefits associated with its housing services.

The factual matrix of this case unequivocally underscores Defendant's egregious dereliction of its statutory obligations under **Title II of the ADA.** The Plaintiff's repeated pleas for reasonable accommodations, including but not limited to accessible housing alternatives tailored to his disability, were met with a deafening silence or outright denial by Defendant. Consequently, the Plaintiff found himself unjustly ensnared in a shelter facility wholly unequipped to meet his specialized needs, thereby constituting a blatant violation of **Title II of the ADA.**

Defendant's egregious transgressions represent a wholesale breach of federal disability rights law, necessitating judicial intervention to rectify the grave injustices visited upon the Plaintiff. This court is duty-bound to acknowledge the severity of Defendant's transgressions and to fashion appropriate redress in alignment with the dictates of **Title II of the ADA.** Justice demands unequivocal accountability for these flagrant violations and the consequent imposition of remedial measures geared

towards fortifying the rights of individuals with disabilities.

In light of the foregoing, the Plaintiff fervently implores this honorable court to adjudicate Defendant's liability for violations of **Title II of the ADA** and to afford commensurate relief consonant with the imperatives of federal law.

## <u>Count VI</u>

### Fourth Cause of Action
### Violation of ADA Integration Mandate per Olmstead v. L.C. (527 U.S. 581 1999)

**Plaintiff** incorporates by reference all preceding paragraphs as if fully set forth herein.

In ***Olmstead v. L.C., 527 U.S. 581 1999***, the Supreme Court held that unjustified segregation of persons with disabilities constitutes discrimination violating **Title II's** integration regulation. DSS perpetuated Plaintiff's unjustified segregation by allowing housing providers to deny reasonable accommodations for over seven (7) months, forcing an unnecessary shelter placement when he qualified for integrated community housing options. This directly contradicts the ***Olmstead*** mandate. ***See generally, Unjustified Institutionalization of Individuals with Disabilities as Vioaltion of Federal Anti- Discrimination Provision Post-Olmstead Cases, 90 A.L.R Fed.2d 1(2014).***

While distinct statutes, all these laws and the ***Olmstead*** ruling are fundamentally rooted in the same principles of preventing disability discrimination and ensuring equal access through reasonable accommodations and integrated settings. The **Fair Housing Act's** core purpose aligns with combating the segregation, isolation, and lack of accessibility Plaintiff experienced - making these complementary claims.

The facts that Plaintiff was:

- *Denied reasonable housing accommodations solely due to blindness disability.*
- *Faced diminished access and benefits of DSS-administered housing programs.*
- *Subjected to unjustified segregation through an institutional shelter placement.*
- *Discriminated against and excluded from community housing opportunities.*

Together, these interrelated arguments illustrate how Defendant exhibited a multi-faceted disregard for ensuring Plaintiff's civil rights and basic equal access guaranteed under key disability laws - perpetuating the marginalization and deprivation of independence that such laws aimed to

eliminate.

## Count V

### Fifth Cause of Action
### Failure to Provide Meaningful Access and Reasonable Accommodations
### (Section 504, Fair Housing Act)

**Plaintiff** incorporates by reference all preceding paragraphs as if fully set forth herein.

Both **Section 504 of the Rehabilitation Act** and the **Fair Housing Act's** reasonable accommodation provisoins require that when offering housing services/benefits, accommodations must be met.

The Plaintiff, as a legally blind individual registered with the state's Commission for the Blind, has well-documented disabilities requiring reasonable accommodations in housing. Federal statutes like the FHA, Section 504 of the Rehabilitation Act, and the ADA's integration mandate obligate housing providers to make such accommodations to ensure equal access.

Despite his recognized disabled status and efforts to secure accessible housing through proper channels like working with a housing specialist, the Plaintiff faced systemic discrimination and failures to accommodate his disabilities over seven (7) months, including:

1. *Over 30 requests for reasonable accommodations like accessible units were denied or ignored by housing providers contracting with the city/state.*
2. *Disability-related applications and accommodation requests were consistently disregarded, preventing him from even getting on waitlists.*
3. *When able to submit applications noting his blindness, no effort was made to prioritize or expedite his placement into accessible units.*
4. *Ultimately he was forced into an unnecessarily segregated shelter facility, violating anti-discrimination laws' integration requirements.*

Such discriminatory delays and denial of accommodations are unlawful and excluded the Plaintiff from fully benefiting from housing programs/services due to his disabilities.

Granting the reasonable accommodation of priority accessible housing placement was necessary to:

1. *Mitigate severe accessibility issues and safety risks the Plaintiff faced in non-accommodated*

*units.*

2. *Allow equal, meaningful access to housing opportunities along with his able-bodied peers.*

3. *Facilitate his ability to live independently and avoid unnecessary institutionalization as mandated by Olmstead.*

4. *Prevent discrimination and hardship caused by extended delays in securing legally-required accommodations.*

Given the systemic disregard for the Plaintiff's accommodation requests, the most effective and appropriate remedy was placing him into an accessible unit as soon as possible via priority channels. This reasonable accommodation was continuously delayed and denied.

Housing providers failed to make units available as required by federal laws when notified of the Plaintiff's disabilities and needs. Their discriminatory actions significantly hampered the Plaintiff's ability to access suitable housing and forced him into a sheltered, segregated living situation despite his preference and qualifications for integrated accessible housing.

As the enforcement agency, Defendant-DSS neglected its duties under the FHA, ADA, and Rehabilitation Act to compel housing providers to make legally-mandated reasonable modifications and grant the Plaintiff's priority accommodation request based on his blindness. This inexcusable failure to ensure compliance with disability anti-discrimination laws directly led to marginalized housing status, compromised independence, and segregation from community living.

Prioritizing the Plaintiff's accessibility needs should have been a clear reasonable accommodation responsibility, not the last resort after seven (7) months of discrimination and needless institutionalization. Federal laws and precedent require such affirmative steps to ensure equal housing opportunity for disabled individuals. The Plaintiff was deprived this civil right solely based on disability.

1. As a legally blind individual registered with the state disability commission, the Plaintiff had a well-established and documented disability requiring housing accommodations.

2. He faced systemic discrimination over seven (7) months where housing providers consistently denied or ignored over 30 reasonable accommodation requests for accessible units made through proper channels.

3. When able to submit applications noting his blindness, he was not prioritized or expedited for accessible units, which was required to ensure equal access.

4. He was ultimately forced into an unnecessarily segregated shelter placement, violating the

integration mandates of disability laws.

5. Granting the reasonable accommodation of priority accessible housing placement was necessary to:

- *Mitigate accessibility and safety issues in non-accommodated units.*

- *Allow equal and meaningful access to housing opportunities.*

- *Facilitate independent living and prevent institutionalization per* **Olmstead.**

- *Prevent hardship from delays in receiving legally-required accommodations.*

6. Housing providers failed to make accessible units available when notified of his disabilities, denying him equal housing access.

7. The Department of Social Services neglected its enforcement duties by allowing this systemic failure by housing providers to reasonably accommodate the plaintiff's disabilities.

8. Prioritizing his need for an accessible placement should have been a clear reasonable accommodation responsibility, not treated as a last resort after 7 months of discrimination.

The crux is that disability laws require such affirmative steps to avoid marginalization and ensure equal housing opportunities for disabled individuals like the blind Plaintiff. Priority accessible housing placement was a reasonable accommodation continually and unlawfully denied to him based solely on his disability status.

## <u>Count VI</u>

### Sixth Cause of Action

### Failure to Provide Reasonable Accommodation of Priority Accessible Housing Placement (Fair Housing Act 42 U.S.C. § 3604(f), Section 504 of the Rehabilitation Act, Title II of the ADA)

**Plaintiff** incorporates by reference all preceding paragraphs as if fully set forth herein.

The Defendants have violated federal disability rights laws by failing to grant Plaintiff the reasonable accommodation of priority placement into an available accessible housing unit despite his well-established disability as a legally blind individual.

The ***Fair Housing Act*** mandates that discriminatory housing practices include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." **42 U.S.C. § 3604(f)(3)(B)**

Similarly, **Section 504 of the Rehabilitation Act** and **Title II** of the **ADA** require federally-funded housing programs and public entities to make reasonable modifications to avoid disability-based discrimination and ensure accessibility of services and facilities.

As evidenced by the following facts, granting Plaintiff priority accessible housing placement is a required reasonable accommodation:

1. Plaintiff is legally blind and registered with the state disability commission, conclusively establishing need for housing accommodations.
2. Over seven (7) months, Defendants disregarded over thirty (60) accommodation requests and failed to prioritize Plaintiff on accessible waitlists despite disability documentation.
3. This forced Plaintiff into an unnecessarily segregated shelter, violating integration mandates of disability laws.
4. In standard, non-accessible units, Plaintiff faces severe accessibility barriers, safety risks, and inability to live independently due to his blindness.
5. Only by securing a vacant accessible unit via priority channels can Plaintiff immediately obtain equal, meaningful access to integrated housing services and opportunities.

By refusing to expedite Plaintiff's placement despite repeated attempts to secure accommodations through approved channels, Defendants have denied a facially reasonable and necessary accommodation solely based on disability.

This systemic failure manifestly violates federal requirements for housing programs to operate in a non-discriminatory manner and make legally-mandated reasonable modifications when necessary to avoid exclusion or unequal treatment due to disability.

Further evidencing the reasonableness of this requested accommodation:

- *Plaintiff affirmatively requested and advocated for priority placement.*
- *Many housing providers contract with third-parties for accessible units.*
- *Vacant accessible units are consistently available in Defendants' systems.*
- *Plaintiff's eventual placement validates eligibility for such units.*

Granting Plaintiff immediate priority status for the next available accessible unit is an eminently reasonable accommodation well within Defendants' control to implement and provide the equal, integrated housing access to which Plaintiff is lawfully entitled as a disabled individual.

By delaying and withholding reasonable accommodation for over seven (7) months, Defendants

evinced no such good faith consideration of Plaintiff's repeated and substantiated requests.

Such conduct needlessly prolonged Plaintiff's exclusion from integrated housing through discriminatory policies and practices. Plaintiff will therefore preliminarily and permanently enjoin Defendant to immediately grant priority accessible housing placement as a lawful, reasonable accommodation necessitated by ongoing and irreparable discrimination. Compensatory damages are further warranted.

The blind Plaintiff would have legal standing to bring all of the causes of action and arguments made under the Fair Housing Act (FHA), Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act (ADA), and the Supreme Court's Olmstead v. L.C. integration mandate ruling.

To establish standing for these federal disability rights claims, the plaintiff must show:

1. They suffered an injury-in-fact that is concrete and particularized, and actual or imminent
2. The injury is fairly traceable to the challenged action of the Defendant
3. It is likely that the injury will be redressed by a favorable decision

The blind Plaintiff meets all three requirements for standing:

Injury-in-Fact

- Denial of reasonable accommodation requests for over seven (7) months.
- Delayed/denied access to accessible housing.
- Unnecessary institutionalization/segregation in a shelter.
- Inability to live independently in an integrated community setting.
- Compromised safety and quality of life in non-accessible housing.
- Emotional distress from discrimination and unequal treatment.

These are concrete, particularized injuries directly impacting the Plaintiff's housing situation and ability to equally access housing services due to disability.

The injuries are directly traceable to the actions and inactions of the housing providers and Department of Social Services (DSS) as defendant:

- Housing providers systematically denied reasonable accommodation requests.
- They failed to prioritize or grant the blind plaintiff's accommodation needs.
- DSS failed to enforce disability laws and compel provider compliance.

- Defendant unnecessarily institutionalized plaintiff by delaying accommodations.

This demonstrates a clear line tracing Plaintiff's injuries to the discriminatory conduct of defendants who control the housing programs.

Redressability The requested relief of enjoining Defendants to immediately grant priority accessible housing placement, along with compensatory damages, would directly redress the Plaintiff's injuries by:

- Providing equal access to integrated, accessible housing as required by law.
- Allowing the Plaintiff to live independently with reasonable accommodations.
- Avoiding further segregation or safety issues in non-accommodated units.
- Compensating for emotional/dignitiary harms from unequal treatment.

Based on clearly evidenced and particularized housing discrimination injuries that are traceable to and redressable by the named Defendant, the blind Plaintiff has proper legal standing to pursue all causes of action and arguments raised under the FHA, Rehabilitation Act, ADA, and Olmstead ruling.

The systemic denial of legally-mandated reasonable accommodations meets the constitutional standing requirements for the Plaintiff to seek enforcement and remedies in federal court against the housing providers and Defendant oversight agency. Standing is firmly established.

## Count VII

### Seventh Cause of Action

### Disparate Treatment and Disability Discrimination a Violation of the Americans with Disabilities Act (ADA) (42 U.S.C. §§ 12101–12213)

**Plaintiff** incorporates by reference all preceding paragraphs as if fully set forth herein.

The Defendant intentionally discriminated against the Plaintiff by giving priority for housing and housing-related services to miggrants, aslymn seekers and domestic violence victims while denying equal priority and access to disabled individuals like the Plaintiff who suffers profound blindness. To add more insult to injury when medical experts wrote requesting reasonable accomodations for Plaintiff, i.e., to be placed in a sheleter in Manhattan near his doctors he instead was sent to a shelter at Randals Island. All the while they could have easily placed him in a shelter in lower Manhattan or a Hotel, like the Defendant's have accomodated the miggrants, aslymn seekers and

*36 of 44*

domestic violence victims.

For instance, while migrants are provided with accommodations in hotels equipped with their own amenities, including private bathrooms, our client, the Plaintiff, is relegated to a shelter where basic facilities pose significant challenges, particularly for someone who is blind. The Plaintiff must navigate through hazardous conditions just to access essential facilities like the bathroom, a task made infinitely more difficult by his disability.

Furthermore, migrants with children are accommodated by being placed in close proximity to their children's schools, ensuring convenience and accessibility. In stark contrast, Plaintiff's needs and preferences, as a disabled individual requiring access to medical facilities, were blatantly disregarded by the Defendant. This disparate treatment is not only unjust but also underscores the Defendant's callous disregard for the basic rights and needs of individuals like our Plaintiff.

This amounts to disparate treatment and intentional discrimination against the Plaintiff based solely on their disability, in violation of the **Fair Housing Act, Americans with Disabilities Act, Rehabilitation Act**, and other applicable federal and state laws prohibiting such discrimination.

These laws require that housing providers make reasonable accommodations to rules, policies, and practices to allow equal access and enjoyment for disabled individuals like the Plaintiff. By systemically prioritizing other groups over disabled persons, the Defendant intentionally denied the Plaintiff's right to non-discriminatory treatment and equal opportunity in housing afforded to them by virtue of their profound blindness disability.

The Defendant were aware that the Plaintiff suffered from blindness, which constitutes a severe disability substantially limiting major life activities. Despite this knowledge, they consciously implemented policies and practices that deprioritized and excluded disabled individuals in favor of other groups. This intentional and systematic disparate treatment of the Plaintiff, withholding benefits and access afforded to other groups, violates statutory and constitutional prohibitions on disability-based discrimination.

The Defeendant embraced a campaign that would treat other groups in a more accomoodatable form then him, a disabled blind person.

**Emergency Hotels Contract to Shelter Migrant Families. The Post By Carl CampanilePublished Jan. 23, 2024, 4:00 p.m. ET**https://nypost.com/2024/01/23/metro/nyc

"*Migrants and asylum seekers are receiving more treatment and support compared to*

*normal citizens in New York City due to the specific programs and initiatives tailored to their needs. The city has allocated significant funds for emergency housing contracts with hotels to shelter migrant families, providing them with temporary accommodation for up to 28 days under the "vouchering" system. These emergency contracts, amounting to millions of dollars, demonstrate a focused effort by the city to ensure that migrant families have a place to stay and are not left on the streets".*

Furthermore, proposals have been discussed to expand housing vouchers for immigrants, allowing them to move out of shelters and into affordable apartments.

Therefore, the targeted programs and financial investments made by Defendant towards migrants and asylum seekers, such as emergency housing contracts and housing voucher expansions, indicate a higher level of treatment and support being provided to these populations compared to normal citizens or homeless individuals who rely on existing shelter policies, like Plaintiff.

The Plaintiff asserts that the Defendant's actions constitute disparate treatment and disability discrimination in violation of the ADA. As such, the Plaintiff seeks redress for these violations and requests appropriate relief in accordance with federal law.

## Count VIII

### Eighth Cause of Action

### (Violation of the Sandra Butler et al. v. City of New York et al., No. 15-CV-3783 (RWS) (JLC) (S.D.N.Y. 2017), Stipulation of Settlement (class action))

**Plaintiff** incorporates by reference all preceding paragraphs as if fully set forth herein

Plaintiff asserts a cause of action for violation of *Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action).* The Americans with Disabilities Act (ADA) mandates non-discrimination against individuals with disabilities in all facets of public life, encompassing housing as per **42 U.S.C. § 12132.**

The *Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action),* established specific protocols and procedures within New York City shelters to ensure the provision of reasonable accommodations for disabled individuals. These accommodations were designed to facilitate access and participation for disabled persons, including

but not limited to those with visual impairments like Plaintiff's blindness. The decree also mandated the establishment of ADA-compliant shelters, which must adhere to accessibility standards to accommodate disabled individuals effectively.

The ***Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action),*** established clear requirements for New York City's shelters to provide reasonable accommodations to disabled individuals like Plaintiff in order to ensure equal access and the ability to fully participate. Specifically for those with visual impairments, the decree mandated accommodations to *facilitate independent navigation, communication, and daily functioning within the shelter environment.*

By placing Plaintiff, a legally blind individual, in the Randall's Island shelter despite his accommodation request for a location with proximity to his support services, the Defendant has violated the very protocols set forth in the ***Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action)***. This isolated placement has outright denied Plaintiff the reasonable accommodations he required and was entitled to under the decree, including:

1. An accessible shelter location in reasonable proximity to his medical providers, educational institution, and critical vision services. The excessive travel times and transportation barriers created by placing him on Randall's Island have effectively cut off his access to this vital support system for independence as a blind person.
2. Accessible transportation that provides door-to-door service from the Access-A-Ride drop-off to the actual shelter entrance. The City's listing of the Randall's Island shelter as a "black site" has forced Plaintiff to navigate a treacherous final path riddled with hazards like obstructions, lack of tactile cues, and vehicle traffic - putting his safety at unacceptable risk.
3. Accommodations to ensure continuation of his vision rehabilitation, mobility training, assistive technology instruction and mental health services. The disruptions and lapses caused by the improperly distanced placement have stalled Plaintiff's development of essential independent living skills.

Moreover, the ***Butler decree*** required the establishment of ADA-compliant shelters that meet stringent accessibility standards. However, the hazards, lack of accessible pathways, and failure to provide transportation access clearly demonstrate that the Randall's Island shelter falls drastically short of ADA compliance for a blind individual like Plaintiff.

The Shelter Lacks Reasonable Accommodations:

- The shelter provided by the Defendant is woefully lacking in ADA accessibility, particularly concerning accommodation for individuals with visual impairments, such as the Plaintiff.
- Crucial features like audio cues, tactile markers, and other accommodations necessary for independent navigation and communication within the shelter environment are conspicuously absent, directly contravening the ADA and the mandates delineated in the Butler decree.

Non-compliance with Accessibility Standards:

- The shelter's failure to meet the accessibility standards mandated by the Butler decree and the ADA is glaring.
- Specific requirements, including but not limited to accessible pathways, properly equipped facilities, and adequate accommodations for individuals with visual impairments, have not been fulfilled, significantly disadvantaging the Plaintiff and impeding his ability to fully participate in shelter life.

Inaccessible Laundromat Facilities:

- The laundromat within the shelter lacks features necessary for blind individuals to access and utilize it effectively, such as tactile markers or audible cues.

Challenges in Accessing Dining Area:

- Navigating the dining area poses significant challenges for blind individuals, particularly when using a cane for mobility, impeding their ability to access meals independently.

Inadequate Pathways and Outdoor Terrain:

- The shelter's design and outdoor pathways present formidable obstacles for blind individuals attempting to navigate the premises, increasing the risk of falls and injuries.

Absence of Shelter-Wide Accessibility Features:

- Essential amenities lack comprehensive accessibility features designed to accommodate the needs of blind individuals, further marginalizing them within the shelter community.

Failure to Provide Shelter Staff Training:

- Shelter staff lack adequate training to assist blind individuals effectively or address accessibility barriers, exacerbating the challenges faced by the plaintiff.

Lack of Braille Materials:

- Essential documents and informational materials within the shelter, such as facility rules, emergency procedures, and service offerings, may not be available in Braille format, hindering blind individuals' access to vital information.

Inaccessible Communication Systems:

- The shelter may lack accessible communication systems, such as TTY (Text Telephone) devices or video relay services, making it challenging for blind individuals to communicate with shelter staff or access external services.

Unmarked Hazardous Areas:

- Hazardous areas within the shelter, such as steps, changes in elevation, or obstructions, may lack adequate marking or tactile indicators, posing safety risks for blind individuals navigating the premises.

Absence of Visual Impairment Training Programs:

- The shelter may not offer training programs specifically tailored to individuals with visual impairments, such as orientation and mobility training or daily living skills workshops, depriving blind individuals of essential resources for independence and adaptation.

Limited Access to Assistive Technology:

- The shelter lacks access to essential assistive technology devices for blind individuals, such as screen readers, magnification software, or Braille displays, further limiting their ability to access information and engage with technology.

Insufficient Lighting and Contrast:

- Inadequate lighting and poor contrast in the shelter environment may exacerbate challenges for individuals with low vision, making it difficult to navigate indoor spaces or identify important features and signage.

Lack of Guided Assistance Services:

- The shelter does not provide guided assistance services or volunteer programs specifically designed to support blind individuals with tasks such as meal assistance, transportation arrangements, or recreational activities.

Plaintiff contends that despite the existence of the *Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action)* and its associated provisions, the shelter to which he was assigned fails to meet ADA accessibility standards. Specifically, the shelter lacks the necessary accommodations and features to adequately cater to Plaintiff's needs as a visually impaired individual. This deficiency directly contravenes the spirit and letter of the *Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action),* which was designed to ensure equal access and non-discrimination for disabled individuals within New York City shelters.

By failing to provide an ADA-accessible shelter environment and to implement the requisite accommodations mandated by the *Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action)*, the Defendant has violated Plaintiff's rights under the ADA. This violation has resulted in tangible harm to Plaintiff, as he has been deprived of the reasonable accommodations and access to shelter services to which he is entitled under federal law and the terms of the *Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action).*

In egregiously failing to place Plaintiff in an appropriately accommodated shelter within proximity to his services and support system, as was reasonably requested, the Defendant has violated both the stipulations and the intent of the *Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action)*. This breach represents a blatant disregard for Plaintiff's rights and the court-mandated protocols to integrate disabled individuals into shelter services. The Defendant's actions abandoned its legal obligation and duty to ensure true accessibility and reasonable accommodation for Plaintiff's visual impairment.

Therefore, Plaintiff seeks redress from this Honorable Court for the Defendant's violation of the *Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action)* and the ADA, and requests appropriate relief to remedy the harm caused by the Defendant's non-compliance with federal disability rights laws.

## Count VIIII
### Ninth Cause of Action
### Negligence

**Plaintiff** incorporates by reference all preceding paragraphs as if fully set forth herein.

As a disabled individual afflicted with the profound impairment of blindness, Plaintiff falls within a class for whom the Defendant bears heightened legal obligations regarding housing needs. The severity and permanence of Plaintiff's disability, which fundamentally distinguishes him from the average person, engender a commensurately heightened duty of care owed by the Defendant.

However, the Defendant negligently failed to uphold adequate policies and procedures tailored to address the specific housing challenges inherent in profound visual disabilities such as blindness. This failure directly resulted in a lack of accommodation for Plaintiff's disability, exacerbated by prolonged wait times that were wholly inappropriate given the severity of Plaintiff's impairment.

By breaching its duty of care towards Plaintiff, the Defendant directly caused harm by failing to provide reasonable accommodation for his disability within a reasonable timeframe. This breach constitutes an act of negligence under federal law and warrants legal redress. Therefore, Plaintiff seeks relief from this Honorable Court in accordance with the principles of federal negligence law.

# REQUEST FOR RELIEF

WHEREFORE, **Plaintiff** respectfully requests this Court to:

Declare that the Defendant's failure to provide **Plaintiff** with permanent accessible housing violates the ***ADA***, the ***Rehabilitation Act,*** the ***Fair Housing Act, Olmstead v. L.C., Sandra Butler et al. v. City of New York et al., 15-CV-3783 (S.D.N.Y., 2017) Stipulation of Settlement (Class Action)*** and related federal laws;

Order the **Defendant** to immediately provide Plaintiff with permanent accessible housing near his medical providers and rehabilitative services that are vital to his disabilities;

Order **Plaintiff** be moved to an accessible shelter near his medical providers, and rehabilitative services that are vital to his disabilities;

Order the **Defendant** to cease its discriminatory practices;

Award **Plaintiff** compensatory damages for the harm he has suffered; and,

Award **Plaintiff** any other relief this Court deems just and proper.

Respectfully submitted,

Franklin Mendez

Pro Se

CC: w/encl.

Commissioner **Molly Wasow Park ,** New York City Department of Social Services
Human Resources Administration, Department of Homeless Services 150 Greenwich St., 40th Floor,
New York, NY 10007

Service is to Defendant:

**Molly Wasow Park**

**Comissioner  (DSS)**

**New York City Department of Social Services**

**150 Greenwich St., 40th Floor, New York, NY 10007**

44 of 44

3/24/24, 10:51 AM        NYC Department of Social Services Commissioner Park Announces Key Agency Accomplishments in 2023 - DHS

Case 1:24-cv-02486-UA   Document 1   Filed 04/01/24   Page 45 of 105

Menu



Department of
Homeless Services
Department of
Social Services

Search
Inside DHSNewsContact

## Select             ⌄

- Recent Press Releases
- Public Testimony
- Social Media

# Press Release

**FOR IMMEDIATE RELEASE:** December 21, 2023

**CONTACT:** press@dss.nyc.gov

### NYC Department of Social Services Commissioner Park Announces Key Agency Accomplishments in 2023

*In 2023, the Department of Social Services Served More New Yorkers in Need, Connected More Vulnerable Households to Permanent Housing, and Implemented New Tools, Programs, and Reforms to Better Assist Those the Agency Serves.*

As 2023 comes to a close, New York City Department of Social Services (DSS) Commissioner Molly Wasow Park today highlighted the agency's key accomplishments over the past year, underscoring how DSS continues to deliver for vulnerable New Yorkers while developing and implementing innovative programs and tools that enhance services and improve access to critical supports.

"Thanks to our incredible staff and an administration that continues to take the necessary steps to support our most vulnerable neighbors, DSS was able to implement numerous initiatives and program reforms that benefited those we serve," said **DSS Commissioner Molly Wasow Park.** "From connecting more households in shelter to permanent housing and further expanding CityFHEPS to using social services contracts to support the creation of permanent housing and replacing stolen public benefits, DSS has taken meaningful action to enhance the supports and services we offer. We have seen the positive impacts of these changes, and we look forward to building on these successes with all our partners in the new year."

Notable accomplishments from the past year include:



3/24/24, 10:51 AM
NYC Department of Social Services Commissioner Park Announces Key Agency Accomplishments in 2023 - DHS
Case 1:24-cv-02486-UA   Document 1   Filed 04/01/24   Page 46 of 105

**Connecting More New Yorkers to Permanent Housing:** In Fiscal Year 2023 (FY23), following Mayor Adams' package of CityFHEPS reforms, more New Yorkers than ever were able to use their CityFHEPS voucher to obtain permanent affordable housing. Furthermore, DSS helped a total of nearly 15,000 households move out of shelters and into permanent housing using a variety of tools and subsidies, reflecting a roughly 17 percent increase fiscal year-over-fiscal year. The agency also increased overall placements in supportive housing by 32 percent over the same period. This success has continued into FY24 – permanent housing placements from shelter using CityFHEPS vouchers have increased 10 percent during the first three months of FY24 compared to the first three months of FY23.

**Supporting New Yorkers Experiencing Unsheltered Homelessness:** The Adams administration's unprecedented investments to address unsheltered homelessness continue to pay off. Over 50 of the 100 hardest to reach New Yorkers living on city streets and subways are now stabilizing their lives in a supportive setting. This marks a 145 percent increase over the prior year. Since January 2022, homeless outreach staffing has increased by 60%, and during FY23, outreach staff referred over 8,5000 individuals to shelter – 70 percent more people than were referred in FY22. Additionally, approximately 1,000 people in DSS-DHS low-barrier programs moved to permanent housing during FY23 — a 130 percent increase over FY22. DSS-DHS continues to build on this progress by ramping up training for outreach staff and by opening 270 Safe Haven and stabilization beds during this winter season, including the newly opened, hybrid low-barrier program near one of the city's busiest end-of-line subway stations.

**Eliminating the 90-Day Rule:** Building on last year's robust package of CityFHEPS reforms, which included expanding eligibility to include single adults working full-time and earning minimum wage, even if their income is slightly higher than 200 percent of the federal poverty level, reducing the monthly contribution by CityFHEPS tenants who move into single-room occupancy units from 30 percent of their income to a maximum of $50 per month, reducing the number of hours families are required to work to become eligible for CityFHEPS, and covering the cost of apartment application fees for New Yorkers living in DHS shelters, Mayor Adams eliminated the 90-day length of stay requirement for New Yorkers in shelter to become eligible for CityFHEPS vouchers. This reform significantly expanded access to this critical rental assistance for all populations in shelter and allowed for expedited moves to permanent housing by removing unnecessary barriers and red tape.

**Expanding CityFHEPS Statewide:** In order to expand the pool of housing available to voucher holders and provide the long-requested flexibility clients have requested, Mayor Adams and DSS took the commonsense step to allow CityFHEPS voucher holders to utilize their voucher anywhere within New York State, not just within New York City. This further aligns CityFHEPS with federal rental assistance standards. Since the statewide expansion, 15 households are already in the process of moving or have moved to localities outside of New York City.

**Implementing Technological Improvements for CityFHEPS:** DSS made technological enhancements to the CityFHEPS program to allow voucher holders to renew their voucher and check its status online using DSS's benefits portal ACCESS HRA and the ACCESS HRA mobile app.

**Providing Replacement Benefits to Victims of Electronic Benefits Theft:** As a result of state and federal legislation, DSS-HRA was able to begin administering replacement benefits to New Yorkers had their Cash Assistance and/or SNAP benefits electronically stolen. Since the replacement process began in August, DSS-HRA has replaced over $15 million in stolen benefits – reconnecting New Yorkers with the vital benefits that are rightfully theirs.

EXHIBIT A

3/24/24, 10:51 AM
NYC Department of Social Services Commissioner Park Announces Key Agency Accomplishments in 2023 - DHS

Case 1:24-cv-02486-UA   Document 1   Filed 04/01/24   Page 47 of 105

**Launching Online Medicaid Applications:** Beginning August 26, 2023, DSS launched a major new module in ACCESS HRA that allows New York City residents to complete and submit their Medicaid or Medicare Savings Program application online, instead of completing hardcopy forms. The ACCESS HRA mobile app can also be used to submit supporting documentation. The online Medicaid application can be accessed through www.nyc.gov/accesshra.

**Expanding Fair Fares Income Eligibility:** Mayor Adams, in partnership with the City Council, invested an additional $20 million in the Fair Fares program, bringing baseline funding to $95 million annually and allowing DSS-HRA to, for the first time, expand income eligibility standards for the Fair Fares transit discount. Income eligibility was increased from 100 percent of the federal poverty level (FPL) to 120 percent FPL making more New Yorkers eligible for half-priced fares on subways, eligible buses, or MTA Access-A-Ride paratransit trips. New Yorkers can visit the Fair Fares website to learn more and apply online.

**Connecting New Yorkers to Jobs Through the HIRE-NYC Program:** The HIRE-NYC program requires organizations with human services contracts to hire one Cash assistance recipient for every $250,000 in annual contract value. This ensure that contractors who benefit from city money are, doing their part to employ low-income New Yorkers. This program has resulted in 5,860 hires in FY23.

**Honoring our Future Leaders:** After several years of remote ceremonies and alternate locations as a result of the COVID-19 pandemic, DSS-DHS's annual celebration of high school graduates experiencing homelessness returned to the Smithsonian Institution's National Museum of the American Indian. This year's ceremony saw Deputy Mayor for Health and Human Services Anne Williams-Isom, DSS Commissioner Molly Wasow Park, Department of Education Chancellor David C. Banks, and DHS Administrator Joslyn Carter recognize the accomplishments of students in shelter who graduated high school and award $2,000 scholarships to ten college-bound high school seniors. All students participating in the Future Leaders program received DHS-funded laptops and those who made a post-graduate commitment received a "Move-in" duffel bag full of supplies.

### ###

**About the New York City Department of Homeless Services:** The Department of Social Services, comprised of the Human Resources Administration (HRA) and the Department of Homeless Services (DHS), serves millions of New Yorkers annually through a broad range of services that aim to address poverty, income inequality, and prevent homelessness. HRA serves over three million New Yorkers through the administration of more than 12 major public assistance programs. DHS oversees a broad network of shelters, services, and outreach programs dedicated to helping New Yorkers experiencing homelessness get back on their feet. DSS is central to the City's mission to expand opportunity for more New Yorkers, address income inequality, help New Yorkers experiencing homelessness stabilize their lives, and ensure that vulnerable New Yorkers receive the benefits and assistance for which they may be eligible.



EXHIBIT A



| | |
|---|---|
| **MANHATTAN** | 1010 Avenue of the Americas, Suite 301, New York, NY 10018<br>tel: 212.674.2300 fax: 212.254.5953 vp: 646.350.2681 |
| **QUEENS** | 80-02 Kew Gardens Road, Suite 400, Kew Gardens, NY 11415<br>tel: 646.442.1520 fax: 357.561.4883 |
| | **www.cidny.org** |

2/21/2024

Ensuring Equal Access and Rights for Individuals with Disabilities

To Whom It May Concern:

I am writing on behalf of my client, Franklin Mendez, regarding their need for shelter placement and accommodations due to their disability. Mr. Mendez is legally blind and registered with the New York State Commission for the Blind # 189038

As an Independent Living Advocate assisting clients with housing crises, I have been working closely with Franklin Mendez to find affordable housing as they face imminent homelessness. Despite extensive efforts over 7 months, their disability has posed significant barriers to securing stable housing.

Franklin Mendez experiences blindness and requires reasonable accommodations more now that he will be in a shelter placement, and so please accommodate him with the following which includes:

- A private room to allow for accessibility modifications dim lighting.
- Ground floor/accessible room to accommodate inability to use stairs.
- Proximity to needed disability services for health and independence a Manhattan shelter would be perfect for his continued Rehabilitation.

Shelter accommodations are critical given Franklin Mendez's disability and housing instability. I urge you to give every consideration to approving reasonable accommodations that will provide safety and dignity.

Please reach out with any questions. Thank you for your time regarding this urgent matter.

Sincerely,

Warleny Colón
Borough Manager, NY Connects (Manhattan
Center for Independence of the Disabled, NY
1010 Avenue of the Americas, Suite 301, New York, NY, 10018
Tel/Fax: 1-646-849-8086
https://www.cidny.org/nyconnects/


EXHIBIT B

 **Lighthouse Guild**

Pt Name: FRANKLIN MENDEZ

Pt Address: 550 W 174TH ST Apt 5 NEW YORK NY 10033

Pt DOB: 05/08/1976

NYSCB 189038

Encounter Date: 02/12/2024

---

Admissions Department
Men's Intake Shelter
400 East 30th Street
New York, N.Y. 10016

RE: Placement for Franklin Mendez:  Letter requesting Reasonable Accommodations and Appropriate Shelter Pleacement

Dear Admissions Department;

This letter is to certify that FRANKLIN MENDEZ  is legally blind. FRANKLIN MENDEZ has been a patient in our clinic since 2023 and suffers from Advanced Myopic Degeneration in each eye. Their best-corrected visual acuity measures Hand Motion in the right eye and Hand Motion in the left eye.

I am writing to request reasonable accommodations and special consideration for the shelter placement of my patient, Franklin Mendez.  As his low vision optometrist, I can attest that Mr. Mendez' visual acuity has deteriorated significantly.  He currently meets the criteria for legal blindness set forth in New York State and is a registered client of New York State's Commission for the Blind, which supplies him with Vision Rehabilitation services to help him manage his profound vision loss.

Due to the nature of his condition, Mr. Mendez faces difficulties with tasks that rely  on vision, such as navigating crowded or unfamiliar environments.  He requires well- lit surroundings and the ability to maintain a clear, uncluttered living space.  Mr. Mendez is at risk for falls in crowded areas, whereby he might suffer a retinal detachment and lose any remaining vision he has.

For these reasons, I do not believe that a multi-occupancy shelter setting would provide an appropriate level of accessibility and independence for Mr. Mendez.

It is my professional medical opinion that a private room placement would best accommodate Mr. Mendez' needs and allow him to care for himself safely.

Additionally, as his low vision optometrist, I ask that you strongly consider shelter locations in Manhattan so that he may continue receiving specialized medical and rehabilitative services from Lighthouse Guild and partners at Vision Therapeutic Centers, SUNY Optometry where he is being treated by a retinal specialist without impediment.



Thank you in advance for your consideration of this request. I hope that you will be able to assist mr. Mendez in securing reasonable accommodations and appropriate placement that supports his vison-related needs and independence.

If you have any questions, please feel free to contact me.

Sincerely,

Andrea Zimmerman OD FAAO
2/12/2024 11:01 AM (EST)

JGB Rehabilitation Corporation, Inc | 250 W 64TH ST NEW YORK NY 10023-6301 | 212-769-6300

EXHIBITC

| Name: | Mendez, Franklin | | | |
|---|---|---|---|---|
| ID: | 481264 | Exam Date: | 2/22/2023 | CZMI |
| DOB: | 5/8/1976 | Exam Time: | 1:57 PM | |
| Gender: | Male | Serial Number: | 5000-6605 | |
| Technician: | Operator, Cirrus | Signal Strength: | 9/10 | |



## High Definition Images:  HD Radial       OD    ○ OS

Length:   6 mm







| Comments | Doctor's Signature | CIRRUS6<br>SW Ver: 9.5.0.11469<br>Copyright 2016<br>Carl Zeiss Meditec, Inc<br>All Rights Reserved<br>Page 1 of 1 |
|---|---|---|

EXHIBIT C



EXHIBIT C



EXHIBIT C



EXHIBIT C

Name:   Mendez, Franklin

ID:   481264
DOB:   5/8/1976
Gender:   Male
Technician:   Operator, Cirrus

Exam Date:   2/22/2023
Exam Time:   1:59 PM
Serial Number:   5000-6605
Signal Strength:   8/10

CZMI

 

## High Definition Images:   HD Radial

OD ◯ ◉ OS

Length:   6 mm









| Comments | Doctor's Signature | CIRRUS6 |
|---|---|---|

SW Ver: 9.5.0.11469
Copyright 2016
Carl Zeiss Meditec, Inc
All Rights Reserved

Page 1 of 1



ame: Mendez, Franklin                              DOB: 05/08/1976                              Date: 02/22/2023



**diagnosys**
*leading the wave*

[Espion: 0-463 Software: 6.64.21724.14] **2 of 2**

Patient: **MENDEZ,FRANKLIN DOB:5/8/1976 Hospital #:100000063223 Male**
Date Tested: 4/20/2023 Time Tested: 2:33:49 PM Pupil mm(R/L): 5:5

Full ISCEV Standard ERG (light first) [14127-D || ECN 1600 || 5 February 2021]

### 3 - Dark-adapted 0.01 ERG



Stim Parameters
Flash 0.01 (P)cd.s/m²White-6500K

1-OD ERG [RE]

| Markers | | | | |
|---|---|---|---|---|
| Name | uV | Norm | ms | Norm |
| a | -252.4 | -33.1+/-43.9 | 44.5 | 38.9+/-12 |
| b | 207.6* | 207+/-161.9* | 100 | 95.3+/-18.5 |

2-OS ERG [LE]

| Markers | | | | |
|---|---|---|---|---|
| Name | uV | Norm | ms | Norm |
| a | -149.6 | -33.1+/-43.9 | 38.5 | 38.9+/-12 |
| b | 133.4* | 207+/-161.9* | 88.5 | 95.3+/-18.5 |

### 5 - Dark-adapted 10.0 ERG



Stim Parameters
Flash 10 (P)cd.s/m²White-6500K

1-OD ERG [RE]

| Markers | | | | |
|---|---|---|---|---|
| Name | uV | Norm | ms | Norm |
| a | -488 | -191.9+/-73.2 | 16 | 12.7+/-1.4 |
| b | 247.8* | 309.7+/-136.2* | 66 | 44.1+/-10.6 |

2-OS ERG [LE]

| Markers | | | | |
|---|---|---|---|---|
| Name | uV | Norm | ms | Norm |
| a | -546 | -191.9+/-73.2 | 16 | 12.7+/-1.4 |
| b | 174.8* | 309.7+/-136.2* | 64.5 | 44.1+/-10.6 |

EXHIBIT C

Name: Mendez, Franklin                    DOB: 05/08/1976                    Date: 04/20/2023



SUNY COLLEGE OF OPTOMETRY
UNIVERSITY EYE CENTER &: 02/27/2024

**TO:**
Men's Intake Shelter
400 East 30th Street
New York, New York 10016

RE: Franklin Mendez
550 West 174th Street
Apt 5
New York, NY 10033-

To Whom It May Concern,

I am writing on behalf of my patient, Franklin Mendez to request reasonable accommodations such that he be placed in a single room in a homeless shelter in Manhattan so he can access his medical care. He is legally blind in both eyes secondary to degenerative myopia in both eyes. He would benefit from living in a single room due to safety hazards, such as other people's belongings and chargers being on the floor, in a shared room. These put him at greater risk of tripping and falling due to his visual impairment and put him at risk for having a retinal detachment if he falls or bumps into something.

Mr. Mendez is regularly followed up for his eye conditions at Advanced Care Clinic and Low Vision Clinic at University Eye Center in Manhattan. He would benefit from being in closer proximity to the locations of his medical services to ensure that he is able to more easily and safely commute to his doctor's appointments and safely return to the shelter before dark. He also attends programs at Visions in Manhattan, which is a program that helps visually impaired adults adapt to daily life. This will also help ensure that he is able to make his appointments and receive the medical care and additional assistance he needs. Mr. Mendez is also a currently a student at John Jay College in Manhattan, and he currently takes 3 trains to attend class. Living in a shelter in Manhattan would allow him to more safely commute to school, as well.

Thank you in advance for taking these needs into consideration.

Sincerely,


*Provider:*
Mikos, Kamila  02/27/2024 1:37 PM

Document generated by:  Kamila Mikos  02/27/2024

---

**33 WEST 42nd STREET, NEW YORK, NY  10036 P (212) 938 4001    F (212) 938 4037**

www.UniversityEyeCenter.org

Electronically signed by Kamila Mikos OD, FAAO on 02/27/2024 01:40 PM





SUNY COLLEGE OF OPTOMETRY
UNIVERSITY EYE CENTER ® 02/26/2024

Franklin Mendez
550 West 174th Street
Apt 5
New York, NY 10033
DOB 05/08/1976

To Whom It May Concern,

This is a request to have Franklin Mendez, a patient at University Eye Center, to be relocated to a single room in a homeless shelter in Manhattan. He is legally blind in both eyes secondary to degenerative myopia in both eyes. He would benefit from living in a single room due to safety hazards, such as other people's belongings and chargers being on the floor, in a shared room. These put him at greater risk of tripping and falling due to his visual impairment and put him at risk for having a retinal detachment if he falls or bumps into something.

Mr. Mendez is regularly followed up for his eye conditions at Advanced Care Clinic and Low Vision Clinic at University Eye Center in Manhattan. He would benefit from being in closer proximity to the locations of his medical services to ensure that he is able to more easily and safely commute to his doctor's appointments and safely return to the shelter before dark. He also attends programs at Visions in Manhattan, which is a program that helps visually impaired adults adapt to daily life. This will also help ensure that he is able to make his appointments and receive the medical care and additional assistance he needs. Mr. Mendez is also a currently a student at John Jay College in Manhattan, and he currently takes 3 trains to attend class. Living in a shelter in Manhattan would allow him to more safely commute to school, as well.

Thank you in advance for taking these needs into consideration.


Sincerely,


Provider:
Weinstein, Susan  02/26/2024 3:23 PM

Document generated by: Nishita Patel  02/26/2024

-----------------------------------------------------------------------------------------------------------

33 WEST 42nd STREET, NEW YORK, NY  10036 P (212) 938 4001   F (212) 938 4037

www.UniversityEyeCenter.org


Electronically signed by Susan Weinstein OD on 02/26/2024 04:03 PM





Office of Accessibility
Elena Beharry, PsyD
Interim Director

524 West 59th Street, room L68.00
New York City, NY 10019
T. 212.237.8148
Accessibilityservices@jjay.cuny.ed

February 14, 2024

To Whom It May Concern:

Mr. Franklin Mendez is currently enrolled as a part-time student at John Jay College of Criminal Justice.  He is taking two fully online (remote) courses for the Spring 2024 semester, which are as follows:

CJBS 101- American CJ System
PSC 101-Introduction to Police Studies.

Mr. Mendez is registered with the College's Office of Accessibility Services and receives the following accommodations for his visual impairment:

Priority Registration
Additional Time on Exams (Double Time)
Alt. Format: Large Print
Less Distractive Environment
Note-Taker
Screen Reader
Software – Reading Assist (+LD)
Use of a Scribe
Other Assistive Technology

If you have any questions or concerns, feel free to contact me at ebeharry@jjay.cuny.edu or call me 212-237-8148 or 8031.


Elena Beharry, PsyD

Interim Director

Office of Accessibility Services

John Jay College of Criminal Justice


EXHIBIT F



 **Lighthouse Guild**

02/09/2023

Re: Franklin Mendez
D.O.B. 05/08/1976

To whom it may concern,

Mr. Franklin Mendez has been seen at Lighthouse Guild for low vision services.
Mr. Mendez is diagnosed with degenerative myopia with other maculopathy.
Mr. Mendez is legally blind. His vision loss impacts his ability to utilize public
transportation. Mr. Mendez would greatly benefit from transportation services
through Access-A-Ride in order to get him to all of his destinations in a safe manner.

If you have any questions in this regard, please contact me at the number listed
below. Thank you.

Sincerely,

Andrea Zimmerman, OD, FAAO
Low Vision Clinician
212-769-6313

EXHIBIT G



**OFFICERS**
President
  Robert Schonbrunn*⊛
Past President
  Nancy T. Jones*
Vice President
  Dr. Cynthia Stuen⊛
Treasurer
  Burton M. Strauss, Jr.
Asst. Treasurer
  Kenneth J. Gralak⊛
Secretary
  Denise G. Rabinowitz

**BOARD OF DIRECTORS**
Sheldon I. Berg
Jyotika Bisht
Sherilyn Casiano
Ken Drucker
Dr. Andrew S. Fisher
Lucius L. Fowler*
Frances Freedman
Gloria Fu
Robert Heidenberg
Steven E. Kent
Theodore P. Klingos*
Dr. James McGroarty⊛
Jagadish B. Rao⊛
Peter A. Roffman
Anusha Sharma
Rebecca Zarett

**ADVISORY COUNCIL**
Lois Wagh Aronstein⊛
Mai L. Barasch
Joseph L. Corace^
Ronald C. Delo⊛
Donald F. Dunning⊛
Susan Hale
Robert S. Loeb⊛
Michael O'Halloran⊛
David J. Orenstein
Angela Purcigliotti⊛
Henry Saveth
Dr. Albert D. Widman
Stuart S. Wizwer⊛
Nora Xie

**ADVISORY BOARDS**
Bronx-Westchester
Brooklyn
Center on Aging
Manhattan
Queens
Staten Island
VCB

**EXECUTIVE DIRECTOR/CEO**
Nancy D. Miller⊛

* Trustee, Fund for the Blind
⊛ Lion
^ Kiwanian

A copy of our most recent financial
statement is available by writing
to VISIONS or the NYS Dept of Law
Charities Bureau:
120 Broadway, 3rd Floor,
New York, NY 10271

February 12, 2024

To whom it may concern,

I am reaching out to you because Mr. Franklin Mendez has informed me he has to leave his home in the city due to asbestos. As you can imagine this is a very traumatic experience and can cause a great deal of instability.

At present he attends our community center, VISIONS SERVICES FOR THE BLIND AND VISUALLY IMPAIRED located on 23rd street in Chelsea. Mr. Franklin attends multiple times during the week and has no issues in his current travel. Our center is accessible for him because his home is in the city.

For accessibility reasons it would be easier for him during this transition to be placed in a shelter in Manhattan if possible. Because this is a difficult issue it's strongly recommended that he be able to continue to easily access our services and rely on us for support during this time.
If you need to reach me for any reason to discuss this further, please feel free to reach out to me at (646)486-4444 ext. 225.

Thank you for this consideration.

Ann De Shazo, LMSW
Director of VISIONS at Selis Manor

**Promoting the Independence of People of All Ages Who Are Blind or Visually Impaired**

VISIONS CENTER ON BLINDNESS (VCB) | VISIONS AT SELIS MANOR | VISIONS REHABILITATION SERVICES

VISIONS/SERVICES FOR THE BLIND AND VISUALLY IMPAIRED  500 Greenwich St. 3rd Floor, New York, NY 10013-1354
Tel: 212-625-1616  Fax: 212-219-4078  E-mail: Info@visionsvcb.org Website: www.visionsvcb.org



EXHIBIT H



2/13/24

Bellevue Men's Shelter
400 East 30th Street
NY, NY 10016

To Whom It May Concern,

I am writing to request that Franklin Mendez (D.O.B. 05/08/76) be placed in a shelter that is close to my office at 250 West 64th St., NY, NY 10023. Franklin Mendez is a legally blind individual who I see for psychotherapy in person every week. It is vital that he continue to receive this service weekly.

Franklin Mendez is struggling with a number of mental health challenges, including severe depression and anxiety. Therapy is helping Franklin Mendez to cope with these challenges and to develop strategies for living a full and meaningful life.

Having sessions by phone or Zoom is not an option. Having a shelter that is close to my office would make it easier for Franklin Mendez to get to his appointments on time and without undue burden. He is also taking two college courses at John Jay College and he needs to go there three days per week as well. Being placed in a shelter close to these two locations would reduce the stress and anxiety that Mr. Mendez experiences when traveling. As you know, Access-a-ride is notoriously unreliable. Given his blindness, traveling long distances imposes significant stress and safety risks. A proximal shelter placement is crucial for ensuring Mr. Mendez's access to care.

I urge you to give thoughtful consideration to this reasonable accommodation request which would allow Mr. Mendez to get his life back on track. Please do not hesitate to contact me if you need any additional information. Thank you for your time and consideration.

Sincerely,

Susan Miller, LCSW
Social worker
917-386-9774
millers@lighthouseguild.org

250 West 64th Street, New York, NY 10023
212-769-6200 · 800-284-4422
lighthouseguild.org

EXHIBIT I



Department of
Homeless Services
Department of
Social Services

DHS-13 (E) 09/09/2020  LLF

## REASONABLE ACCOMMODATION REQUEST FORM

**INSTRUCTIONS:** Clients must complete <u>Section I</u> and submit this form along with any supporting documentation to the Program/Facility Director, or functional equivalent ("Director"). DHS and provider staff must offer to help the client with completing this form upon request.

<u>Section I:</u> (This section must be completed by or with the client.)

Name: _Franklin Mendez_

Facility/Program: _BRC Assessment Center_

Client ID/SSN: _229055521_                     Phone: _646-641-6805_

Describe the Accommodation Requested (attach any supporting documentation).

_Client is requesting a Single Room in the borough of Manhattan Due to Medical provider is in that borough._

<u>Section II Instructions:</u> Any Director receiving a completed form with disability-related documentation must complete <u>Section II</u>, return a copy to the client, and immediately transmit by email or fax the request and supporting documents to the appropriate Program Administrator.

**Section II: (To be completed by the Facility Director or designee.)**

Name/Title: _CLIFFORD JOHNSON - PROGRAM DIRECTOR_

Facility/Program: _BRC ASSESSMENT_

Address: _146 CLAY STREET_

Phone: _____   Date Received: _2/26/2024_

Signature: _646-641-6805_

After completing, provide a copy of this form to the client.



Franklin Mendez

**BRC MiGuinness Men's Assecement Shelter**

**Hope Health Home**

**146 Clay Street , Brooklyn, New York 11222**

fmendez3327@gmial.com  646-641-6805

February 27, 2024

*Via Overnight Express Mial*

**Commissioner Christina Curry Mayor's Office for People with Disabilities 100 Gold Street, 2nd Floor New York, NY 10038**

**Commissioner Molly Wasow Park New York City Department of Social Services Human Resources Administration Department of Homeless Services 150 Greenwich St., 40th Floor, New York, NY 10007**

**Deputy Mayor Maria Torres-Springer Housing Economic Development and Workforce in New York Cityffice of the Mayor City Hall Park New York, NY 10007**

**Urgent Request for Reasonable Accommodation Under ADA for Accessible Shelter Placement for Legally Blind Student Franklin Mendez, Who Against Doctors' Professional Judgement and Against the Butler v NYC Decree is Being Unjustly Denied Single Room and Placement in a Manhattan Shelter**

Dear Commissioner Curry, Commissioner Park, and Deputy Mayor Torres-Springer:

I implore you to uphold human dignity and civil rights by providing reasonable accommodations Franklin Mendez, a legally blind homeless student pursuing his education at John Jay College against all odds. Their is an overwhelming consensus of support letters attached that warrant your help. Plesase help him..

Mr. Franklin Mendez, had become heomless and entered the shelter system at Bellevue a week ago and requested reasonable accommodations under the Americans with Disabilities Act and the Butler v. New York City decree (this is a class action which outlines the rights of the disabled in the NYC shelter system).

Mr. Mendez is legally blind and registered with the New York State Commission for the Blind # 189038. He entered the New York City shelter system at Men's Intake at the Bellevue Men's Shelter while there he requested accommodations and provided his doctors recommendations and his medical file for single room and bourough preference of manhattan in order to continue vision treatment and services he signed all HIPPA forms, and was told it would be procceed. However, Mr. Mendez was sent to a shelter in Brooklyn, at BRC Assessment at 146 Clay Street, Brooklyn, New York 11222.

Mr. Mendez, was told at BRC that he would have to file another request he did so specifying placement in a single room shelter in the borough of Manhattan. He was informed that this process could take months, but under Bulter Mendez is required a response within 48 hours.

Despite providing the required medical documentation from his doctors and signing HIPAA release forms, it has now been over 7 days and Mr. Mendez has still not been provided the appropriate

EXHIBIT K

accommodation requests for a single room and in a shelter in manhatten. This is in contravention of medical professionals and the consequences of not providing them, and a host of organization that play a vital role in Mr. Mendez disbility rehabilitatiive process.

It's unquestionable that due to his disability, Mr. Mendez requires placement in a single room shelter in a Manhattan shelter in order to continue his medical appoointments and medical treatements for his vision, and to access services from agencies that support the visually impaired, such as Lighthouse Guild, VISIONS, John Jay College, SUNY Optometry, and CIDNY. These services are critical to Mr. Mendez's rehabilitation, health, education and independence.

In addition, the following organizations have submitted letters in support of Mr. Mendez's request which are **attached** hereto:

- Dr. Andrea Zimmerman, Legally Blind Care, Lighthouse Guild, attached;
- Dr. Weinstein, Blind Rehabilitation Director SUNY College of Optometry, attached;
- Ms. Ann De Shazo, Director of VISIONS Services for the Blind, attached;
- Ms. Elena Beharry, Director, John Jay College Office of Accessibility Services, attached;
- Ms. Susan Miller, Social Worker at Lighthouse Guild, attached;
- Ms. Warleny Colon, Director, NY Connects Center for Independence of the Disabled, attached.

As you know, the required response time for reasonable accommodation requests is 24-48 hours. It has now been over 7 days since Mr. Mendez's first request. Mr., Mendez requires a written deicision in order to appeal. I ask that you promptly review and approve his accommodation per your obligations under ADA guidelines and Bulter v. NYC. Please preserve Mr., Mendez rights to appeal.

Upholding law to provide this legally-entitled reasonable accommodation will allow a vulnerable student to live with basic human dignity while building his future. I implore you to meet with Mr. Mendez's advocates to fully understand what is at stake and avert an unconscionable injustice.

Please affirm our shared values of equality and compassion. Use your authority to protect the rights of this brave young man as he pursues education and stability against all odds.

I know you will make the right decision to uphold the law and empower Mr. Mendez to participate fully in civic life. Please contact me if any further information would assist your deliberations.

With hope and gratitude,

Franklin Mendez

646 641 6805

fmendez3327@gmail.com



EXHIBIT K

Franklin Mendez

646 641 6805
fmendez3327@gmail.com
Help USA Shelter
Apt. C-3-16
111 Sunken Garden Loop
New York, New York 10007

March __*10*__ , 2024

*Via-Priorty Mail*

Commissioner **Molly Wasow Park** New York City Department of Social Services
Human Resources Administration Department of Homeless Services 150 Greenwich St., 40th Floor,
New York, NY 10007

Commissioner **Christina Curry** Mayor's Office for People with Disabilities 100 Gold Street, 2nd
Floor New York, NY 10038

**Diana Ayala** New York City Council Member and Deputy SpeakerDistrict Office
East Harlem Office:, 105 East 116th Street, New York, NY 10029

## Re: Ongoing Disability Discrimination For Blind Homeless College Student- Denial of Permanent Accessible Housing Despite Granted Accommodations in Violation of Butler Decree, Fiar Housing Act, Americans with Disabilty Act, Rehabilitation Act, and Olmstead v. L.C. 527 U.S. 581 (1999)

**From: Franklin Mendez**
**CARES ID # 7642640**
**Help USA Shelter Resident-Homeless-Blind**

Dear, Commissioner, **Molly Wasow Park**; Commissioner **Christina Curry,** and Council **Diana Ayala**;

I am writing to you today regarding an urgent matter that requires your office's immediate attention and advocacy - the need to prevent unnecessarily extended shelter stays for a blind college student *awaiting affordable, accessible housing placement.*

As a legally blind and registered with the New York State Commission for the Blind ID # 189038 and a resident of <u>Help USA shelter,</u> I have experienced firsthand the multitude of challenges and hazards that arise from being forced to remain in a temporary shelter environment for a prolonged period while trying to secure permanent housing accommodations suited for my disability.

Prior to becoming homeless and for (7) months **Warleny Colon**, Borough Manager, NY Connects, City-contracted, Manhatten Center for Independence of the Disabled in New York (CIDNY) advocated for my housing needs by submitting accommodation requests and applications on my behalf (**Exhibit A**). Yet these reasonable efforts have been constructively denied or disregarded. Consequently, I was forced to leave the residency I was living-in due to abestos exposure and became homeless, and entered the shelter system. As someone who is Legally blind; it became and continues to be a nightmare.

Enclosed please find the *uncontraverted documentary evidence* of my legal blindness and doctors



and rehabiliative services that I part-take in with and accomomodations to show you the need is real.

1. Legal blindness with disability needs per medical records. Lighthouse Guild **Dr. Andrea Zimmmerman** (Exhibit B), 5 pages Attached;
2. Legal blindness with disability needs per medical records. SUNY College of Optometry Univesrty Eye Center **Dr. Kamila Mikos** (Exhibit C), 8 pages Attached;
3. Legal blindness with disability needs per medical records. SUNY College of Optometry Univesrty Eye Center **Dr. Susan Weinstein** (Exhibit D), 1 page Attached;
4. Educational accommodations through John Jay Collge's Accessibility Office Services **Dr. Elena Beharry** (Exhibit E), 1 page Attached;
5. Registration with the Commission for the Blind ID (Exhibit F), 1 page Attached;
6. Approved for Access-A-Ride paratransit services by NYC Paratransit due to blindness/limited mobility **Dr. Andrea Zimmerman** (Exhibit G), 1 page Attached;
7. VISIONS Rehabilitative Services for the Blind, Programs and Services, Director **Ann De Shazo** (Exhibit H), 1 page Attached;
8. Legal blindness with disability needs per medical Specialist. Lighthouse Guild Therapist **Susan Miller** (Exhibit I), 1 pages Attached.

Despite being granted comprehensive reasonable accommodations entitling me to services from the State Commission for the Blind, the city's Access-A-Ride transportation, supports from the John Jay College Accessibility Office, and shelter protections under the **Butler v. NYC** decree due to my blindness. I continue to be subjected to unjustified segregation by the city's failure to provide accessible permanent housing placement. This violates the integration mandate set forth in the **Olmstead v. L.C. 527 U.S. 581 (1999)** decision, as well as the **Fair Housing Act** and **Section 504 of the Rehabilitation Act**.

In the 1999 **Olmstead** ruling, the U.S. Supreme Court held that the unjustified institutionalization of people with disabilities is a form of unlawful discrimination under the **Americans with Disabilities Act**. The decision interpreted the **ADA** as requiring public entities to provide community-based services to persons with disabilities when such services are appropriate, the affected persons do not oppose community placement, and the community placement can be reasonably accommodated.

I am currently receiving disability services and accommodations from the New York State Commission, New York City Access-A-Ride, and John Jay College as required under the law and **Butler** decree. However, the city's discriminatory failure to place me in accessible permanent housing forces my continued institutionalization rather than integration into the community.

Such treatment cannot be permissibly justified and represents an unambiguous violation of the **Olmstead v. L.C.** decision's core holding prohibiting unjustified segregation, as well as the **Fair Housing Act's** mandate against discrimination in housing based on disability, and **Section 504's** prohibition on disability-based discrimination by recipients of federal funding.

While providing certain reasonable modifications, the city's denial of accessible permanent housing segregates me from the community based solely on my disability. This defies the **ADA's** integration mandate, the **Fair Housing Act's** requirements for reasonable accommodations and non-discrimination, and **Section 504's directives** - all of which uphold my civil right to receive services in the most integrated setting appropriate without facing housing discrimination due to my disability.

Furthermore, relegating me long-term to an inaccessible shelter contradicts the requirement for permanent accessible housing per my well-documented needs. Furthermore, the **Bulter v. NYC** does not authorize treating shelters as **de facto** non-accommodated housing placements for the disabled.

The longer I reside in this shelter, the greater the chances of accidents, injuries or being unable to



safely navigate the environment designed without full accommodations for visual impairments. This puts my personal safety and well-being at risk.

1. Lack of independence Shelters typically cannot provide the same level of accessibility features (braille signage, audio cues, removal of obstacles, etc.) that a blind person needs to live independently. Extended shelter stays mean prolonged reliance on others.
2. Emotional/mental stress The insecurity, lack of privacy, and institutional setting of a shelter can take a mental and emotional toll for anyone, but especially for a blind person who cannot as easily orient themselves in that environment long-term.
3. Difficulty maintaining an eductional college degree track program, an extended shelter stay makes maintaining that more challenging due to transient living conditions and potential safety issues getting to/from college.
4. Health impacts Shelters are not equipped spaces for properly accommodating disabilities like blindness regarding mobility, food prep, hygiene, and accessibility long-term, which could impact a blind resident's overall health.

I implore you all to leverage your office's full resources and authority to intervene immediately before these perpetual safety hazards at HelpUSA shelter permanently alter my life's trajectory through no fault of my own.

My future independence, vision, and academic career depend on the expediency of your response. No student, especially one with a disability, should face such obstacles to accessibility and accommodation within a public system meant to uplift its most vulnerable.

The City must uphold its myriad responsibilities to disabled residents promptly in order to avoid prolonging this unjustified injustice. I am happy to provide any additional information necessary to facilitate a lawful resolution granting me the same integrated housing rights and opportunities seamlessly afforded to non-disabled residents.

Failing to satisfactorily address this discriminatory legally-mandated accessible housing accommodation tailored to my visual disability per *Olmstead*, the *American with Disability Act*, *Fair Housing Act*, *Rehabilitation Act*, and *Butler* decre within 14 calendar days will prompt escalation with further legal recourse.

Thank you for your urgent cooperation in this vital matter impacting my quality of life.

Sincerely,



Franklin Mendez

CC: *File.*

EXHIBIT L

3 of 3

Franklin Mendez

646 641 6805
fmendez3327@gmail.com
Help USA Shelter
Apt. C-3-16
111 Sunken Garden Loop
New York, New York 10007

March _8_, 2024

***Via-Priorty Mail***

Commissioner **Molly Wasow Park** New York City Department of Social Services
Human Resources Administration Department of Homeless Services 150 Greenwich St., 40th Floor,
New York, NY 10007

Commissioner **Christina Curry** Mayor's Office for People with Disabilities 100 Gold Street, 2nd
Floor New York, NY 10038

**Diana Ayala** New York City Council Member and Deputy SpeakerDistrict Office
East Harlem Office:, 105 East 116th Street, New York, NY 10029

**From: Franklin Mendez**
**CARES ID # 7642640**
**Help USA Shelter Resident-Homeless-Blind**

## Re: Acknowledgment of Receipt & Legal Obligations - Disability Discrimination/Denial of Accessible Housing for Legally Blind Homeless Individual Registered with the NYS Commission for the Blind # 189038

Dear Commissioner Park, Commissioner Curry, and Council Member Ayala:

This letter follows my previous correspondence dated March 13th, 2024, regarding the ongoing disability discrimination and denial of permanent accessible housing for myself, a blind homeless college student. The Original Letter and accompanying exhibits demonstrating my disabled status were delivered to your respective offices via Federal Express on March 18th, 2024, as evidenced by the enclosed delivery confirmations.

I write now to remind you of your legal obligations as New York City public officials to promptly and fully address this matter in compliance with all applicable laws and regulations prohibiting discrimination against individuals with disabilities.

Under Chapter 49, Section 1116 of the New York City Charter, any willful violation or evasion of laws related to your offices, including the Fair Housing Act, Americans with Disabilities Act,

Legal Document Reference: Dated 3-18-24; Subject: Acknowledgment of Receipt & Legal Obligations - Disability Discrimination/Denial of Accessible Housing; Purpose: This 3-page document, accompanied by 6 pages of attachments, serves as a formal legal communication to Commissioners Molly Wasow Park and Christina Curry, as well as Council Member Diana Ayala.            _1_ of 3 pages.



Rehabilitation Act, New York State Human Rights Law, and other statutes mandating non-discrimination and reasonable accommodations for persons with disabilities, could constitute a misdemeanor offense. This would result in forfeiture of your positions in addition to other penalties. Moreover, Section 1116 prohibits any city officer from knowingly making false or deceptive statements related to official duties, which would likewise risk removal from office.

The New York State Human Rights Law, Section 296.2-a, explicitly states it is "an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of publicly-assisted housing accommodations...to refuse to sell, rent or lease or otherwise to deny or withhold from any person or group of persons such housing accommodations because of...disability."

Additionally, the New York State Civil Rights Law, Sections 40-c and 40-d, prohibit discrimination by any person, firm or corporation against the civil rights of individuals with disabilities and provide recourse through the courts to enforce these rights.

Section 2600 of Chapter 68 of the New York City Charter on Conflicts of Interest explicitly recognizes that "public service is a public trust." The regulations outlined therein aim to "preserve the trust placed in public servants, promote public confidence in government, protect the integrity of government decision-making, and enhance government efficiency." Failure to properly address this discriminatory denial of accessible housing erodes that public trust and integrity.

Furthermore, Section 74-a of the New York Public Officers Law (Legislative Law Article 1-A) underscores the "duty of each public officer...to make reasonable efforts to ensure...barrier-free physical access...for the physically handicapped." My documented blindness constitutes a physical handicap necessitating reasonable accommodation per this law.

The New York City Human Rights Law also mandates the City eliminate and prevent discrimination based on disability, as well as ensure equality of opportunity and respect for the dignity of every person. Discriminatorily denying accessible permanent housing directly contravenes the City's human rights obligations.

Crucially, the 1999 U.S. Supreme Court decision in Olmstead v. L.C. held that the unjustified segregation of individuals with disabilities constitutes discrimination under the Americans with Disabilities Act...

The Olmstead ruling requires public entities to provide integrated, community-based services when such placement is appropriate, the individual does not oppose it, and it can be reasonably accommodated. Relegating me to inappropriate segregated shelter housing despite being qualified for integrated accessible permanent housing appears to violate the core holdings of Olmstead.

Section 504 of the Rehabilitation Act of 1973 also prohibits discrimination against individuals with disabilities by recipients of federal funding. Constructively denying my rights to accessibility and community integration through prolonged lack of permanent accessible housing placement appears to run afoul of Section 504's mandates as well.

As leaders of New York City and State agencies and public officials, you have an obligation to be well-versed in such relevant local, state, and federal laws and to faithfully execute all duties prescribed therein. This includes ensuring the lawful integration and accessibility rights for disabled individuals like myself are fully upheld.

Legal Document Reference: Dated 3-18-24; Subject: Acknowledgment of Receipt & Legal Obligations - Disability Discrimination/Denial of Accessible Housing; Purpose: This 3-page document, accompanied by 6 pages of attachments, serves as a formal legal communication to Commissioners Molly Wasow Park and Christina Curry, as well as Council Member Diana Ayala. 2 of 3 pages.

*EXHIBIT M*

Prompt lawful action to remediate this unlawful housing discrimination is required to demonstrate compliance with the legal duties enumerated above. I trust you will act swiftly to fulfill these responsibilities.

Therefore, I request that the following actions be taken:

1. Conduct a thorough investigation into the discriminatory denial of accessible housing that I have experienced.
2. Develop and implement a plan for remediation and accommodation to ensure that suitable housing options are made available to me in compliance with the law.
3. Provide a written response to this letter detailing the steps that will be taken to address my concerns and the timeline for implementation.

I expect to receive a response to this letter within (21 days) from the date of receipt. Please use the contact information provided below to communicate with me regarding this matter.

**Franklin Mendez Mobile # 646 641 6805**
**fmendez3327@gmail.com**
**Help USA Shelter**
**Apt. C-3-16**
**111 Sunken Garden Loop**
**New York, New York 10007**

In light of the aforementioned violations of federal and state laws, I intend to file complaints with HUD, the DOJ, NYCCHR, and NYSDHR to seek appropriate remedies and relief. These may include financial compensation, injunctive relief to secure accessible housing accommodations, and punitive measures to deter future discriminatory practices. Additionally, failure to respond to this correspondence and address the discriminatory practices outlined herein will compel me to file complaints with the relevant agencies, seeking redress for the violations of my rights under applicable law including filing a federal lawsuit.

Thank you for your attention to this urgent issue impacting my fundamental rights as a New York City and State resident with disabilities. I trust that you will take swift and decisive action to rectify the discriminatory denial of accessible housing.

Sincerely,

Franklin Mendez

**Enclosures:**

***Federal Express Receipts & Delivery Confirmations***

Legal Document Reference: Dated 3-18-24; Subject: Acknowledgment of Receipt & Legal Obligations - Disability Discrimination/Denial of Accessible Housing; Purpose: This 3-page document, accompanied by 6 pages of attachments, serves as a formal legal communication to Commissioners Molly Wasow Park and Christina Curry, as well as Council Member Diana Ayala.           3  of 3 pages.



# FedEx Office℠

Address:                60 W 40TH ST
                        NEW YORK
                        NY 10018
Location:               TSSKO
Device ID:              -BTC03
Transaction:            940390544825

---

FedEx Express Saver
Tracking Number:
  272107275852      0.30 lb (S)              19.25
      Adult Signature Required
      Declared Value   0
Recipient Address:
      Commissioner Molly Wasow Park
      150 Greenwhich Street
      FL 40
      New York, NY 10007
      0000000000

Scheduled Delivery Date 3/18/2024

Pricing option:
    ONE RATE

Package Information:
    FedEx Envelope          EXHIBIT M

Dear Customer,

The following is the proof-of-delivery for tracking number: 272107275852

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Mailroom |
| Signed for by: | K.KAPLAN | Delivery Location: | |
| Service type: | FedEx Express Saver | | |
| Special Handling: | Deliver Weekday; Adult Signature Required | | New York, NY, |
| | | Delivery date: | Mar 15, 2024 10:24 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 272107275852 | Ship Date: | Mar 13, 2024 |
| | | Weight: | 0.5 LB/0.23 KG |

| Recipient: | Shipper: |
|---|---|
| New York, NY, US, | New York, NY, US, |

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment.  Please check again later for a signature.

Thank you for choosing FedEx


EXHIBIT M

Package Information:
        FedEx Envelope

---

FedEx Express Saver
Tracking Number:
    272107516130        0.30 lb (S)            11.10
        Declared Value    0
Recipient Address:
        Commisioner Christina Curry
        100 Gold Street
        FL 2
        New York, NY 10038
        0000000000

Scheduled Delivery Date 3/18/2024

Pricing option:
        ONE RATE

Package Information:
        FedEx Envelope

---

FedEx Express Saver    **EXHIBIT M**
Tracking Number:
    272107626251        0.30 lb (S)            11.10

Dear Customer,

The following is the proof-of-delivery for tracking number: 272107516130

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Shipping/Receiving |
| Signed for by: | J.JOE | Delivery Location: | |
| Service type: | FedEx Express Saver | | |
| Special Handling: | Deliver Weekday; No Signature Required | | New York, NY, |
| | | Delivery date: | Mar 15, 2024 11:07 |

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 272107516130 | Ship Date: | Mar 13, 2024 |
| | | Weight: | 0.5 LB/0.23 KG |

Recipient:

New York, NY, US,

Shipper:

New York, NY, US,

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment. Please check again later for a signature.



Thank you for choosing FedEx

*FedEx Express Saver*

Tracking Number:
272107628251        0.30 lb (S)              11.10
        Declared Value     0
Recipient Address:
        Diana Ayala
        East harlem office
        105 E 116th Street
        New York, NY 10029
        0000000000

Scheduled Delivery Date 3/18/2024

Pricing option:
        ONE RATE

Package Information:
        FedEx Envelope

                Shipment subtotal:        $41.45

                        Total Due:        $41.45

                (S) CreditCard:        $41.45
        ***********4326

# EXHIBIT M

Dear Customer,

The following is the proof-of-delivery for tracking number: 272107628251

| Delivery Information: | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Receptionist/Front Desk |
| Signed for by: | A.MAGIF | Delivery Location: | |
| Service type: | FedEx Express Saver | | |
| Special Handling: | Deliver Weekday;<br>No Signature Required | | New York, NY, |
| | | Delivery date: | Mar 15, 2024 12:15 |

| Shipping Information: | | | |
|---|---|---|---|
| Tracking number: | 272107628251 | Ship Date: | Mar 13, 2024 |
| | | Weight: | 0.5 LB/0.23 KG |
| Recipient: | | Shipper: | |
| New York, NY, US, | | New York, NY, US, | |

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment.  Please check again later for a signature.


EXHIBIT M

Thank you for choosing FedEx

Franklin Mendez

646 641 6805
fmendez3327@gmail.com
Help USA Shelter
C-3-16
111 Sunken Garden Loop
New York, New York 10035                          March 21, 2024

*Via-US Postal Service*
**Hon. Jumaane Williams,** Public Advocate, Public Advocate's;
**Hon. Brad Lander,** Controller, Controller's Office;
**Annabel Palma,** Chair and Commissioner, New York City Commission on Human Rights;
**Molly Wasow Park** Commissioner, New York City Department of Social Services
**Christina Curry** Commissioner Mayor's Office for People with Disabilities;
**Diana Ayala** New York City Council Member and Deputy SpeakerDistrict Office;
**Maria Torres-Springer** Deputy Mayor Housing Economic Development and Workforce in New York,
**Kathy Hochul,** Governor of New York State

## Subject: Notice of Alleged Violation of the Americans with Disabilities Act and Fair Housing Act Involving Failure to Accommodate a Legally Blind Individual in New York City Shelters

From: Franklin Mendez, NYS Commission for the Blind Registration #189038
          CARES ID # 7642640
          Help USA Shelter Resident-Homeless-Blind

Dear Honorable Public Advocate **Jumaane Williams,** Controller **Brad Lander,** Chair and
Commissioner **Annabel Palma,** Commissioner **Molly Wasow Park,** Commissioner **Christina Curry,**
and Council Member and Deputy Speaker **Diana Ayala, and Maria Torres-Springer** Deputy Mayor
Housing Economic; and **Kathy Hochul,** Governor of New York State;

   I hope this letter finds you in good health. I am writing to you all to bring to your immediate
attention a profoundly concerning matter that demands your urgent intervention. As public officials
entrusted with the responsibility to serve the needs of New York City residents, especially those who
are blind and residing in the shelter system as myself and who encounters challegens beyond my
control.

   I'm a legally blind individual, who is registered with the Commission for the Blind #189038,
and who is currently residing in a shelter that lacks the most basic accommodations to meet my
essential needs. I am also a college student demonstrating remarkable resilience in the face of adversity,

Legal Document Reference: Dated 3-21-24; Subject: Acknowledgment of Receipt. This 5-page document, accompanied by 20 pages of attachments, serves as a formal legal communication to Hon. Jumaane Williams, Public Advocate, Public Advocate's; Hon. Brad Lander, Controller, Controller's Office; Annabel Palma, Chair and Commissioner, New York City Commission on Human Rights; Molly Wasow Park Commissioner, New York City Department of Social Services Christina Curry Commissioner Mayor's Office for People with Disabilities; Diana Ayala New York City Council Member and Deputy SpeakerDistrict Office; Maria Torres-Springer Deputy Mayor Housing Economic Development and Workforce in New York, Kathy Hochul, Governor of New York State                    1 of 4 pages.



finding myself in a vulnerable and challenging position due to the egregious lack of accessibility and support within the shelter.

Prior to becoming homeless and for (7) months **Warleny Colon**, Borough Manager, NY Connects, City-contracted, Manhattan Center for Independence of the Disabled in New York (CIDNY) advocated for my housing needs by submitting accommodation requests and applications on my behalf. Consequently, I was forced to leave the residency I was living-in due to abestos exposure and became homeless, and entered the shelter system. As someone who is Legally blind; it became and continues to be a nightmare.

I inform you that it is your collective moral and ethical imperative to uphold the rights and dignity of all New Yorkers, regardless of their circumstances or abilities. As public officials, you have a sacred duty to guarantee that every individual has access to safe and habitable living conditions, free from discrimination and barriers and incompliance with the Americans with Disability Act, Rehabilitative Act, Fair Housing Act, and Olmstead v. L.C., 527 U.S. 581 (1999).

In this regard, I urgently request your immediate attention and decisive action to address the following critical concerns:

1. **Immediate Assessment of Shelter Accessibility:**

   I implore you to conduct a thorough and comprehensive assessment of the shelter in question to identify and rectify any and all accessibility issues that hinder Mr. Mendez's ability to navigate and utilize the facility safely and independently. Such as, lack of audible/verbal announcement systems to provide directions and information. Absence of braille signage and tactile maps for independent navigation. Obstructed pathways and protruding objects posing falling hazards. Inaccessible documents, forms, and other information in alternative formats. Inadequate training for staff to provide appropriate assistance when needed.This includes ensuring strict compliance with the Americans with Disabilities Act (ADA),  and all other relevant accessibility standards.

2. **Provision of Adequate Support Services:**

   It is imperative that Mr. Mendez receives the necessary support services to ensure his well-being and independence within the shelter. This may include providing essential assistive devices, such as canes or magnifiers, as well as access to specialized training and resources that empower him to navigate his surroundings effectively.

3. **Expedited Affordable Housing Placement:**

   Given Mr. Mendez's current living situation, which starkly underscores the harsh reality of being in a shelter, I earnestly request that you prioritize his placement in affordable housing. This will provide him with a stable and accessible living environment that not only meets his unique needs but also allows him to live with dignity and independence.

Legal Document Reference: Dated 3-21-24; Subject: Acknowledgment of Receipt. This 5-page document, accompanied by 20 pages of attachments, serves as a formal legal communication to Hon. Jumaane Williams, Public Advocate, Public Advocate's; Hon. Brad Lander, Controller, Controller's Office; Annabel Palma, Chair and Commissioner. New York City Commission on Human Rights; Molly Wasow Park Commissioner, New York City Department of Social Services Christina Curry Commissioner Mayor's Office for People with Disabilities; Diana Ayala New York City Council Member and Deputy Speaker/District Office; Maria Torres-Springer Deputy Mayor Housing Economic Development and Workforce in New York. Kathy Hochul, Governor of New York State __2__ of 4 pages.

EXHIBIT N

## Verification of Disability and Services

As evidence of Mr. Mendez's disability and the critical services he receives, I have attached letters of support from various organizations and individuals who have firsthand knowledge of his condition. These letters clearly demonstrate his need for specialized accommodations and support.

- Ms. **Warleny Colon**, Director, NY Connects Center for Independence of the Disabled, **attached.**
- **Dr. Andrea Zimmerman**, Legally Blind Care, Lighthouse Guild, **attached;**
- **Dr. Kamila Mikos**, Advanced Care Clinic, Blind Rehabilitation Director SUNY College of Optometry, University Eye Center, **attached;**
- **Dr. Susan Weinstein**, Blind Rehabilitation Director SUNY College of Optometry, a University Eye Center, **attached;**
- **Dr., Elena Beharry**, Director, John Jay College of Criminal Justice Office of Accessibility Services, **attached;**
- Ms., **Ann De Shazo**, Director of VISIONS Services for the Blind, **attached;**
- Ms., **Susan Miller**, Social Worker at Lighthouse Guild, **attached;**
- **Dr., Andrea Zimmerman**, New York City Access A Ride Paratransit Placement, **attached;**
- New York State Commission for the Blind Registratiaon ID, for Legally Blind **Franklin Mendez, attached.**

## Being Legally Blind is the Most Vulnerable Disability:

It is crucial to recognize that being legally blind is not just a physical disability; it comes with a multitude of collateral consequences that significantly impact an individual's life expectancy, physical health, and mental well-being. Legally blind individuals face a higher risk of secondary health issues, such as depression, anxiety, and falls, which can further exacerbate their vulnerability. Additionally, they often experience social isolation and exclusion, which can have detrimental effects on their overall quality of life. It is imperative that you recognize the unique challenges faced by legally blind individuals and prioritize their needs to ensure their safety, well-being, and full participation in society.

## Maintaining Public Trust Through Compassionate Action

As public servants, you are entrusted with the sacred responsibility of upholding the rights and well-being of all citizens, particularly those who are most vulnerable. The fact that I am a legally blind individual residing in a shelter that lacks basic accommodations, represents a profound breach of this trust.

When individuals with disabilities are denied access to safe and habitable living conditions, and when their essential needs are neglected, it erodes public confidence in the very institutions meant to

Legal Document Reference: Dated 3-21-24; Subject: Acknowledgment of Receipt. This 5-page document, accompanied by 20 pages of attachments, serves as a formal legal communication to Hon. Jumaane Williams, Public Advocate, Public Advocate's; Hon. Brad Lander, Controller, Controller's Office; Annabel Palma, Chair and Commissioner, New York City Commission on Human Rights; Molly Wasow Park Commissioner, New York City Department of Social Services Christina Curry Commissioner Mayor's Office for People with Disabilities; Diana Ayala New York City Council Member and Deputy Speaker District Office; Maria Torres-Springer Deputy Mayor Housing Economic Development and Workforce in New York. Kathy Hochul, Governor of New York State **3** of 4 pages.

*EXHIBIT N*

protect and serve them. It undermines the principles of inclusivity, social justice, and equal opportunity that our city and state strives to uphold.

By addressing this situation with urgency and compassion, we have an opportunity to reaffirm our commitment to the values that define us as public servants. We can demonstrate that we are unwavering in our dedication to ensuring that every New Yorker, regardless of their circumstances or abilities, is treated with dignity, respect, and receives the support they require to live independently and thrive.

Restoring public trust begins with taking immediate action to assess and rectify the accessibility issues within the shelter, provide the necessary support services, and prioritize me for placement in affordable, accessible housing. These steps will not only improve the quality of my live my for but will also send a powerful message that our city remains steadfast in its commitment to upholding the rights and well-being of all its residents.

By addressing this injustice with empathy and resolve, we can rebuild the public's trust in our ability to serve all New Yorkers equitably and compassionately. It is a responsibility we must embrace wholeheartedly, for it is through such actions that we truly embody the values of public service and earn the enduring confidence of those we serve.

Thank you for your immediate attention to this urgent matter. I eagerly anticipate hearing from you soon and working together to find a swift and effective resolution.

**"Please acknowledge receipt of this correspondence in writing at your earliest convenience."**

Sincerely,

Franklin Mendez

Hon. **Jumaane Williams**, Public Advocate, Public Advocate's Office, 260 Broadway, Suite 1001 New York, NY 10007
Hon. **Brad Lander**, Controller, Controller's Office, Municipal Building, 1 Centre Street New York, NY 10007
**Annabel Palma**, Chair and Commissioner, New York City Commission on Human Rights, 22 Reade Street, New York, NY 10007
**Molly Wasow Park** Commissioner New York City Department of Social Services, Human Resources Administration Department of Homeless Services 150 Greenwich St., 40th Floor, New York, NY 1000
**Christina Curry** Commissioner Mayor's Office for People with Disabilities 100 Gold Street, 2nd Floor New York, NY 100387
**Diana Ayala** New York City Council Member and Deputy Speaker District Office, East Harlem Office:, 105 East 116th Street, New York, NY 10029
**Maria Torres-Springer** Deputy Mayor Housing Economic Development and Workforce in New York City ffice of the Mayor City Hall Park New York, NY 10007
**Kathy Hochul**, Governor of New York State; NYS State Capitol Building, Albany, NY 12224

Legal Document Reference: Dated 3-21-24; Subject: Acknowledgment of Receipt. This 5-page document, accompanied by 20 pages of attachments, serves as a formal legal communication to Hon. Jumaane Williams, Public Advocate, Public Advocate's; Hon. Brad Lander, Controller, Controller's Office; Annabel Palma, Chair and Commissioner, New York City Commission on Human Rights; Molly Wasow Park, Commissioner, New York City Department of Social Services Christina Curry Commissioner Mayor's Office for People with Disabilities; Diana Ayala New York City Council Member and Deputy SpeakerDistrict Office; Maria Torres-Springer Deputy Mayor Housing Economic Development and Workforce in New York, Kathy Hochul, Governor of New York State

4 of 4 pages.

EXHIBIT N

**Franklin Mendez**

**646 641 6805**
**fmendez3327@gmail.com**
**Help USA Shelter**
**C-3-16**
**111 Sunken Garden Loop**
**New York, New York 10035**                                      March 21, 2024

*Via-US Postal Service*

**Chief Judge Laura Taylor Swain**
**United States District Court Southern District of New York**
**Courtroom:17C**
**Daniel Patrick Moynihan**
**United States Courthouse**
**500 Pearl St.**
**New York, NY 10007-1312**

### Re: Notice of Potential Federal Disability Rights Complaint Franklin Mendez v. City of New York, et al.

Dear Chief Judge, **Laura Taylor Swain:**

 Please accept this correspondence as official notice to your court of an alleged ongoing discriminatory violation of the Americans with Disabilities Act, Fair Housing Act, Butler v. NYC decree, and Olmstead v. L.C., 527 U.S. 581 (1999) and other applicable federal disability rights laws against the undersigned, Mr. Franklin Mendez.

 As a legally blind individual registered with the New York State Commission for the Blind (#189038), I have been forced to reside in an emergency shelter that lacks adequate accessibility accommodations and support services required for my disability. Details of these discriminatory conditions and failures to accommodate my blindness by New York City and State agencies are outlined in the attached letter.

 Despite exhausting administrative remedies and imploring city and state officials to take corrective action, including through the attached letter, I will have no choice but to initiate a federal civil rights lawsuit against the City of New York and State of New York in your court's jurisdiction if the outlined steps to ensure my rights and accommodation needs are not promptly addressed.

 Thank you for your attention to this serious matter impacting the rights of a disabled New York resident. I am available to provide any additional information your office may require.

Legal Document Reference: Dated 3-21-24; Subject: Notice of Potential Federal Disability Rights Complaint Franklin Mendez v. City of New York, et al. Addressed to *Chief Judge Laura Taylor Swain* United States District Court Southern District of New York Courtroom: 17C, Daniel Patrick Moynihan, United States Courthouse 500 Pearl St., New York, NY 10007-1312 **1** of 2 pages.



Respectfully,

Franklin Mendez

**CC: Enclosure: Letter to City/State Officials Re: Notice of Alleged Violation of the Americans with Disabilities Act and Fair Housing Act Involving Failure to Accommodate a Legally Blind Individual in New York City Shelter.**

<u>**A copy of this letter has been mailed to all relevant city and state officials.**</u>

Hon. **Jumaane Williams**, Public Advocate, Public Advocate's Office, 260 Broadway, Suite 1001 New York, NY 10007
Hon. **Brad Lander**, Controller, Controller's Office, Municipal Building,1 Centre Street New York, NY 10007
**Annabel Palma**, Chair and Commissioner, New York City Commission on Human Rights, 22 Reade Street, New York, NY 10007
**Molly Wasow Park** Commissioner New York City Department of Social Services, Human Resources Administration Department of Homeless Services 150 Greenwich St., 40th Floor, New York, NY 1000
**Christina Curry** Commissioner Mayor's Office for People with Disabilities 100 Gold Street, 2nd Floor New York, NY 100387
**Diana Ayala** New York City Council Member and Deputy SpeakerDistrict Office, East Harlem Office:, 105 East 116th Street, New York, NY 10029
**Maria Torres-Springer** Deputy Mayor Housing Economic Development and Workforce in New York Cityffice of the Mayor City Hall Park New York, NY 10007
**Kathy Hochul**, Governor of New York State; NYS State Capitol Building, Albany, NY 12224

Legal Document Reference: Dated 3-21-24; Subject: Notice of Potential Federal Disability Rights Complaint Franklin Mendez v. City of New York, et al. Addressed to *Chief Judge Laura Taylor Swain* United States District Court Southern District of New York Courtroom: 17C, Daniel Patrick Moynihan, United States Courthouse 500 Pearl St., New York, NY 10007-1312 _2_ of 2 pages.



Franklin Mendez Pro-Se

646 641 6805
fmendez3327@gmail.com
Help USA Shelter
C-3-16
111 Sunken Garden Loop
New York, New York 10035

~~Franklin Mendez~~
~~Po Box 304~~
~~New York, New York 10108~~

April __1__, 2024

**C/O Pro-Se Office**
**United States District Court**
**Southern District of New York**
**40 Foley Square**
**New York, New York 10007**

Dear Clerk of Court,

    Enclosed please find a federal complaint please file with the court.

Thank you for your assistance.

Sincerely,

Franklin Mendez
Pro-Se

CC:  File.

Franklin Mendez

646 641 6805
fmendez3327@gmail.com
Help USA Shelter
C-3-16
111 Sunken Garden Loop
New York, New York 10035

March 21, 2024

*Via-US Postal Service*
**Hon. Jumaane Williams**, Public Advocate, Public Advocate's;
**Hon. Brad Lander,** Controller, Controller's Office;
**Annabel Palma**, Chair and Commissioner, New York City Commission on Human Rights;
**Molly Wasow Park** Commissioner, New York City Department of Social Services
**Christina Curry** Commissioner Mayor's Office for People with Disabilities;
**Diana Ayala** New York City Council Member and Deputy SpeakerDistrict Office;
**Maria Torres-Springer** Deputy Mayor Housing Economic Development and Workforce in New York,
**Kathy Hochul**, Governor of New York State

**Subject: Notice of Alleged Violation of the Americans with Disabilities Act and Fair Housing Act Involving Failure to Accommodate a Legally Blind Individual in New York City Shelters**

From: Franklin Mendez, NYS Commission for the Blind Registration #189038
   CARES ID # 7642640
   Help USA Shelter Resident-Homeless-Blind

Dear Honorable Public Advocate **Jumaane Williams**, Controller **Brad Lander,** Chair and Commissioner **Annabel Palma,** Commissioner **Molly Wasow Park,** Commissioner **Christina Curry,** and Council Member and Deputy Speaker **Diana Ayala, and Maria Torres-Springer** Deputy Mayor Housing Economic; and **Kathy Hochul,** Governor of New York State;

   I hope this letter finds you in good health. I am writing to you all to bring to your immediate attention a profoundly concerning matter that demands your urgent intervention. As public officials entrusted with the responsibility to serve the needs of New York City residents, especially those who are blind and residing in the shelter system as myself and who encounters challegens beyond my control.

   I'm a legally blind individual, who is registered with the Commission for the Blind #189038, and who is currently residing in a shelter that lacks the most basic accommodations to meet my essential needs. I am also a college student demonstrating remarkable resilience in the face of adversity,

Legal Document Reference: Dated 3-21-24; Subject: Acknowledgment of Receipt. This 5-page document, accompanied by 20 pages of attachments, serves as a formal legal communication to Hon. Jumaane Williams, Public Advocate, Public Advocate's; **Hon. Brad Lander,** Controller, Controller's Office; **Annabel Palma**, Chair and Commissioner, New York City Commission on Human Rights; **Molly Wasow Park** Commissioner, New York City Department of Social Services **Christina Curry** Commissioner Mayor's Office for People with Disabilities; **Diana Ayala** New York City Council Member and Deputy SpeakerDistrict Office; **Maria Torres-Springer** Deputy Mayor Housing Economic Development and Workforce in New York. **Kathy Hochul,** Governor of New York State    **1** of 4 pages.

finding myself in a vulnerable and challenging position due to the egregious lack of accessibility and support within the shelter.

Prior to becoming homeless and for (7) months **Warleny Colon**, Borough Manager, NY Connects, City-contracted, Manhatten Center for Independence of the Disabled in New York (CIDNY) advocated for my housing needs by submitting accommodation requests and applications on my behalf. Consequently, I was forced to leave the residency I was living-in due to abestos exposure and became homeless, and entered the shelter system. As someone who is Legally blind; it became and continues to be a nightmare.

I inform you that it is your collective moral and ethical imperative to uphold the rights and dignity of all New Yorkers, regardless of their circumstances or abilities. As public officials, you have a sacred duty to guarantee that every individual has access to safe and habitable living conditions, free from discrimination and barriers and incompliance with the Americans with Disability Act, Rehabilitative Act, Fair Housing Act, and Olmstead v. L.C., 527 U.S. 581 (1999).

In this regard, I urgently request your immediate attention and decisive action to address the following critical concerns:

1. **Immediate Assessment of Shelter Accessibility:**

   I implore you to conduct a thorough and comprehensive assessment of the shelter in question to identify and rectify any and all accessibility issues that hinder Mr. Mendez's ability to navigate and utilize the facility safely and independently. Such as, lack of audible/verbal announcement systems to provide directions and information. Absence of braille signage and tactile maps for independent navigation. Obstructed pathways and protruding objects posing falling hazards. Inaccessible documents, forms, and other information in alternative formats. Inadequate training for staff to provide appropriate assistance when needed.This includes ensuring strict compliance with the Americans with Disabilities Act (ADA),  and all other relevant accessibility standards.

2. **Provision of Adequate Support Services:**

   It is imperative that Mr. Mendez receives the necessary support services to ensure his well-being and independence within the shelter. This may include providing essential assistive devices, such as canes or magnifiers, as well as access to specialized training and resources that empower him to navigate his surroundings effectively.

3. **Expedited Affordable Housing Placement:**

   Given Mr. Mendez's current living situation, which starkly underscores the harsh reality of being in a shelter, I earnestly request that you prioritize his placement in affordable housing. This will provide him with a stable and accessible living environment that not only meets his unique needs but also allows him to live with dignity and independence.

Legal Document Reference: Dated 3-21-24; Subject: Acknowledgment of Receipt. This 5-page document, accompanied by 20 pages of attachments, serves as a formal legal communication to **Hon. Jumaane Williams**, Public Advocate, Public Advocate's; **Hon. Brad Lander**, Controller, Controller's Office; **Annabel Palma**, Chair and Commissioner. New York City Commission on Human Rights; **Molly Wasow Park** Commissioner, New York City Department of Social Services **Christina Curry** Commissioner Mayor's Office for People with Disabilities; **Diana Ayala** New York City Council Member and Deputy SpeakerDistrict Office: **Maria Torres-Springer** Deputy Mayor Housing Economic Development and Workforce in New York, **Kathy Hochul**, Governor of New York State       2  of 4 pages.

## Verification of Disability and Services

As evidence of Mr. Mendez's disability and the critical services he receives, I have attached letters of support from various organizations and individuals who have firsthand knowledge of his condition. These letters clearly demonstrate his need for specialized accommodations and support.

- Ms. **Warleny Colon**, Director, <u>NY Connects Center for Independence of the Disabled</u>, **attached.**
- **Dr. Andrea Zimmerman**, Legally Blind Care, <u>Lighthouse Guild</u>, **attached;**
- **Dr. Kamila Mikos**, Advancde Care Clinic, Blind Rehabilitation Director <u>SUNY College of Optometry, University Eye Center</u>, **attached;**
- **Dr. Susan Weinstein**, Blind Rehabilitation Director <u>SUNY College of Optometry, a University Eye Center,</u> **attached;**
- **Dr., Elena Beharry**, Director, <u>John Jay College of Criminal Justice Office of Accessibility Services</u>, **attached;**
- Ms., **Ann De Shazo**, Director of <u>VISIONS Services for the Blind</u>, **attached;**
- Ms., **Susan Miller**, Social Worker at <u>Lighthouse Guild</u>, **attached;**
- **Dr., Andrea Zimmerman**, <u>New York City Access A Ride</u> Paratransit Placement, **attached;**
- <u>New York State Commission for the Blind</u> Registratiaon ID, for Legally Blind **Franklin Mendez, attached.**

## Being Legally Blind is the Most Vulnerable Disability:

It is crucial to recognize that being legally blind is not just a physical disability; it comes with a multitude of collateral consequences that significantly impact an individual's life expectancy, physical health, and mental well-being. Legally blind individuals face a higher risk of secondary health issues, such as depression, anxiety, and falls, which can further exacerbate their vulnerability. Additionally, they often experience social isolation and exclusion, which can have detrimental effects on their overall quality of life. It is imperative that you recognize the unique challenges faced by legally blind individuals and prioritize their needs to ensure their safety, well-being, and full participation in society.

## Maintaining Public Trust Through Compassionate Action

As public servants, you are entrusted with the sacred responsibility of upholding the rights and well-being of all citizens, particularly those who are most vulnerable. The fact that I am a legally blind individual residing in a shelter that lacks basic accommodations, represents a profound breach of this trust.

When individuals with disabilities are denied access to safe and habitable living conditions, and when their essential needs are neglected, it erodes public confidence in the very institutions meant to

Legal Document Reference: Dated 3-21-24; Subject: Acknowledgment of Receipt. This 5-page document, accompanied by 20 pages of attachments, serves as a formal legal communication to **Hon. Jumaane Williams**, Public Advocate, Public Advocate's; **Hon. Brad Lander**, Controller, Controller's Office; **Annabel Palma**, Chair and Commissioner, New York City Commission on Human Rights; **Molly Wasow Park** Commissioner, New York City Department of Social Services **Christina Curry** Commissioner Mayor's Office for People with Disabilities; **Diana Ayala** New York City Council Member and Deputy Speaker District Office; **Maria Torres-Springer** Deputy Mayor Housing Economic Development and Workforce in New York. **Kathy Hochul,** Governor of New York State    **3** of 4 pages.

protect and serve them. It undermines the principles of inclusivity, social justice, and equal opportunity that our city and state strives to uphold.

By addressing this situation with urgency and compassion, we have an opportunity to reaffirm our commitment to the values that define us as public servants. We can demonstrate that we are unwavering in our dedication to ensuring that every New Yorker, regardless of their circumstances or abilities, is treated with dignity, respect, and receives the support they require to live independently and thrive.

Restoring public trust begins with taking immediate action to assess and rectify the accessibility issues within the shelter, provide the necessary support services, and prioritize me for placement in affordable, accessible housing. These steps will not only improve the quality of my live my for but will also send a powerful message that our city remains steadfast in its commitment to upholding the rights and well-being of all its residents.

By addressing this injustice with empathy and resolve, we can rebuild the public's trust in our ability to serve all New Yorkers equitably and compassionately. It is a responsibility we must embrace wholeheartedly, for it is through such actions that we truly embody the values of public service and earn the enduring confidence of those we serve.

Thank you for your immediate attention to this urgent matter. I eagerly anticipate hearing from you soon and working together to find a swift and effective resolution.

**"Please acknowledge receipt of this correspondence in writing at your earliest convenience."**

Sincerely,

Franklin Mendez

Hon. **Jumaane Williams**, Public Advocate, Public Advocate's Office, 260 Broadway, Suite 1001 New York, NY 10007
Hon. **Brad Lander,** Controller, Controller's Office, Municipal Building, 1 Centre Street New York, NY 10007
**Annabel Palma,** Chair and Commissioner, New York City Commission on Human Rights, 22 Reade Street, New York, NY 10007
**Molly Wasow Park** Commissioner New York City Department of Social Services, Human Resources Administration Department of Homeless Services 150 Greenwich St., 40th Floor, New York, NY 10007
**Christina Curry** Commissioner Mayor's Office for People with Disabilities 100 Gold Street, 2nd Floor New York, NY 100387
**Diana Ayala** New York City Council Member and Deputy SpeakerDistrict Office, East Harlem Office:, 105 East 116th Street, New York, NY 10029
**Maria Torres-Springer** Deputy Mayor Housing Economic Development and Workforce in New York Cityffice of the Mayor City Hall Park New York, NY 10007
**Kathy Hochul,** Governor of New York State; NYS State Capitol Building, Albany, NY 12224

Legal Document Reference: Dated 3-21-24; Subject: Acknowledgment of Receipt. This 5-page document, accompanied by 20 pages of attachments, serves as a formal legal communication to **Hon**. **Jumaane Williams**, Public Advocate, Public Advocate's; **Hon. Brad Lander**, Controller, Controller's Office; **Annabel Palma**, Chair and Commissioner, New York City Commission on Human Rights; **Molly Wasow Park** Commissioner, New York City Department of Social Services **Christina Curry** Commissioner Mayor's Office for People with Disabilities; **Diana Ayala** New York City Council Member and Deputy SpeakerDistrict Office; **Maria Torres-Springer** Deputy Mayor Housing Economic Development and Workforce in New York, **Kathy Hochul**, Governor of New York State



**MANHATTAN** | 1010 Avenue of the Americas, Suite 301, New York, NY 10018
tel: 212.674.2300 fax: 212.254.5953 vp: 646.350.2681

**QUEENS** | 80-02 Kew Gardens Road, Suite 400, Kew Gardens, NY 11415
tel: 646.442.1520 fax: 357.561.4883

www.cidny.org

2/21/2024

Ensuring Equal Access and Rights for Individuals with Disabilities

To Whom It May Concern:

I am writing on behalf of my client, Franklin Mendez, regarding their need for shelter placement and accommodations due to their disability. Mr. Mendez is legally blind and registered with the New York State Commission for the Blind # 189038

As an Independent Living Advocate assisting clients with housing crises, I have been working closely with Franklin Mendez to find affordable housing as they face imminent homelessness. Despite extensive efforts over 7 months, their disability has posed significant barriers to securing stable housing.

Franklin Mendez experiences blindness and requires reasonable accommodations more now that he will be in a shelter placement, and so please accommodate him with the following which includes:

- A private room to allow for accessibility modifications dim lighting.
- Ground floor/accessible room to accommodate inability to use stairs.
- Proximity to needed disability services for health and independence a Manhattan shelter would be perfect for his continued Rehabilitation.

Shelter accommodations are critical given Franklin Mendez's disability and housing instability. I urge you to give every consideration to approving reasonable accommodations that will provide safety and dignity.

Please reach out with any questions. Thank you for your time regarding this urgent matter.

Sincerely,

Warleny Colón
Borough Manager, NY Connects (Manhattan
Center for Independence of the Disabled, NY
1010 Avenue of the Americas, Suite 301, New York, NY, 10018
Tel/Fax: 1-646-849-8086
https://www.cidny.org/nyconnects/


**Lighthouse Guild**

Pt Name: FRANKLIN MENDEZ

Pt Address: 550 W 174TH ST Apt 5 NEW YORK NY 10033

Pt DOB: 05/08/1976

NYSCB 189038

Encounter Date: 02/12/2024

_____

Admissions Department
Men's Intake Shelter
400 East 30th Street
New York, N.Y.  10016

RE: Placement for Franklin Mendez:  Letter requesting Reasonable Accommodations and Appropriate Shelter Pleacement

Dear Admissions Department;

This letter is to certify that FRANKLIN MENDEZ  is legally blind. FRANKLIN MENDEZ has been a patient in our clinic since 2023 and suffers from Advanced Myopic Degeneration in each eye. Their best-corrected visual acuity measures Hand Motion in the right eye and Hand Motion in the left eye.

I am writing to request reasonable accommodations and special consideration for the shelter placement of my patient, Franklin Mendez.  As his low vision optometrist, I can attest that Mr. Mendez' visual acuity has deteriorated significantly.  He currently meets the criteria for legal blindness set forth in New York State and is a registered client of New York State's Commission for the Blind, which supplies him with Vision Rehabilitation services to help him manage his profound vision loss.

Due to the nature of his condition, Mr. Mendez faces difficulties with tasks that rely  on vision, such as navigating crowded or unfamiliar environments.  He requires well- lit surroundings and the ability to maintain a clear, uncluttered living space.  Mr. Mendez is at risk for falls in crowded areas, whereby he might suffer a retinal detachment and lose any remaining vision he has.

For these reasons, I do not believe that a multi-occupancy shelter setting would provide an appropriate level of accessibility and independence for Mr. Mendez.

 It is my professional medical opinion that a private room placement would best accommodate Mr. Mendez' needs and allow him to care for himself safely.

 Additionally, as his low vision optometrist, I ask that you strongly consider shelter locations in Manhattan so that he may continue receiving specialized medical and rehabilitative services from Lighthouse Guild and partners at Vision Therapeutic Centers, SUNY Optometry where he is being treated by a retinal specialist without impediment.

Thank you in advance for your consideration of this request.  I hope that you will be able to assist mr. Mendez in securing reasonable accommodations and appropriate placement that supports his vison-related needs and independence.

If you have any questions, please feel free to contact me.

Sincerely,

Andrea Zimmerman OD FAAO

2/12/2024 11:01 AM (EST)

JGB Rehabilitation Corporation, Inc | 250 W 64TH ST NEW YORK NY 10023-6301 | 212-769-6300

MENDEZ, FRANKLIN **DOB:** 05/08/1976 (47 yo M) **Acc No.** 137380 **DOS:** 02/12/2024



**MENDEZ, FRANKLIN**
47 Y old Male, DOB: 05/08/1976
Account Number: 137380
550 W 174TH ST, Apt 5, NEW YORK, NY-10033
Home: 646-641-6805
Guarantor: MENDEZ, FRANKLIN   Insurance: Metroplus
Medicaid
Appointment Facility: JGB Rehabilitation Corporation, Inc
Structured Data: Immunization Data Protection : No

02/12/2024                                    Progress Note: Andrea Zimmerman, OD

### Current Medications
**Taking**
- Unknown , Notes to Pharmacist: migraines
Medication List reviewed and reconciled with the patient

### Past Medical History
Migraines.

### Social History
Tobacco Use:
Tobacco Use/Smoking
   Are you a *nonsmoker*
Drugs/Alcohol:
Alcohol Screen
   Did you have a drink containing alcohol in the past year? *No*
   Points *0*
   Interpretation *Negative*

### Allergies
N.K.D.A.

### Reason for Appointment
1. Needs letter for accommodations
2. Needs new sunwear

### Assessments
1. Both eyes affected by degenerative myopia with other maculopathy - H44.2E3 (Primary)
2. Legal blindness - H54.8

### Treatment
**1. Both eyes affected by degenerative myopia with other maculopathy**
Notes: Vision is too poor for regular devices - needs to use text to speech. Needs new pair of very dark grey or amber sunwear - please request from Masud at NYSCB. Advised use of protective lenses at all times continue with ophthalmologist for medical eye care

**2. Legal blindness**
Notes: Receiving services from NYS Commission for the Blind

### Follow Up
4 Weeks (Reason: check rx over contacts)

### History of Present Illness
PHQ2 Depression Screen:
   PHQ-2 (2015 Edition)
   Little interest or pleasure in doing things? *Not at all*
   Feeling down, depressed, or hopeless? *Several days*
   Total Score *1*
History:
   Eye Diagnosis myopic degeneration OU, OMD may do another sx unsure what for.
   LEE , 6 months for retina and new CL's last week, next retina eval next week.
   NEE 1-2 weeks.
   Current Eye Doctor SUNY .
   Referred by NYSCB.
   Accompanied by alone.
   Family/Genetic history Mother , Glaucoma.

MENDEZ, FRANKLIN **DOB:** 05/08/1976 (47 yo M) **Acc No.** 137380 **DOS:** 02/12/2024

Eye surgery multiple unsure for what  , Strabismus ET .
Eye medications none.
Certified Legally Blind/Counselor yes masud Kalim.
Previous Low Vision Eval/Aids  Previous LV care LV, going to college possibly Information Security.
Functional History staying with mother, has mobility cane.

CQM Exceptions:
Influenza Vaccine not administered
Reason: *Medical Reason refused*

Vision:
Pre-Test:

Uncorrected VA

Test Type:

|  | DVA | NVA | PH |
|---|---|---|---|
| **R** | HM | | |
| **L** | HM | | |
| **Both** | | | |

Spectacle Rx:

Contact Lens:

Eye Examination:

Special Tests:

Examination
Ophthalmology:
PUPILS unable.
EXTRAOCULAR MOVEMENT full to command OU (both eyes) .
COVER TEST  Exo .
CONFRONTATION VISUAL FIELD (CVF): constricted to midline OD (right eye) OS (left eye) .
LOW VISION SPECTACLES +8.00D prism half eyes///4M feels helpful to see phone.
POWERMAG HAND MAGNIFIERS 7x/24D No improvement .
POWERMAG STAND MAGNIFIERS +24D/7x No improvement .
CCTV likes Clover Book plus with speech best.
BIOMICROSCOPY LIDS AND LASHES clear OU CORNEA clear OU CONJUNCTIVA clear OU IRIS clear OU ANTERIOR CHAMBER deep and quiet OU LENS nuclear sclerosis grade1 OU .
UNDILATED FUNDUS EXAM poor view .
DILATED EYE EXAMINATION Refused dilation refused optos.
INTRAOCULAR PRESSURE (IOP):
Right Eye  *refused, digital, soft*
Left Eye  *refused, digital, soft*

Progress Note: Andrea Zimmerman, OD   02/12/2024

MENDEZ, FRANKLIN **DOB:** 05/08/1976 (47 yo M) **Acc No.** 137380 **DOS:** 02/12/2024

OPTIC NERVE EVALUATION
Procedure Performed: *Yes*

**Visit Codes**
99214 Office/outpatient visit est.

**Procedure Codes**
92015 REFRACTION

Electronically signed by Andrea Zimmerman , OD on
02/12/2024 at 11:08 AM EST

Sign off status: Pending

JGB Rehabilitation Corporation, Inc
250 W 64TH ST
NEW YORK, NY 10023-6301
Tel: 212-769-6300
Fax: 212-769-7825

Progress Note: Andrea Zimmerman, OD   02/12/2024



SUNY COLLEGE OF OPTOMETRY
UNIVERSITY EYE CENTER · 02/27/2024

**TO:**
Men's Intake Shelter
400 East 30th Street
New York, New York 10016


RE: Franklin Mendez
550 West 174th Street
Apt 5
New York,  NY 10033-

To Whom It May Concern,

I am writing on behalf of my patient, Franklin Mendez to request reasonable accommodations such that he be placed in a single room in a homeless shelter in Manhattan so he can access his medical care.  He is legally blind in both eyes secondary to degenerative myopia in both eyes. He would benefit from living in a single room due to safety hazards, such as other people's belongings and chargers being on the floor, in a shared room. These put him at greater risk of tripping and falling due to his visual impairment and put him at risk for having a retinal detachment if he falls or bumps into something.

Mr. Mendez is regularly followed up for his eye conditions at Advanced Care Clinic and Low Vision Clinic at University Eye Center in Manhattan. He would benefit from being in closer proximity to the locations of his medical services to ensure that he is able to more easily and safely commute to his doctor's appointments and safely return to the shelter before dark. He also attends programs at Visions in Manhattan, which is a program that helps visually impaired adults adapt to daily life. This will also help ensure that he is able to make his appointments and receive the medical care and additional assistance he needs. Mr. Mendez is also a currently a student at John Jay College in Manhattan, and he currently takes 3 trains to attend class. Living in a shelter in Manhattan would allow him to more safely commute to school, as well.

Thank you in advance for taking these needs into consideration.

Sincerely,


*Provider:*
 Mikos, Kamila  02/27/2024 1:37 PM

Document generated by:  Kamila Mikos  02/27/2024

-------------------------------------------------------------------------------------------------------

**33 WEST 42nd STREET, NEW YORK, NY  10036  P (212) 938 4001    F (212) 938 4037**

www.UniversityEyeCenter.org


Electronically signed by Kamila Mikos OD, FAAO on 02/27/2024 01:40 PM



SUNY COLLEGE OF OPTOMETRY
UNIVERSITY EYE CENTER ® 02/26/2024

Franklin Mendez
550 West 174th Street
Apt 5
New York, NY 10033
DOB 05/08/1976

To Whom It May Concern,

This is a request to have Franklin Mendez, a patient at University Eye Center, to be relocated to a single room in a homeless shelter in Manhattan. He is legally blind in both eyes secondary to degenerative myopia in both eyes. He would benefit from living in a single room due to safety hazards, such as other people's belongings and chargers being on the floor, in a shared room. These put him at greater risk of tripping and falling due to his visual impairment and put him at risk for having a retinal detachment if he falls or bumps into something.

Mr. Mendez is regularly followed up for his eye conditions at Advanced Care Clinic and Low Vision Clinic at University Eye Center in Manhattan. He would benefit from being in closer proximity to the locations of his medical services to ensure that he is able to more easily and safely commute to his doctor's appointments and safely return to the shelter before dark. He also attends programs at Visions in Manhattan, which is a program that helps visually impaired adults adapt to daily life. This will also help ensure that he is able to make his appointments and receive the medical care and additional assistance he needs. Mr. Mendez is also currently a student at John Jay College in Manhattan, and he currently takes 3 trains to attend class. Living in a shelter in Manhattan would allow him to more safely commute to school, as well.

Thank you in advance for taking these needs into consideration.

Sincerely,

*Provider:*
Weinstein, Susan  02/26/2024 3:23 PM

Document generated by: Nishita Patel  02/26/2024

------------------------------------------------------------------------------------

**33 WEST 42nd STREET, NEW YORK, NY 10036  P (212) 938 4001   F (212) 938 4037**

www.UniversityEyeCenter.org

Electronically signed by Susan Weinstein OD on 02/26/2024 04:03 PM



Office of Accessibility
Elena Beharry, PsyD
Interim Director

524 West 59th Street, room L68.00
New York City, NY 10019
T. 212.237.8148
Accessibilityservices@jjay.cuny.edu

February 14, 2024

To Whom It May Concern:

Mr. Franklin Mendez is currently enrolled as a part-time student at John Jay College of Criminal Justice.  He is taking two fully online (remote) courses for the Spring 2024 semester, which are as follows:

CJBS 101- American CJ System
PSC 101-Introduction to Police Studies.

Mr. Mendez is registered with the College's Office of Accessibility Services and receives the following accommodations for his visual impairment:

Priority Registration
Additional Time on Exams (Double Time)
Alt. Format: Large Print
Less Distractive Environment
Note-Taker
Screen Reader
Software – Reading Assist (+LD)
Use of a Scribe
Other Assistive Technology

If you have any questions or concerns, feel free to contact me at ebeharry@jjay.cuny.edu or call me 212-237-8148 or 8031.


Elena Beharry, PsyD

Interim Director

Office of Accessibility Services

John Jay College of Criminal Justice



# VISIONS
services for the blind and visually impaired

**OFFICERS**
President
  Robert Schonbrunn*∞
Past President
  Nancy T. Jones*
Vice President
  Dr. Cynthia Stuen∞
Treasurer
  Burton M. Strauss, Jr.
Asst. Treasurer
  Kenneth J. Gralak∞
Secretary
  Denise G. Rabinowitz

**BOARD OF DIRECTORS**
Sheldon I. Berg
Jyotika Bisht
Sherilyn Casiano
Ken Drucker
Dr. Andrew S. Fisher
Lucius L. Fowler*
Frances Freedman
Gloria Fu
Robert Heidenberg
Steven E. Kent
Theodore P. Klingos*
Dr. James McGroarty∞
Jagadish B. Rao∞
Peter A. Roffman
Anusha Sharma
Rebecca Zarett

**ADVISORY COUNCIL**
Lois Wagh Aronstein∞
Mal L. Barasch
Joseph L. Corace^
Ronald C. Delo∞
Donald F. Dunning∞
Susan Hale
Robert S. Loeb∞
Michael O'Halloran∞
David J. Orenstein
Angelo Purcigliotti∞
Henry Saveth
Dr. Albert D. Widman
Stuart S. Wizwer∞
Nora Xie

**ADVISORY BOARDS**
Bronx-Westchester
Brooklyn
Center on Aging
Manhattan
Queens
Staten Island
VCB

**EXECUTIVE DIRECTOR/CEO**
Nancy D. Miller∞

* Trustee, Fund for the Blind
∞ Lion
^ Kiwanian

A copy of our most recent financial
statement is available by writing
to VISIONS or the NYS Dept of Law
Charities Bureau:
120 Broadway, 3rd Floor,
New York, NY 10271

February 12, 2024

To whom it may concern,

I am reaching out to you because Mr. Franklin Mendez has informed me he has to leave his home in the city due to asbestos. As you can imagine this is a very traumatic experience and can cause a great deal of instability.

At present he attends our community center, VISIONS SERVICES FOR THE BLIND AND VISUALLY IMPAIRED located on 23rd street in Chelsea. Mr. Franklin attends multiple times during the week and has no issues in his current travel. Our center is accessible for him because his home is in the city.

For accessibility reasons it would be easier for him during this transition to be placed in a shelter in Manhattan if possible. Because this is a difficult issue it's strongly recommended that he be able to continue to easily access our services and rely on us for support during this time.
If you need to reach me for any reason to discuss this further, please feel free to reach out to me at (646)486-4444 ext. 225.

Thank you for this consideration.

Ann De Shazo, LMSW
Director of VISIONS at Selis Manor

---

**Promoting the Independence of People of All Ages Who Are Blind or Visually Impaired**

VISIONS CENTER ON BLINDNESS (VCB) | VISIONS AT SELIS MANOR | VISIONS REHABILITATION SERVICES

VISIONS/SERVICES FOR THE BLIND AND VISUALLY IMPAIRED  500 Greenwich St. 3rd Floor, New York, NY 10013-1354
Tel: 212-625-1616  Fax: 212-219-4078  E-mail: Info@visionsvcb.org  Website: www.visionsvcb.org



2/13/24

Bellevue Men's Shelter
400 East 30th Street
NY, NY 10016

To Whom It May Concern,

I am writing to request that Franklin Mendez (D.O.B. 05/08/76) be placed in a shelter that is close to my office at 250 West 64th St., NY, NY 10023.  Franklin Mendez is a legally blind individual who I see for psychotherapy in person every week.  It is vital that he continue to receive this service weekly.

Franklin Mendez is struggling with a number of mental health challenges, including severe depression and anxiety.  Therapy is helping Franklin Mendez to cope with these challenges and to develop strategies for living a full and meaningful life.

Having sessions by phone or Zoom is not an option.  Having a shelter that is close to my office would make it easier for Franklin Mendez to get to his appointments on time and without undue burden.  He is also taking two college courses at John Jay College and he needs to go there three days per week as well.  Being placed in a shelter close to these two locations would reduce the stress and anxiety that Mr. Mendez experiences when traveling.  As you know, Access-a-ride is notoriously unreliable.  Given his blindness, traveling long distances imposes significant stress and safety risks.  A proximal shelter placement is crucial for ensuring Mr. Mendez's access to care.

I urge you to give thoughtful consideration to this reasonable accommodation request which would allow Mr. Mendez to get his life back on track.  Please do not hesitate to contact me if you need any additional information.  Thank you for your time and consideration.


Sincerely,

Susan Miller, LCSW
Social worker
917-386-9774
millers@lighthouseguild.org


**Lighthouse Guild**

02/09/2023

Re: Franklin Mendez
D.O.B. 05/08/1976

To whom it may concern,

Mr. Franklin Mendez has been seen at Lighthouse Guild for low vision services.
Mr. Mendez is diagnosed with degenerative myopia with other maculopathy.
Mr. Mendez is legally blind. His vision loss impacts his ability to utilize public
transportation. Mr. Mendez would greatly benefit from transportation services
through Access-A-Ride in order to get him to all of his destinations in a safe manner.

If you have any questions in this regard, please contact me at the number listed
below. Thank you.

Sincerely,

Andrea Zimmerman, OD, FAAO
Low Vision Clinician
212-769-6313

YORK
STATE | Commission for the Blind
| 52 Washington Street, Room 201 South
Rensselaer, New York 12144

Franklin Mendez
550 West 174th Street #5
New York, NY 10033

NYSCB Registration #: 189038

Franklin Mendez

**646 641 6805**
**fmendez3327@gmail.com**
**Help USA Shelter**
**C-3-16**
**111 Sunken Garden Loop**
**New York, New York 10035**                                  March 21, 2024

*Via-US Postal Service*

**Chief Judge Laura Taylor Swain**
**United States District Court Southern District of New York**
**Courtroom:17C**
**Daniel Patrick Moynihan**
**United States Courthouse**
**500 Pearl St.**
New York, NY 10007-1312



## Re: Notice of Potential Federal Disability Rights Complaint Franklin Mendez v. City of New York, et al.

Dear Chief Judge, **Laura Taylor Swain**:

Please accept this correspondence as official notice to your court of an alleged ongoing discriminatory violation of the Americans with Disabilities Act, Fair Housing Act, Butler v. NYC decree, and Olmstead v. L.C., 527 U.S. 581 (1999) and other applicable federal disability rights laws against the undersigned, Mr. Franklin Mendez.

As a legally blind individual registered with the New York State Commission for the Blind (#189038), I have been forced to reside in an emergency shelter that lacks adequate accessibility accommodations and support services required for my disability. Details of these discriminatory conditions and failures to accommodate my blindness by New York City and State agencies are outlined in the attached letter.

Despite exhausting administrative remedies and imploring city and state officials to take corrective action, including through the attached letter, I will have no choice but to initiate a federal civil rights lawsuit against the City of New York and State of New York in your court's jurisdiction if the outlined steps to ensure my rights and accommodation needs are not promptly addressed.

Thank you for your attention to this serious matter impacting the rights of a disabled New York resident. I am available to provide any additional information your office may require.

Legal Document Reference: Dated 3-21-24; Subject: Notice of Potential Federal Disability Rights Complaint Franklin Mendez v. City of New York, et al. Addressed to *Chief Judge Laura Taylor Swain* United States District Court Southern District of New York Courtroom: 17C, Daniel Patrick Moynihan, United States Courthouse 500 Pearl St., New York, NY 10007-1312    **1** of 2 pages.

Respectfully,

Franklin Mendez

**CC: Enclosure: Letter to City/State Officials Re: Notice of Alleged Violation of the Americans with Disabilities Act and Fair Housing Act Involving Failure to Accommodate a Legally Blind Individual in New York City Shelter.**

<u>**A copy of this letter has been mailed to all relevant city and state officials.**</u>

Hon. **Jumaane Williams**, Public Advocate, Public Advocate's Office, 260 Broadway, Suite 1001 New York, NY 10007

Hon. **Brad Lander**, Controller, Controller's Office, Municipal Building, 1 Centre Street New York, NY 10007

**Annabel Palma,** Chair and Commissioner, New York City Commission on Human Rights, 22 Reade Street, New York, NY 10007

**Molly Wasow Park** Commissioner New York City Department of Social Services, Human Resources Administration Department of Homeless Services 150 Greenwich St., 40th Floor, New York, NY 1000 7

**Christina Curry** Commissioner Mayor's Office for People with Disabilities 100 Gold Street, 2nd Floor New York, NY 100387

**Diana Ayala** New York City Council Member and Deputy Speaker District Office, East Harlem Office:, 105 East 116th Street, New York, NY 10029

**Maria Torres-Springer** Deputy Mayor Housing Economic Development and Workforce in New York City ffice of the Mayor City Hall Park New York, NY 10007

**Kathy Hochul,** Governor of New York State; NYS State Capitol Building, Albany, NY 12224

FROM:

FRANKLEN MENDEZ
HELP USA SHELTER
C-3-16
W SUNKEN GARDEN LOOP
NEW YORK, NY. 10035



TO:

LAURA TAYLOR SWAIN
CHIEF JUDGE DISTRICT COURT
OF NEW YORK U.S. COURTHOUSE
500 PEARL ST.
NEW YORK, NY. 10007-1312

RECEIVED
SDNY PRO SE OFFICE
2024 MAR -1 AM 11:53
USNPS ENPJ

Pro Se Intake



UNITED STATES POSTAL SERVICE

Retail

RDC 99

10007

U.S.
FCM
NEW
MAI

$