# MEMO ENDORSED

Franklin Mendez

646 641 6805
fmendez3327@gmail.com
Help USA Shelter
Apt. C-3-16
111 Sunken Garden Loop
New York, New York 10035

C/O Pro-Se Office
Honorable Edgardo Ramos
Thurgood Marshall
Court Room 619
United States Courthouse
40 Foley Square, New York, New York 10007

> The Court will address this issue at the preliminary injunction hearing. SO ORDERED.
>
> Edgardo Ramos, U.S.D.J.
> Dated: 5/3/24
> New York, New York

April 29, 2024

Re: *Franklin Mendez v. Molly Wasow Park, and The City of New York, 24-cv-2486 (ER)(BM)*

**Title: Urgent Request to Amend Injunction: Access to Defendants' Specialized Housing Database for 2% Vision/Blind Accessible Apartments**

Dear Honorable Judge Edgardo Ramos,

    Plaintiff, who is blind, is requesting an amendment to the injunction hearing scheduled for May 9th, 2024. This request is a critical component of the federal complaint (see ¶60-87) currently before the court.

    Plaintiff was recently provided with a CityFHEPS housing voucher on April 24, 2024. However, he finds himself in the same predicament of needing to locate housing that is specifically accessible for his blindness, all the while enduring an inaccessible shelter placement and accommodations.

    Despite the diligent efforts of the shelter director and housing specialists who are working feverishly to locate housing suitable for Plaintiff's blindness, they too are stymied and locked out from efficiently identifying available 2% vision-accessible units due to the City's lack of providing access to this specialized database. Plaintiff's protracted seven-(7) month struggle attempting to secure accessible housing before facing homelessness stems from this very same discriminatory practice by the City - the denial of enforcement of federal accessability laws, and systemic denial of access to information about available units meeting federal vision accommodation standards. Accounts from shelter staff make clear that Plaintiff's inability to obtain a housing application or be placed in an appropriate unit during those seven months was a direct consequence of the City failing to provide reasonable accommodations and equal access to this centralized database tracking accessible vacancies. Plaintiff seeks access to the defendants' specialized housing database to identify and secure an apartment that meets the 2% vision/blind accessible requirements mandated by federal law.

    Under federal laws like the *Rehabilitation Act, ADA,* and *Olmstead* decision, the City of New York is required to provide reasonable accommodations and non-discriminatory access to affordable housing for individuals with disabilities. To meet these obligations, the City contracts with and incentivizes construction companies and property management to build a minimum percentage of

dwelling units accessible for mobility (5%) and vision/hearing (2%) impairments.

As the centralized coordinator of this *ADA*-compliant affordable housing development, the City maintains a comprehensive database tracking these specific units and vacancies. However, the housing specialists at shelters like Plaintiff's current placement lack access and training to cross-reference this database against accommodation needs like Plaintiff's blindness.

Plaintiff is therefore unable to efficiently identify and secure available vision-accessible units through the general housing search procedures. Granting Plaintiff access to this centralized database is the only reasonable way to navigate and locate housing that properly accommodates his disability on an equal basis as non-disabled individuals.

**Legal Background**

Under the *Rehabilitation Act of 1973, Section 504*, housing developments receiving federal funding are required to ensure that a minimum of 5% of dwelling units are accessible for people with mobility disabilities and an additional 2% are accessible for people with vision or hearing disabilities *(29 U.S.C. § 794; 24 CFR § 8.22)*. Furthermore, the *Americans with Disabilities Act (ADA)* requires that housing providers make reasonable accommodations to policies, practices, and procedures when necessary to afford individuals with disabilities equal housing opportunities *(42 U.S.C. § 3604(f)(3)(B); 28 CFR § 35.130(b)(7))*. Additionally, the landmark *Olmstead* decision mandates that individuals with disabilities have the right to live in the most integrated setting appropriate to their needs *(Olmstead v. L.C., 527 U.S. 581 (1999))*. The *Fair Housing Act (FHA)* also prohibits discrimination in housing-related transactions based on disability *(42 U.S.C. §§ 3604, 3617)*.

Moreover, the recent pronouncement from the Department of Justice in support of the plaintiff in *Access Living of Metro Chicago, Inc. v. City of Chicago, 372 F. Supp. 3d 663, 667 (N.D. Ill. 2019)*, carries significant weight. The Department of Justice asserts that Chicago's accountability for the accessibility of affordable housing it financially backs sets a crucial precedent. This precedent underscores the obligation of municipalities, such as New York City, to ensure that the structures they finance, whether through *direct construction* or via *partnerships with private developers,* adhere to federal accessibility standards (Refer to the Attachment: *Department of Justice, Statement of Interest of the United States of America, issued on December 12th, 2023,* available at https://www.justice.gov/crt/case/access-living-metropolitan-chicago-inc-v-city-chicago).

The Access Living case is directly analogous to the discrimination Plaintiff has faced in trying to secure accessible affordable housing in New York City. As the court recognized, the plaintiffs in Access Living alleged: '[T]he City offers low-income residents more than 50,000 affordable units in the Program, it has failed to ensure that sufficient units are available to people with disabilities, resulting in Chicagoans with disabilities being forced to live on the street, in their cars or homeless shelters, in nursing homes, or in other inadequate and dangerous housing.' *(Access Living of Metro. Chicago, Inc. v. City of Chicago, 372 F. Supp. 3d 663, 667 (N.D. Ill. 2019) (motion to dismiss denied)* (Attached)).

Similarly here, despite New York City's vast affordable housing, Plaintiff, who is legally blind, has been denied access to sufficient units with the required accommodations for his visual disability. This has forced Plaintiff to endure substandard shelter placements and risk institutionalization and homelessness due to the City's failure to ensure adequate accessible affordable housing as mandated by federal laws like the *ADA, Rehabilitation Act,* and *Fair Housing Act.*

**Defendant's Obligations under Federal Funding**

The Defendant, as recipients of federal funding, are mandated to ensure that individuals with

disabilities are provided reasonable accommodations and equal access to programs and services. *See generally, 160 A.L.R Fed 297 (commenting on the recipient of federal financial assistance and what constitutes a program or activity receiving such assistance for the purposes of Section 504 of the Rehabilitation Act (29 USCA Section 794)*, which prohibits any program or activity receiving financial assistance from discriminating on the basis of disability and applies to states or local government).

**Request to Amend Injunction**

Plaintiff urgently request that the Court amend the injunction to include an order directing the defendants to immediately grant Plaintiff full access to search and filter their database to identify currently available 2% units built to federal vision accommodation standards. Granting Plaintiff access to this centralized database is the only reasonable accommodation to allow him to navigate and secure housing properly suited for his blindness on an equal basis as non-disabled individuals, as stated previously. Without this amended injunctive relief, Plaintiff will continue to face unlawful discrimination and segregation from housing opportunities intended for those with vision disabilities.

This amended relief is crucial as Plaintiff continues facing discriminatory barriers and awaits the Court's ruling on his requested single room placement near medical providers. Ensuring his ability to exercise the rights to accessible, integrated housing through this centralized database is a reasonable accommodation the defendants must provide.

Plaintiff, remains hopeful the parties can resolve this cooperatively.

**Conclusion**

Thank you for your prompt consideration of this urgent and important matter that significantly impacts Plaintiff's rights as a disabled individual. Prompt action to grant the requested amendment is critical to upholding Plaintiff's rights under the *Rehabilitation Act, ADA, FHA* and *Olmstead* decision, and preventing his continued suffering of discriminatory barriers and segregation solely due to his disability as a blind individual. Plaintiff respectfully urges the Court to grant the requested amendment to the injunction to ensure that Plaintiff can access and secure the housing accommodations to which he is legally entitled.

Sincerly Yours;

Franklin Mendez 646 641 6805
fmendez3327@gmail.com
Help USA Shelter
Apt. C-3-16
111 Sunken Garden Loop
New York, New York 10035

**CC:**

Jaimini Vyas Esq.
Government Attorney
New York City Law Department
City of New York
100 Church Street,
New York, New York 10007