Franklin Mendez
Help USA Shelter Apt. C-3-16
111 Sunken Garden Loop
New York, New York 10035
646-641-6805
fmendez3327@gmail.com



May 23, 2024

Honorable Edgardo Ramos
Thurgood Marshall Court Room 619
United States Courthouse
40 Foley Square
New York, New York 10007

**Re: Franklin Mendez v. Molly Wasow Park, and The City of New York, 24-cv-2486 (ER)(BM)**

## Motion to Amend Complaint

Dear Judge Ramos,

    I write to respectfully notify the Court of the plaintiff's intention to amend the complaint in the above-referenced matter. The plaintiff is seeking a 30-day extension for filing the amended complaint, which would make the new due date June 24, 2024.

1. The City's noncompliance with Local Law 25 of 2023 and New York City Administrative Code Chapter 26, Section 26-2602 (Affordable Housing Placement). This law mandates the reporting on the outcomes of affordable housing lotteries administered by the Department of Housing Preservation and Development (HPD) for units designated as accessible for tenants with disabilities.

2. Clarification that the City's affordable and accessible housing program is fundamentally inaccessible to the disabled community. That the City fails to regulate or enforce fair housing laws effectively.

3. Allegations that the plaintiff's current shelter does not provide the necessary accommodations for a blind individual to secure housing upon obtaining a CityFHEPS voucher. Requiring a blind person to navigate this process independently contravenes the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), and the reasonable accommodations to which the plaintiff is already entitled.

Additional Defendants:

1. Commissioner of the Department of Housing Preservation and Development, <u>Adolfo Carrión Jr.</u>;

2. Director of the Shelter, HELP Supportive Employment Center; <u>Adeleke Oniwinde</u>; and,

3. Housing Director, HELP Supportive Employment Center; <u>Mrs. Boteang</u>.

Attached hereto please find: 1) Local Law 25, 2) Section 26-2602 of the Administrative Code, 3) Mrs., Warleny Colon's Letter, CIDNY Bourough Manager, Housing Specialist, 4) Email dated May 18th, 2024, to Jennifer Shaoul, DSS, Executive Director of Disability Affairs, Office of Advocacy, and 5) Email dated May 18th, 2024, to Mathew Manecio, Homeless Service Representative 1, Office of Temporary and Disability Assistance

## <u>Noncompliance with Local Law 25 and Section 26-2602 of the Administrative Code</u>

The City of New York has a legal and moral obligation to provide equal access to affordable housing for all residents, including those with disabilities. Local Law 25 of 2023 and Section 26-2602 of the Administrative Code were enacted to promote transparency and ensure that the affordable housing lottery system is fair and equitable for individuals with disabilities seeking accessible units.

By failing to comply with these laws and neglecting to report on the outcomes of these housing lotteries, the City is violating the rights of New Yorkers with disabilities and potentially allowing discrimination to occur. Without proper reporting, there is no way to verify if people with disabilities are being granted accessible units in an unbiased manner based on their lottery status.

This lack of transparency erodes public trust in the City's commitment to housing equity. If the City continues ignoring its legal obligation, it sends a demoralizing message that the needs of the disability community are not a priority. An open and honest accounting of how these housing lotteries operate is essential to identify any issues and make improvements.

Promoting equality and inclusion are core values New York City espouses. But its failure to follow Local Law 25 and Section 26-2602 betrays those values when it comes to housing for residents with disabilities. Providing safe, affordable, accessible housing opportunities should be a right enjoyed by all New Yorkers.

## <u>City's Failure to Regulate and Enforece Fair Housing Laws</u>

The proposed amendment will also re-emphasize the City's overarching failure to ensure reasonable accommodations for individuals with disabilities in affordable housing programs, despite receiving federal funding. It will outline the defendants' legal obligations under the Fair Housing Act and other regulations, their disregard for agency guidelines on accessibility, and the systemic discrimination this has perpetuated against Mr. Mendez and other disabled individuals.

As evidenced by Mr. Mendez's circumstances and the correspondence from the Center for Independence of the Disabled, New York (CIDNY), the promised access and resources have not materialized. Much like the plaintiffs in Access Living alleged regarding Chicago's affordable housing program, New York City has "failed to ensure that sufficient units are available to people with disabilities," forcing disabled residents like Mr. Mendez into "inadequate and dangerous housing" despite the existence of the aforementioned programs and set-asides.*Access Living of Metro Chicago, Inc. v. City of Chicago, 372 F. Supp. 3d 663 (N.D. Ill. 2019)*.

This striking contradiction between the City's provisions on paper and the discriminatory reality faced by Plaintiff and other disabled individuals further strengthens the merits of this case. As stated by CIDNY Borough Manager Warleny Colón, despite Mr. Mendez diligently submitting applications for accessible "Project Based Section 8 Property/Low-Income Housing Tax Credit Property" and HPD lottery units since 2023 and indicating his need for an accessible apartment, he has yet to receive any response. The plaintiff believes this correspondence from CIDNY corroborates the underlying allegations of discrimination and the defendants' failure to ensure accessible, affordable housing

options for disabled individuals like Mr. Mendez.

**Mr. Mendez's Circumstances**

On April 24, 2024, Plaintiff was granted a CityFHEPS voucher providing $2,700 per month for rent. The voucher program requires recipients to independently locate suitable housing. As a legally blind individual, Plaintiff faces significant challenges in this process, necessitating specific accommodations, including assistance with viewing apartments, negotiating lease terms, and ensuring accessibility standards are met.

On May 16, 2024, Plaintiff sought assistance from the housing director, Mrs. Boteang, who acknowledged his need for help but failed to provide immediate support and asked Plaintiff to return the next day. On May 17, 2024, Mrs. Boteang was unavailable, and Plaintiff was redirected to his case manager, Mr. Malcolm, who refused to assist, citing a lack of specialization.

On May 18, 2024, Plaintiff spoke with Mr. Thomas, the housing specialist, who assured him that assistance was forthcoming from Mrs. Boteang and Director Oniwinde, but no tangible results or clear instructions were provided. Defendants failed to provide the necessary accommodations to Plaintiff, causing significant distress and delaying his ability to secure housing. Defendants' actions and inactions constitute a violation of Plaintiff's rights under the ADA, RA, and FHA.

**Requesting Leave to Amend**

By allowing this amended complaint, the Court can ensure that all of the relevant facts, evidence, legal theories and remedies are properly considered. Granting the plaintiff's requested 30-day extension to amend will not prejudice the defendants and is in the interests of justice.

The issues outlined in this amended pleading cry out for judicial intervention. Only by fully adjudicating the City's alleged failures can the civil rights of disabled New Yorkers like Mr. Mendez be vindicated and the promise of equal access to safe, affordable and accessible housing be realized. The plaintiff respectfully requests that the Court grant this motion to amend the complaint and extend the deadline accordingly.

Sincerely,

Franklin Mendez

CC:
Jaimini Vyas Esq.
Government Attorney
New York City Law Department
100 Church Street
New York, New York 10007

Kristen Clarke, Assistant Attorney General for Civil Rights Rebecca B. Bond, Chief Amanda Maisels, Deputy Chief Jane E. Andersen, Trial Attorney, Civil Rights Division – Disability Rights Section Morris Pasqual, Acting United States Attorney U.S. Department of Justice Civil Rights Division – Disability Rights Section 950 Pennsylvania Avenue, N.W. – 4CON Washington, D.C. 20530

LOCAL LAWS
OF
THE CITY OF NEW YORK
FOR THE YEAR 2023

No. 25

Introduced by Council Members Ayala, Nurse, Krishnan, Abreu, Richardson Jordan, Sanchez, Hanif, Cabán, Holden, Brannan, Narcisse, Dinowitz, Rivera and Gennaro.

A LOCAL LAW

**To amend the administrative code of the city of New York, in relation to reporting on the results of lotteries administered by the department of housing preservation and development for affordable housing units for tenants with disabilities**

*Be it enacted by the Council as follows:*

Section 1. The opening paragraph of subdivision b and subdivision f of section 26-2602 of the administrative code of the city of New York, as added by local law number 217 for the year 2019, are amended to read as follows:

b. The data in such report shall be presented at the citywide, borough and community district levels, with aggregated totals for each of the paragraphs in subdivision d, except that the data responsive to the inquiry specified in paragraph 4 of subdivision d shall be aggregated only at the borough level, *and the data responsive to the inquiry specified in subdivision d-1 shall be presented as otherwise provided in subdivision d-1.* For each required geographic level, data responsive to the inquiries specified in subdivision d shall be disaggregated by the following items:

f. If a category disaggregated in subdivisions b, c [or], d, *or d-1* contains between 0 and 9 applicants, or allows another category to be narrowed to between 0 and 9 applicants, the number shall be replaced with a symbol.

§ 2. Section 26-2602 of the administrative code of the city of New York is amended by adding a new subdivision d-1 to read as follows:

*d-1. In addition to the data provided pursuant to subdivisions b, c and d, the report required by this section shall also include the following data for applicants with a mobility, or vision or hearing, disability who applied through the housing lottery system for affordable housing:*

*1. Data responsive to the inquiry specified in paragraph 1 of subdivision d, disaggregated at the citywide and borough levels by disability status; and*

*2. The number of applicants with a mobility, or vision or hearing, disability who signed a lease for an affordable housing unit that is designated as accessible for a person with such disability, disaggregated only at the borough level.*

§ 3. This local law takes effect immediately.

THE CITY OF NEW YORK, OFFICE OF THE CITY CLERK, s.s.:

I hereby certify that the foregoing is a true copy of a local law of The City of New York, passed by the Council on February 2, 2023 and approved by the Mayor on February 21, 2023.

MICHAEL M. McSWEENEY, City Clerk, Clerk of the Council.

CERTIFICATION OF CORPORATION COUNSEL

I hereby certify that the form of the enclosed local law (Local Law No. 25 of 2023, Council Int. No. 375-A of 2022) to be filed with the Secretary of State contains the correct text of the local law passed by the New York City Council and approved by the Mayor.

STEPHEN LOUIS, Acting Corporation Counsel.

2

5/11/24, 3:56 PM  Case 1:24-cv-02486-ER   Document 21 § 26-2602 Report. Filed 05/30/24   Page 6 of 16



NY  >  New York C...  >  The New Y...  >  Chapter 26: Affordable Housing Placements

## Chapter 26: Affordable Housing Placements

### § 26-2601 Definitions.

For the purposes of this chapter, the following terms have the following meanings:

**Affordable housing unit.** The term "affordable housing unit" means "affordable housing unit" as defined in section 26-2201.

**Area median income.** The term "area median income" means the income limits as defined annually by the United States department of housing and urban development (HUD) for the New York, NY HUD Metro FMR Area (HMFA), as established in section 3 of the housing act of 1937, as amended.

**Department.** The term "department" means the department of housing preservation and development.

**Extremely low income household.** The term "extremely low income household" means a household that has an income of no more than 30 percent of the area median income, adjusted for the size of the household.

**Low income household.** The term "low income household" means a household that has an income of more than 50 percent of the area median income but no more than 80 percent of the area median income, adjusted for the size of the household.

**Middle income household.** The term "middle income household" means a household that has an income of more than 120 percent of the area median income but no more than 165 percent of the area median income, adjusted for the size of the household.

**Moderate income household.** The term "moderate income household" means a household that has an income of more than 80 percent of the area median income but no more than 120 percent of the area median income, adjusted for the size of the household.

**Very low income household.** The term "very low income household" means a household that has an income of more than 30 percent of the area median income but no more than 50 percent of the area median income, adjusted for the size of the household.

(L.L. 2019/217, 12/15/2019, eff. 12/15/2019)

### § 26-2602 Report.

a. No later than September 1, 2021 and on September 1 of each third year thereafter, the department shall submit to the mayor and the council, and publicly post on its website, a report on each lottery for affordable housing units that was administered by or on behalf of the department during the prior three fiscal years, provided that each affordable housing unit available through each such lottery was leased or purchased.

b. The data in such report shall be presented at the citywide, borough and community district levels, with aggregated totals for each of the paragraphs in subdivision d, except that the data responsive to the inquiry specified in paragraph 4 of subdivision d shall be aggregated only at the borough level, and the data responsive to the inquiry specified in subdivision d-1 shall be presented as otherwise provided in subdivision d-1. For each required geographic level, data responsive to the inquiries specified in subdivision d shall be disaggregated by the following items:

1. Applicant household size; and

2. Applicant household income, broken down into bands of extremely low income households, very low income households, low income households, moderate income households and middle income households.

c. Data responsive to the inquiries specified in subdivision d shall be disaggregated at the citywide and borough levels by each of the following items, except that data responsive to the inquiry specified in paragraph 4 of subdivision d shall be disaggregated only at the borough level:

1. Race or ethnicity of applicants, to the extent such information is reported to the department; and

2. Applicant preference category, such as veteran's preference, if any (listing "none" otherwise).

d. As described in subdivisions b and c, data for applicants who had applied through the housing lottery system for affordable housing units shall be provided for each of the following:

1. The number of applications received for affordable housing units;

2. The number of applicants invited to confirm their eligibility for affordable housing units;

3. The number of applicants selected for affordable housing units;

4. The number of applicants who signed leases for affordable housing units; and

5. The number of applicants who were selected for, but declined to sign a lease for, affordable housing units.

d-1. In addition to the data provided pursuant to subdivisions b, c and d, the report required by this section shall also include the following data for applicants with a mobility, or vision or hearing, disability who applied through the housing lottery system for affordable housing:

1. Data responsive to the inquiry specified in paragraph 1 of subdivision d, disaggregated at the citywide and borough levels by disability status; and







| | |
|---|---|
| **MANHATTAN** | 1010 Avenue of the Americas, Suite 301, New York, NY 10018<br>tel: 212.674.2300 fax: 212.254.5953 vp: 646.350.2681 |
| **QUEENS** | 80-02 Kew Gardens Road, Suite 400, Kew Gardens, NY 11415<br>tel: 646.442.1520 fax: 357.561.4883<br>www.cidny.org |

5/14/2024

To Whom It May Concern:

    CIDNY is an information-referral-service organization. The services that we offer are assisting individuals with disabilities with completing applications for most disability-related services. NY Connects at CIDNY does not own apartments for people with disabilities. We connect individuals with housing programs such as New York City Housing Authority, private building lotteries/ and or organizations that own affordable/accessible apartments. We have no control over who is selected or how quickly a response will be provided after applying.

    I am writing on behalf of my client, Franklin Mendez, regarding his need for permanent housing due to his current housing condition. Mr. Mendez and I have submitted many applications for apartments that are part of "Project Base Section 8 Property/ Low-Income Housing Tax Credit Property" since 2023. In the application the future tenants are asked if they desire an apartment with accessible features due to reasonable accommodations. Mr. Mendez is still waiting to hear back from them.

Please reach out with any questions. Thank you for your time regarding this matter.

Sincerely,

Warleny Colón
Borough Manager, NY Connects (Manhattan
Center for Independence of the Disabled, NY
1010 Avenue of the Americas, Suite 301, New York, NY, 10018
Tel/Fax: 1-646-849-8086
https://www.cidny.org/nyconnects/

**Confidentiality Notice**: This communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. If you are <u>not</u> the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited.



**MANHATTAN** | 1010 Avenue of the Americas, Suite 301, New York, NY 10018
tel: 212.674.2300 fax: 212.254.5953 vp: 646.350.2681

**QUEENS** | 80-02 Kew Gardens Road, Suite 400, Kew Gardens, NY 11415
tel: 646.442.1520 fax: 357.561.4883

www.cidny.org

 Gmail                    **Franklin Mendez <fmendez3327@gmail.com>**

# Compliant

4 messages

---

**Franklin Mendez** <fmendez3327@gmail.com>                              Sat, May 18, 2024 at 1:10 PM
To: "Shaoul, Jennifer" <shaoulj@dss.nyc.gov>

Dear Mrs. Shaoul,

I am writing to express my concerns and seek your assistance regarding the difficulties I have encountered in obtaining the necessary support for housing as a legally blind individual.

On April 24, 2024, I was provided a CityFHEPS voucher. Subsequently, on Thursday, May 16, I proactively sought out the housing director, Mrs. Boteang. During our conversation, she acknowledged my need for assistance with filling out forms for supportive housing due to my legal blindness. Despite her assurances that help would be provided, she was unable to reach anyone at the time and asked me to return the next day.

I complied and returned the following day, but unfortunately, Mrs. Boteang was unavailable to see me. I then approached my case manager, Mr. Malcolm, who informed me that this matter was not within his specialization. On Saturday, I spoke with Mr. Thomas, the housing specialist assigned to me. I explained my situation and recounted my conversation with Mrs. Boteang. Mr. Thomas assured me that both Mrs. Boteang and Director Owiendle were working on something specific for me. However, I have yet

to see any tangible results or receive clear instructions on how to proceed with the required forms and the overall process.

Here are some specific instances that highlight my difficulties:

On May 17, despite being asked to return, I was not attended to by Mrs. Boteang as promised.
Mr. Malcolm's refusal to assist, citing a lack of specialization, further delayed the process.
Mr. Thomas's assurances have not materialized into any actionable support.

As a legally blind individual, I rely heavily on the assistance of others to navigate tasks that are beyond my control. The conflicting information and lack of concrete support I have received are causing significant distress and are, in my opinion, a violation of my rights under the ADA (Americans with Disabilities Act), RA (Rehabilitation Act), and Fair Housing laws. This lack of assistance and the subsequent delays could be considered discriminatory and potentially fraudulent, given the obligations of the non-profit shelter operating under a city contract to provide reasonable accommodations.

I am requesting the following actions:

An immediate investigation into the handling of my case.

A detailed timeline and documentation of the housing services provided and the forms completed.
Clear and direct communication regarding the steps being taken to assist me, including specific contacts and deadlines.

Assurance that staff members will be held accountable for any negligence or misinformation.

I am prepared to provide any supporting documentation or witnesses that corroborate my account. Please do not simply take their word for it; accountability is paramount, and no one is above the law.

Thank you for your attention to this matter. I look forward to your prompt response.

Sincerely,

Franklin Mendez

---

**Franklin Mendez** <fmendez3327@gmail.com> Sat, May 18, 2024 at 11:28 PM
To: "Shaoul, Jennifer" <shaoulj@dss.nyc.gov>

[Quoted text hidden]

---

**Franklin Mendez** <fmendez3327@gmail.com> Sat, May 18, 2024 at 11:28 PM
To: "Shaoul, Jennifer" <shaoulj@dss.nyc.gov>

[Quoted text hidden]

---

**Franklin Mendez** <fmendez3327@gmail.com>   Sun, May 19, 2024 at 10:44 AM
To: "Shaoul, Jennifer" <shaoulj@dss.nyc.gov>

 Gmail                         **Franklin Mendez <fmendez3327@gmail.com>**

# Re: Complaint May 18th 2024- Help Sec Shelter Walds Island

1 message

**Franklin Mendez** <fmendez3327@gmail.com>                Sun, May 19, 2024 at 10:36 AM
To: "Manecio, Matthew (OTDA)" <Matthew.Manecio2@otda.ny.gov>

Dear Mr. Mathew,

I am writing to express my concerns and seek your assistance regarding the difficulties I have encountered in obtaining the necessary support for housing as a legally blind individual.

On April 24, 2024, I was provided a CityFHEPS voucher. Subsequently, on Thursday, May 16, I proactively sought out the housing director, Mrs. Boteang. During our conversation, she acknowledged my need for assistance with filling out forms for supportive housing due to my legal blindness. Despite her assurances that help would be provided, she was unable to reach anyone at the time and asked me to return the next day.

I complied and returned the following day, but unfortunately, Mrs. Boteang was unavailable to see me. I then approached my case manager, Mr. Malcolm, who informed me that this matter was not within his specialization. On Saturday, I spoke with Mr. Thomas, the housing specialist assigned to me. I explained my situation and recounted my conversation with Mrs.

Boteang. Mr. Thomas assured me that both Mrs. Boteang and Director Owiendle were working on something specific for me. However, I have yet to see any tangible results or receive clear instructions on how to proceed with the required forms and the overall process.

Here are some specific instances that highlight my difficulties:

On May 17, despite being asked to return, I was not attended to by Mrs. Boteang as promised.
Mr. Malcolm's refusal to assist, citing a lack of specialization, further delayed the process.
Mr. Thomas's assurances have not materialized into any actionable support.
As a legally blind individual, I rely heavily on the assistance of others to navigate tasks that are beyond my control. The conflicting information and lack of concrete support I have received are causing significant distress and are, in my opinion, a violation of my rights under the ADA (Americans with Disabilities Act), RA (Rehabilitation Act), and Fair Housing laws. This lack of assistance and the subsequent delays could be considered discriminatory and potentially fraudulent, given the obligations of the non-profit shelter operating under a city contract to provide reasonable accommodations.

I am requesting the following actions:

An immediate investigation into the handling of my case.

A detailed timeline and documentation of the housing services provided and the forms completed.
Clear and direct communication regarding the steps being taken to assist me, including specific contacts and deadlines.

Assurance that staff members will be held accountable for any negligence or misinformation.

I am prepared to provide any supporting documentation or witnesses that corroborate my account. Please do not simply take their word for it; accountability is paramount, and no one is above the law.

Thank you for your attention to this matter. I look forward to your prompt response.

Sincerely,

Franklin Mendez

On Thu, Apr 4, 2024, 9:56 AM Manecio, Matthew (OTDA) <Matthew.Manecio2@otda.ny.gov> wrote:

> Good morning,
>
> I am following up on the complaint you made regarding your facility. I spoke with the director and he explained the accommodations and assistance that the facility is currently providing to you.
>
> The following information was provided by the director in response to the complaint regarding the lack of accommodations for you.

FROM:

FRANKLIN MENDEZ
HELP USA SHELTER  Apt. 316
111 SUNKEN GARDEN LOOP
NEW YORK, NEW YORK
10035

RECEIVED
SDNY PRO SE OFFICE
2024 MAY 30  AM 10: 07



TO:

HON. EDGARDO RAMOS
THURGOOD MARSHALL COURTROOM 619
UNITED STATES COURTHOUSE
40 FOLEY SQUARE
NEW YORK, N.Y. 10007



Utility Mailer
10 1/2" x 16"

ReadyPost.