UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANKLIN MENDEZ,

Plaintiff,

-against-

MOLLY WASLOW PARK, COMMISSIONER OF
NEW YORK CITY DEPARTMENT OF SOCIAL
SERVICES, and THE CITY OF NEW YORK,

Defendants.

Case No. 24-cv-2486-ER

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR EMERGENCY INTERIM INJUNCTION**

---

**THE HON. SYLVIA O. HINDS-RADIX**
**Corporation Counsel for The City of New York**
**100 CHURCH STREET**
**NEW YORK, NEW YORK 10007**
**Jaimini Vyas**
**212-356-2079**

**Attorney for Defendants**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT

    POINT I

        PLAINTIFF    CANNOT    SATISFY    THE
        STANDARD   TO   OBTAIN   A   PRELIMINARY
        INJUNCTION. ............................................................................ 3

        A.  Plaintiff cannot show a clear or substantial
            likelihood of success on the merits. ....................................... 3

            I.  Plaintiff has failed to plead plausibly his
               conclusory allegation that DHS retaliated
               against him for filing his meritless
               complaint and frivolous motions for
               injunctive relief. ..........................................................10

            II. The Court lacks jurisdiction to address
               Plaintiff's non-meritorious motion for an
               interlocutory injunction because Plaintiff
               failed to exhaust available administrative
               and state remedies. ......................................................11

        B.  Plaintiff cannot make a strong showing of
            irreparable harm. .................................................................. 12

        C.  The public interest is not served by the issuance
            of a preliminary injunction. .............................................. 13

        D.  The balance of hardships does not favor
            Plaintiff. ............................................................................. 14

**Page**

POINT II

    THIS COURT LACKS SUBJECT MATTER JURISDICTION TO COMPEL DHS TO ASSIST PLAINTIFF WITH HIS HOUSING SEARCHES AND APPLICATIONS AT A TIME, PLACE, AND MANNER HE DECREES COMPLIANT WITH THE ADA. ................................................ 16

CONCLUSION ................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**                                                                            **Pages**

*Aid Soc'y. v. Scheinman*,
   53 N.Y.2d 12 (1981) ...................................................................................................16

*Altamore v. Barrios-Paoli*,
   90 N.Y.2d 378 (1997) .................................................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................9, 10

*Ayala v. Berlin*,
   29 Misc. 3d 942 (N.Y. Sup. Ct. 2010) .......................................................................13

*Banks v. Human Res. Admin. & Food & Nutrition Serv.*,
   No. 11-CV-2380, 2013 U.S. Dist. LEXIS 4737 (E.D.N.Y. Jan. 11, 2013) ..............11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................9, 10

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015)..........................................................................................9

*Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transp. Auth.*,
   11 F.4th 55 (2d Cir. 2021) .............................................................................................8

*Brusco v. Braun*,
   84 N.Y.2d 674 (1994) .................................................................................................16

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991)..........................................................................................10

*Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*,
   96 F.4th 351 (2d Cir. 2024) ...........................................................................................3

*Davis v. Lansing*,
   851 F.2d 72 (2d Cir. 1988)..........................................................................................15

*Matter of Douglas v. New York City Board/Department of Educ.*,
   87 A.D.3d 856 (1st Dept. 2011)....................................................................................7

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079 (1995)...........................10

*Gafurova v. Holder*,
   448 Fed. Appx. 139 (2d Cir. 2011)................................................................................7

**Cases**                                                                                                     **Pages**

*Guerrand-Hermes v. Guerrand-Hermes*,
    30 A.D.3d 339 (1st Dept. 2006)......................................................................................7

*Harper v. Angiolillo*,
    89 N.Y.2d 761 (1997) ..............................................................................................16

*Jenkins v. N.Y.C. Dep't of Homeless Servs.*,
    643 F. Supp. 2d 507 (S.D.N.Y. 2009) ....................................................................16

*Jones-Bey v. Dep't of Soc. Servs.*,
    No. 23-CV-8869 (LTS), 2023 U.S. Dist. LEXIS 216737
    (S.D.N.Y. Dec. 5, 2023)......................................................................................11, 12

*Komatsu v. City of N.Y.*,
    No. 20-CV-7046 (ER), 2020 U.S. Dist. LEXIS 235630
    (S.D.N.Y. Dec. 15, 2020)...............................................................................2, 14, 15

*Komatsu v. City of N.Y.*,
    No. 23-CV-5406 (LTS), 2024 U.S. Dist. LEXIS 71351
    (S.D.N.Y. Apr. 15, 2024)........................................................................................11

*Medina v. City of N.Y.*,
    No. 20-CV-3763 (VSB), 2023 U.S. Dist. LEXIS 171593
    (S.D.N.Y. Sep. 26, 2023)...................................................................................13, 14

*Monterroso v. City of N.Y.*,
    2024 U.S. Dist. LEXIS 16889 (S.D.N.Y. Jan. 31, 2024)..........................................8

*N.Y. Civil Liberties Union v. State of New York*,
    4 N.Y.3d 175 (2005) ..........................................................................................15, 16

*Powers v. City of New York*,
    262 A.D.2d 246 (1st Dep't 1999),
    *lv. denied*, 94 N.Y.2d 751 (1999).........................................................................16

*Siewe v. Gonzales*,
    480 F.3d 160 [2d Cir. 2007]....................................................................................7

*Tango v. Tulevech*,
    61 N.Y.2d 34 (1983) ..............................................................................................15

*Tucker Anthony Realty Corp. v. Schlesinger*,
    888 F.2d 969 (2d Cir. 1989)...................................................................................12

*Uppal v. N.Y. State Dep't of Health*,
    756 F. App'x 95 (2d Cir. 2019)...............................................................................12

**Cases**                                                                                    **Pages**

*Vapne v. Eggleston*,
   No. 04-CV-565 (NRB), 2004 U.S. Dist. LEXIS 24147
   (S.D.N.Y. Dec. 1, 2004)...............................................................................11

*Vasquez v. City of N.Y.*,
   No. 21-CV-9555 (LTS), 2022 U.S. Dist. LEXIS 128024
   (S.D.N.Y. July 18, 2022) .............................................................................15

*Matter of Walsh v. La Guardia*,
   269 N.Y. 437 (1936) ....................................................................................16

*Watergate II Apartments v. Buffalo Sewer Authority*,
   46 N.Y.2d 52 (1978) ....................................................................................13

**Statutes**

18 NYCRR 358-6.4 (c) ......................................................................................13

Fed. R. Civ. P. 12(b)(1)......................................................................................12

**Other Authorities**

Devitt, Blackmar and Wolff, "Witness Credibility: Impeachment – Inconsistent
   Statements Or Conduct – Falsus in Uno Falsus in Omnibus," ...................................7

*Federal Jury Practice and Instructions (Civil)*, Vol. 3, Section 73.04...........................7

<u>**PRELIMINARY STATEMENT**</u>

Defendants Molly Waslow Park, Commissioner of the New York City Department of Social Services, and the City Of New York (collectively "Defendants") respectfully submit this Memorandum of Law in opposition to Plaintiff's second frivolous motion for an emergency injunction that alleges: (1) falsely, that he was denied necessary assistance; and (2) in conclusory statements, that he was retaliated against for filing this federal action.

As relief, Plaintiff seeks an order injuncting "all retaliatory actions by the Housing Director and other staff members"; and (2) to establish a regular reporting mechanism to this Court on the implementation of accommodations for him to ensure ongoing compliance—audaciously and obstinately ignoring the Court's instruction that he is required to exhaust all remedies available at the administrative and state court level in order to obtain federal court jurisdiction:

> First, this Court doesn't have jurisdiction unless you have exhausted your administrative remedies in the state system, and what that means in the first instance is that you had to have filed a claim or a complaint with the OTDA. And then if they denied your request, then you had to appeal that determination to a state court pursuant to an Article 78 proceeding. And because you haven't done that, you are not properly in federal court.

Judge Ramos to Mr. Mendez, Tr. May 9, 2024, Hrg., 12:6-13. Plaintiff also seeks what is essentially a writ of mandamus to compel the Department of Homeless Services ("DHS") to assure that it will assist him with searches and applications—in a manner and timeframe that Plaintiff decides is compliant with his belief of what the Americans with Disabilities Act ("ADA") requires—to obtain independent housing, despite this Court explaining to Plaintiff that it lacks jurisdiction to compel DHS to perform a discretionary function:

> And the other reason why I can't grant your request is … because that is a discretionary function that the City has. … So because of that, I can't grant your request for preliminary injunction. So it will be denied.

Judge Ramos to Mr. Mendez, Tr. May 9, 2024, Hrg., 12:14-22 (addressing Plaintiff's demand

that he be housed at a particular shelter of his choosing).

Plaintiff's frivolous motion blatantly ignores the Court's explanation that it lacks jurisdiction to compel discretionary actions by DHS and that Plaintiff is obligated to exhaust administrative remedies to obtain the federal court's jurisdiction over his matter. Plaintiff's second application for emergency injunctive relief must therefore be denied.

Finally, in light of Plaintiff's non-meritorious filings and the obligations in other matters being handled by your undersigned, we respectfully request this Honorable Court to order filing restrictions similar to its order in *Komatsu v. City of N.Y.*, No. 20-CV-7046 (ER), 2020 U.S. Dist. LEXIS 235630, at *4-6 (S.D.N.Y. Dec. 15, 2020). We request that Plaintiff be injuncted from further applications to the Court and directed (again) to exhaust all remedies available at the administrative and state court levels before filing any additional motions—which should not exceed 25 pages—in this matter. Further, we request that, before filing additional pleadings, Plaintiff be required to obtain the Court's written permission by: (1) submitting a one-page "Motion for Leave to File" that explains why he should be permitted to file the letter or motion; and (2) include a one-page statement, made under penalty of perjury, stating that the purpose of his submission is not frivolous or in bad faith, or for any improper purpose, such as to harass or cause unnecessary delay; that the filing complies with this Court's orders, the Federal Rules of Civil Procedure, and this Court's Local Rules; and certify that he has exhausted all existing and applicable administrative and state level remedies. Alternatively, Plaintiff should be required to provide to the Court an affidavit from a reputable attorney opining that Plaintiff's proposed claim is meritorious and ripe for relief in federal court.

**ARGUMENT**

**POINT I**

**PLAINTIFF CANNOT SATISFY THE STANDARD TO OBTAIN A PRELIMINARY INJUNCTION.**

"In general, [a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024).[1] As discussed below, Plaintiff's request must be denied because his motion fails to satisfy the elements required to obtain a mandatory preliminary injunction.

**A.**      **Plaintiff cannot show a clear or substantial likelihood of success on the merits.**

Plaintiff cannot show a likelihood of success on the merits simply because—as demonstrated by the Declaration of Ms. Elizabeth Iannone, Esq., Special Counsel of Disability Affairs at the Office of Legal Affairs at the New York City Department of Social Services ("Iannone Decl.")—he has received assistance from DHS and shelter staff according to standard operating procedures. Indeed, the Iannone Declaration and accompanying exhibits demonstrate that DHS and shelter staff have proactively assisted and cared for Plaintiff with compassion and thoughtfulness and treated him with respect and dignity.

Consequently, Plaintiff has failed to state sufficient facts to allow this Court to infer that his conclusory allegation—that DHS and shelter personnel have retaliated against him for filing this lawsuit—is facially plausible. Additionally, this Court lacks jurisdiction to address either

---

[1] All internal quotation marks and citation omitted unless indicated.

claim because, as before, Plaintiff has failed to exhaust his administrative remedies. Plaintiff alleges, in essence, that he was denied necessary assistance because:

- *Supposedly*, on May 17, 2024, Housing Supervisor Harriet Boateng was unavailable to assist Plaintiff with filling out forms for housing applications and his case manager stated that this task was not within his area of specialization;

- *Supposedly*, Mrs. Boateng, refused to refer Plaintiff to Anthos Home, a supportive housing opportunity located in Brooklyn;

- *Supposedly*, Mrs. Boateng refused to apply for the "SHIP program" on behalf of Plaintiff and he has yet to see tangible results from DHS personnel's efforts to help him; and

- *Supposedly*, HRA 2010e Supportive Housing Program's procedure—that an applicant's priority to obtain a supporting housing placement is reduced if he rejects three housing opportunities that comply with his approved reasonable accommodations—imposes undue pressure and creates a coercive environment.

Plaintiff asserts the meritless allegation that on May 17, 2024, Mrs. Boateng was unavailable to assist Plaintiff with filling out forms for housing applications and his case manager, Mr. Korey Malcolm, explained that this task was not within his area of specialization. In truth, Plaintiff did not speak with either Ms. Boateng or Mr. Malcolm on May 17, 2024. *See* generally, Plaintiff's DHS case file, Iannone Decl., Exhibit "A" providing minutes with dates of every meeting DHS personnel had with Plaintiff.

The previous day, May 16, 2024, Criminal Justice Coordinator ("CJC") Jamell Pollard met with Plaintiff and asked him whether he had any further accommodation needs. Instead of requesting assistance with filling out housing applications, Plaintiff advised CJC Pollard that he did not currently have any accommodation requests but had several questions about permanent

housing. CJC Pollard immediately called the head of housing, Mrs. Boateng, and set up an appointment for her to meet with Plaintiff at 4 p.m. that same day. Mr. Pollard himself attended that 4 p.m. meeting with Plaintiff where Mrs. Boateng answered each of Plaintiff's questions to his satisfaction. Plaintiff then denounced the need for an advocate to view apartments for him and declared that he would be satisfied once the housing team viewed the apartment, deemed it suitable, and described it to him. *See* Iannone Decl., ¶ 4.

Thereafter, on May 29, 2024, Mr. Pollard and Mrs. Boateng again spoke with Plaintiff about his housing needs and to update him on progress being made in his search for permanent housing. At that meeting, Plaintiff was requested to acquire documentation—including, an updated Supplemental Security Income award letter, a psychiatric evaluation, and a medical evaluation—necessary to identify housing programs for which he may qualify. Plaintiff agreed to obtain the necessary evaluations and letters by May 31, 2024. Toward the conclusion of that meeting, Mr. Pollard asked Plaintiff if he had asked all the questions that he wanted to ask and the Plaintiff affirmed that he had voiced all his questions. Plaintiff also confirmed to Mr. Pollard that he had understood all the responses to his questions and the information communicated to him. Finally, Plaintiff was informed that he should direct further questions to Housing Specialist Mr. Lamar Thomas, who had been assigned to Plaintiff's case. *See* Iannone Decl., ¶ 5.

Finally, on June 1, 2024, Mr. Malcolm, Mrs. Boateng, and Mr. Thomas met with Plaintiff for his fortnightly Independent Living Plan ("ILP") review. Plaintiff acknowledged that he had failed to acquire and provide by May 31, the necessary documents required to identify additional housing programs for which he would qualify, and he assured shelter staff that he would obtain those requested evaluations and letters. Critically, Plaintiff did not request assistance with filing housing applications at any of these meetings. To the contrary, Plaintiff *declined* the need for

additional accommodations and reported that he had no additional concerns to share. *See* Iannone Decl., ¶ 6. Alleging falsely now, before the Federal Court, that he had requested and was denied the accommodation of help fill housing applications, is beyond the pale.

It is galling that Plaintiff has alleged, falsely and with impunity, that Housing Supervisor Harriet Boateng refused to refer him to Anthos Home. This frivolous allegation is demonstrably untrue. Mrs. Boateng filed a referral for Plaintiff to Anthos Home on June 18, 2024, before DHS was made aware of Plaintiff's letter-request dated June 20, 2024, demanding this urgent interim injunction and intervention from this Court. In fact, DHS only became aware of Plaintiff's letter request on June 28, 2024, when it was uploaded to the ECF docket (ECF 28). *See* Iannone Decl., ¶ 10.

During a meeting on June 6, 2024, Mrs. Boateng provided Plaintiff extensive details regarding Anthos—a supportive housing opportunity located in Brooklyn. Mrs. Boateng explained to Plaintiff that additional documentation, including a psychiatric evaluation, was needed to apply to the program. *See* Iannone Decl., ¶ 7. Although, on May 29, 2024, Plaintiff had agreed to obtain this necessary documentation by May 31, 2024, *see id.*, ¶ 5, he failed to provide it to shelter personnel until June 15, 2024. *See id.*, ¶ 9. Three days later, on June 18, 2024, Mrs. Boateng contacted a representative from Anthos Home regarding Plaintiff's supportive housing referral, obtained the required referral link to apply on Plaintiff's behalf, and successfully referred Plaintiff to the Anthos Home program where he is waiting for an interview appointment to be scheduled. *See id.*, ¶ 10.

Plaintiff's intentional misrepresentation—that Mrs. Boateng did not make the referral for Plaintiff to Anthos Home, common sense, and the law reflect the principle of "*falsus in uno, falsus in omnibus.*" That is, when an individual knowingly lies or testifies concerning any material

matter, the finder of fact has "a right to distrust such witness' testimony in other particulars and ... *may reject all* the testimony of that witness...." Devitt, Blackmar and Wolff, "Witness Credibility:  Impeachment – Inconsistent Statements Or Conduct – Falsus in Uno Falsus in Omnibus," *Federal Jury Practice and Instructions (Civil)*, Vol. 3, Section 73.04 (emphasis added). This principle has been embraced by New York State and Federal courts in both civil and criminal cases. *See, e.g.*, *Gafurova v. Holder*, 448 Fed. Appx. 139, 140 (2d Cir. 2011) ("the doctrine of *falsus in uno, falsus in omnibus* may be used to 'discredit evidence that does not benefit from corroboration or authentication independent of the petitioner's *own* credibility.'") (quoting *Siewe v. Gonzales*, 480 F.3d 160, 170 [2d Cir. 2007]; emphasis in original); *Matter of Douglas v. New York City Board/Department of Educ.*, 87 A.D.3d 856, 859 (1st Dept. 2011) (applying doctrine of *falsus in uno* to uncorroborated false testimony); *Guerrand-Hermes v. Guerrand-Hermes*, 30 A.D.3d 339, 340 (1st Dept. 2006) (applying *falsus in uno* principle to incredible testimony of the defendant and his father).

Moreover, Plaintiff stated in his June 9, 2024, 1:28 p.m. email to Jennifer Shaoul, Executive Director of Disability Affairs, that "Given the support I already have in the community, I am unsure if additional supportive housing is necessary." ECF 28 at 18. It thus is all the more confounding why Plaintiff has deemed it crucial to impose frivolously on the strained resources of my office and this Honorable Court to seek, *immediately*, placement he considers unnecessary. We would also note that the obligation under the ADA is to provide reasonable accommodations and not *immediate* accommodations, as Plaintiff asserts.

Plaintiff's allegation that Mrs. Boateng refused to apply for the "SHIP program" on his behalf lacks merit and he is not eligible for the program. As discussed above, Plaintiff delayed obtaining a psychiatric evaluation, a document that he knew was necessary to apply for the SHIP

Supportive Housing program. On June 1, 2024, Plaintiff met with and admitted to Mr. Thomas that Mrs. Boateng had previously explained to Plaintiff that he was eligible to apply to the SHIP program. Mr. Thomas asked Plaintiff to provide a psychiatric evaluation, which was required to apply for the SHIP program, and conveyed that DHS staff would help him apply to the program. *See* Iannone Decl., ¶ 6. Subsequently, on June 15, 2024, Plaintiff finally provided to DHS staff with his psychiatric evaluation that was required to help Plaintiff apply for the SHIP program. *See id.*, ¶ 9.

While Plaintiff was able to apply to the "SHIP" Supportive Housing Program, he is not eligible for its services. There are three eligibility requirements for the "SHIP" Supportive Housing Program. Applicants must: (1) be chronically homeless (i.e., in the shelter system for over a year), (2) have a mental illness, and (3) have a chronic health condition. Because Plaintiff's date of entry into the shelter was February 21, 2024 (see Exhibit A at 4), he does not meet the first prong in the above requirements. Therefore, he is not eligible for the "SHIP" Supportive Housing Program. Staff communicates ineligibility for programs or housing opportunities to clients in the ordinary course of business. Meanwhile, shelter staff have continued to assist Plaintiff with applications for supportive housing opportunities for which he is eligible. *See* Iannone Decl., ¶ 12.

Plaintiff is one of approximately 230 persons currently served by shelter staff at Plaintiff's assigned shelter site and one of over 80,000 persons served by DHS overall. He has, is being, and will be served and assisted in the regular course of business according to DHS's ordinary and standard operating procedures, in light of other work responsibilities of personnel, and within a timeframe that comports with the practical realities of bureaucratic administration. *See* Iannone Decl., ¶ 11.

While Plaintiff alleges that he has yet to see tangible results from DHS personnel's efforts to help him, he fails to allege facts sufficient to demonstrate that he was denied meaningful implementation of the accommodation to fill housing application forms due to discrimination based on his blindness. "To determine whether a public entity has failed to make reasonable accommodation, courts look to whether a plaintiff with disabilities as a practical matter was denied meaningful access to services, programs or activities to which he or she was legally entitled." *Monterroso v. City of N.Y.*, 2024 U.S. Dist. LEXIS 16889, at *9 (S.D.N.Y. Jan. 31, 2024) quoting *Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transp. Auth.*, 11 F.4th 55, 62 (2d Cir. 2021). Here, Plaintiff "does not allege facts showing a denial of meaningful access to services on account of Plaintiff's disability." *Id.* at *10. Plaintiff is entitled to help with filling out housing applications but he is not entitled to *tangible results* of those services. After all, DHS does not own or control New York City's market for renting habitation and DHS lacks control over whether the owner of a housing unit makes it available on the rental market and rents it.

Plaintiff's grievance that New York City Human Resources Administration's ("HRA") 2010e Supportive Housing Program's procedure—that an applicant's priority to obtain a supporting housing placement is reduced if he rejects three housing opportunities that comply with his approved reasonable accommodations—imposes undue pressure and creates a coercive environment, is unripe and prematurely before this Court for adjudication. First, Plaintiff must apply for housing units. Second, he must reject three housing units that comply with the reasonable accommodations approved for him. Third, he must then be deprioritized for subsequent units. Fourth, he must then exhaust administrative remedies available through the HRA, an agency independent and separate from the DHS. Fifth, he must appeal an adverse finding through a Fair Hearing before the New York State Office of Temporary and Disability

Assistance ("OTDA"). Sixth, he must further appeal under Article 78 of the New York Civil Practice Law and Rules any adverse decision rendered by the OTDA.

I.     **Plaintiff has failed to plead plausibly his conclusory allegation that DHS retaliated against him for filing his meritless complaint and frivolous motions for injunctive relief.**

Plaintiff has failed to state sufficient facts necessary to allow this Court to find facially plausible his conclusory allegation that DHS and shelter personnel have retaliated against him for filing his meritless lawsuit and frivolous motions for injunctive relief. In his urgent demand for interlocutory injunctive relief, ECF 28, Plaintiff states absolutely no facts demonstrating retaliation. But such factual allegations are necessary "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015). Plausible claims are those alleging "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff speculates that his demands and expectations of what he ought to receive from DHS and shelter staff and in what timeframe have been delayed as a means of retaliation by DHS for his litigating this action. He has not alleged any concrete instances of any retaliation: He provides no descriptions of retaliatory conduct, names of retaliators, and dates and times when this supposed retaliation occurred. But his allegations must be more than speculative or conclusory and must show the grounds upon which he is entitled to relief beyond "labels and conclusions, and a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 555. At a minimum, his pleading must set forth sufficient information for a court to determine whether the allegations support some recognized legal theory, *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), and enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

10

Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a court may not take as true "conclusions of law or unwarranted deductions of fact." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (internal citation omitted), *cert. denied*, 513 U.S. 1079 (1995).

**II.     The Court lacks jurisdiction to address Plaintiff's non-meritorious motion for an interlocutory injunction because Plaintiff failed to exhaust available administrative and state remedies.**

Plaintiff also cannot demonstrate a likelihood of success on the merits because he has failed to exhaust remedies available to him at the administrative and state level to obtain relief for the frivolous allegations asserted in his motion for an interlocutory injunction, ECF 28.

"[W]here a plaintiff alleges a deprivation of property in violation of the due process clause, the federal court's initial inquiry must be whether the state has provided adequate remedies to redress such unlawful acts. If so, there will be no claim before the federal court, whether or not plaintiff took advantage of the state procedure." *Komatsu v. City of N.Y.*, No. 23-CV-5406 (LTS), 2024 U.S. Dist. LEXIS 71351, at *20 (S.D.N.Y. Apr. 15, 2024). Thus, Plaintiff must pursue available state remedies. *See Id.* at *24.

To obtain the Federal Court's jurisdiction over his allegations that he was denied necessary assistance and that he was retaliated against for filing this federal action (as also for the allegations in Plaintiff's First Amended Complaint), Plaintiff must take several steps before he may seek the jurisdiction of this Court. First, Plaintiff must exhaust administrative remedies available through DHS' Office of the Ombudsman. Second, he must appeal any adverse findings through a Fair Hearing before the New York State Office of Temporary and Disability Assistance ("OTDA"). Third, as the Honorable Judge Ramos advised Mr. Mendez at the May 9, 2024, hearing during which the Court denied his unripe motion for a preliminary injunction, "the other

thing … you're required to do under the law is if you get an adverse decision, if the OTDA declines to give you the relief that you sought, then you are required to file an Article 78 proceeding in New York State Court." Tr. May 9, 2024, Hrg., 9:1-5.

"These procedures have been found to be constitutionally sufficient to challenge adverse determinations in connection with government entitlement programs." *Jones-Bey v. Dep't of Soc. Servs.*, No. 23-CV-8869 (LTS), 2023 U.S. Dist. LEXIS 216737, at *7 (S.D.N.Y. Dec. 5, 2023) (citing *Banks v. Human Res. Admin. & Food & Nutrition Serv.*, No. 11-CV-2380, 2013 U.S. Dist. LEXIS 4737 at*3 (E.D.N.Y. Jan. 11, 2013); *Vapne v. Eggleston*, No. 04-CV-565 (NRB), 2004 U.S. Dist. LEXIS 24147 at *5 (S.D.N.Y. Dec. 1, 2004)).

Once again, although "courts liberally construe pleadings prepared by *pro se* litigants and hold them to less stringent standards than formal pleadings drafted by lawyers," the court must dismiss a complaint, "or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Jones-Bey*, No. 23-CV-8869 (LTS), 2023 U.S. Dist. LEXIS 216737, at *1–2. The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *Id.* at *2; Fed. R. Civ. P. 12(b)(1). Here, Plaintiff may wish to withdraw this lawsuit in its entirety and first exhaust remedies at the administrative and state level, as is the proper course.

**B.**     **Plaintiff cannot make a strong showing of irreparable harm.**

Plaintiff has failed to show an actual and imminent—rather than merely speculative—harm, which is fatal to his application. *See Uppal v. N.Y. State Dep't of Health*, 756 F. App'x 95, 96 (2d Cir. 2019) ("Irreparable harm is the single most important prerequisite for injunctive relief, and in the absence of a showing of irreparable harm, a motion for a preliminary injunction should

be denied.") An irreparable harm must be an injury "neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989).

Plaintiff does not articulate how he will be immediately harmed because DHS and shelter staff have not met his demands and expectations of what services and assistance he ought to receive from the agency and when. Indeed, if the Plaintiff truly faced irreparable harm, he would heed this Court's instruction from May 9, 2024, and rush to DHS's Ombudsman and then the ODTA, i.e., forums that have the power and jurisdiction to provide relief for his *supposed* harms, rather than impose upon a Court that nonetheless lacks jurisdiction to provide him with relief. The Court should deny Plaintiff's unwarranted request for protective measures.

**C.    The public interest is not served by the issuance of a preliminary injunction.**

Simply put, Plaintiff cannot demonstrate that the public interest would be served by granting his frivolous demands for urgent injunctive relief in ECF 28, as they are unripe or moot. To the extent he disagrees with the implementation of accommodation requests granted, he must first exhaust his administrative remedies. *See Watergate II Apartments v. Buffalo Sewer Authority*, 46 N.Y.2d 52, 57 (1978) ("It is hornbook law that one who objects to the act of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law. This doctrine furthers the salut[a]ry goals of relieving the courts of the burden of deciding questions entrusted to an agency, preventing premature judicial interference with the administrators' efforts to develop, even by some trial and error, a coordinated, consistent and legally enforceable scheme of regulation and affording the agency the opportunity, in advance of possible judicial review, to prepare a record reflective of its expertise and judgment."); *see also Ayala v. Berlin*, 29 Misc. 3d 942, 947 (N.Y. Sup. Ct. 2010) (recognizing the requirement that petitioner must file a complaint with the Commissioner of OTDA pursuant to 18 NYCRR 358-6.4 (c)). Thus, there is no justifiable public interest served in abandoning the procedure to obtain and

challenge the implementation of reasonable accommodation requests by giving preference to Plaintiff to the detriment of other individuals, including those disabled, who also seek assistance through DHS.

**D.**     **The balance of hardships does not favor Plaintiff.**

As a matter of law, the "Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Medina v. City of N.Y.*, No. 20-CV-3763 (VSB), 2023 U.S. Dist. LEXIS 171593, at *25 (S.D.N.Y. Sep. 26, 2023). Even where an exception applies, the plaintiff "must show that the challenged behavior was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at *25–26. To meet that pleading threshold, Plaintiff must assert facts sufficient to establish that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the … detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at *26.

Plaintiff has not, and cannot, allege facts that establish that any DHS or shelter staff member acted intentionally to retaliate against him or failed to assist him according to DHS's ordinary and standard operating procedures that comport with the practical realities of bureaucratic administration. *See* Iannone Decl., ¶ 11. Thus, the balance of hardships does not favor Plaintiff and the Court should not craft and implement any protective measures for him that would somehow stop the non-existent retaliation and discrimination Plaintiff falsely alleges, or cease the supposed retaliatory actions conjured up by Plaintiff's imagination.

Addressing hardships, in light of Plaintiff's non-meritorious filings and the obligations in other matters being handled by your undersigned, we respectfully request this Honorable Court to

direct Plaintiff to show cause in writing why the Court should not enter an order imposing upon him filing injunctions. As Your Honor has explained, it is appropriate to exercise this "ancient" power to restrict the litigation of abusive and vexatious litigants who have abused their litigation opportunities, as Plaintiff had done in this action. *See Komatsu v. City of N.Y.*, No. 20-CV-7046 (ER), 2020 U.S. Dist. LEXIS 235630, at *2 (S.D.N.Y. Dec. 15, 2020).

We respectfully request that Plaintiff be injuncted from filing any further applications with the Court and directed (again) to exhaust all existing and applicable remedies available at the administrative and state court levels before filing any additional pleadings—which should not exceed 25 pages—in this matter. Further, we request that, before filing additional pleadings, Plaintiff be required to obtain the Court's written permission by: (1) submitting a one-page "Motion for Leave to File" that explains why he should be permitted to file the letter or motion; and (2) include a one-page statement, made under penalty of perjury, stating that the purpose of his submission is not frivolous or in bad faith, or for any improper purpose, such as to harass or cause unnecessary delay; that the filing complies with this Court's orders, the Federal Rules of Civil Procedure, and this Court's Local Rules; and certify that he has exhausted all existing and applicable administrative and state level remedies. Alternatively, Plaintiff should be required to provide to the Court an affidavit from a reputable attorney opining that Plaintiff's proposed claim is meritorious and ripe for relief. *See id.* at *4-5. To that end, we respectfully request that each of Plaintiff's subsequent filings that do not comply with the above filing restrictions be rejected from processing and struck from the docket. *Id.* at *5.

## POINT II

### THIS COURT LACKS SUBJECT MATTER JURISDICTION TO COMPEL DHS TO ASSIST PLAINTIFF WITH HIS HOUSING SEARCHES AND APPLICATIONS AT A TIME, PLACE, AND MANNER HE DECREES COMPLIANT WITH THE ADA.

This court lacks mandamus jurisdiction to compel Defendants to assist Plaintiff with his housing applications and searches at a time, place, and manner Plaintiff desires or decrees appropriate or compliant with his notion of the ADA because when and how DHS and shelter staff help Plaintiff with these tasks are discretionary, not ministerial decisions.[2] "Federal courts have no general power to compel action by state officials." *Vasquez v. City of N.Y.*, No. 21-CV-9555 (LTS), 2022 U.S. Dist. LEXIS 128024, at *9 n.3 (S.D.N.Y. July 18, 2022) (citing *Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir. 1988) (if petitioner "had expressly sought relief in the nature of mandamus or prohibition [as available through an Article 78 proceeding], we would lack jurisdiction")). Separately, even from New York State Courts, such drastic relief is appropriate only in extremely narrow circumstances. As the New York Court of Appeals has stated:

> Mandamus, of course, is an extraordinary remedy that, by definition is available only in limited circumstances. Indeed, mandamus lies to compel the performance of a purely ministerial act where there is a clear legal right to the relief sought.

*See Harper v. Angiolillo*, 89 N.Y.2d 761, 765 (1997); *Altamore v. Barrios-Paoli*, 90 N.Y.2d 378, 385 (1997); *Brusco v. Braun*, 84 N.Y.2d 674, 679 (1994); *Powers v. City of New York*, 262 A.D.2d 246 (1st Dep't 1999), *lv. denied*, 94 N.Y.2d 751 (1999). Mandamus is inappropriate to compel

---

[2] A discretionary act "involves the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result." *N.Y. Civil Liberties Union v. State of New York*, 4 N.Y.3d 175, 183-84 (2005) (citing *Tango v. Tulevech*, 61 N.Y.2d 34, 41 (1983)).

actions that are not required by law. *Matter of Walsh v. La Guardia*, 269 N.Y. 437, 441–442 (1936).

When this relief is sought against a government official, the petitioner must show that the public official has failed to perform a duty enjoined by law over which the official has no discretion at all. *See N.Y. Civil Liberties Union*, 4 N.Y.3d at 183-84 (citing CPLR § 7803(1); *Legal Aid Soc'y. v. Scheinman*, 53 N.Y.2d 12, 16 (1981)). Here, when shelter staff assist Plaintiff with completing housing applications, who assists him, and to what extent a staff member is permitted to do so, is discretionary. Because a plaintiff seeking relief through a mandamus to compel cannot request such relief to enforce the performance of a duty that is discretionary, Plaintiff's request for injunctive relief must be denied. *See id.* "If state law gives government officials discretion to grant or deny a benefit, it is not a protected property interest protected by the Due Process Clause." *Jenkins v. N.Y.C. Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 512 (S.D.N.Y. 2009) (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).

## **CONCLUSION**

For the reasons stated herein, Defendants respectfully request that the Court deny Plaintiff's motion for preliminary injunction. Further, we request the Court to impose upon Plaintiff filing injunctions to prevent additional abuses of the litigation opportunity and grant Defendants such other and further relief as the Court deems just and proper.

Dated:      July 8, 2024
            New York, New York,

                               **HON. SYLVIA O. HINDS-RADIX**
                               *Corporation Counsel of the City of New York*
                               Attorney for Defendants
                               100 Church Street
                               New York, NY 10007
                               212-356-2079


            By:      _____
                     Jaimini A. Vyas
                     *Assistant Corporation Counsel*

cc:      **By ECF and US mail**
         *Pro se* Plaintiff
         Franklin Mendez
         Help USA Shelter
         C-346
         111 Suken Garden Loop
         New York, NY 10035