

| | | |
|---|---|---|
| **MURIEL GOODE-TRUFANT**<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | **Jaimini A. Vyas**<br>*Assistant Corporation Counsel*<br>jvyas@law.nyc.gov<br>212-356-2079 |

February 7, 2025

**BY ECF**

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square, Courtroom 619
New York, NY 10007

    Re: *Franklin Mendez v. Molly W. Park et al.*, 24-cv-2486-ER

Dear Judge Ramos:

  This office represents Defendants Molly Wasow Park, Commissioner of the New York City Department of Social Services ("DSS"); Adolfo Carrión Jr., Commissioner of the New York City Department of Housing Preservation and Development; and The City Of New York (collectively "City Defendants") in the above-captioned action. I write respectfully pursuant to the Court's January 31, 2025 order, Dkt. 53, to respond to Plaintiff's letter request for a hearing. Dkt. 52. For the reasons stated below, Plaintiff's request for a hearing should be denied.

  In Plaintiff's letter request for a hearing, Dkt. 52, he requests the Court to:

- "Compel the defendants to provide a one-bedroom apartment in Manhattan," Dkt. 52 at 3—even though the Court has already stated to Plaintiff that "I don't have the ability to order the City to place you in a particular location, okay, because that is a discretionary function that the City has." Transcript of May 9, 2024, Preliminary Injunction Hearing, ECF 37-1 at 13:4-14:18[1];

---

[1] Cites are to the page numbers assigned by the ECF system.

- "Impose sanctions against the defendants to deter further misconduct and ensure compliance with federal law" without articulating any misconduct or violation of a federal law by City Defendants, Dkt. 52 at 3; and

- "Address the defendants' retaliatory and discriminatory conduct, including their bad-faith offer of a non-compliant studio apartment," *id.*, yet Plaintiff provides no authority that establishes a legal right under the Fair Housing Act or Americans with Disabilities Act to have the City compel third-party landlords to invite him to rent a one-bedroom apartment in Manhattan or to have the City provide one to him as a reasonable accommodation.

In essence, Plaintiff makes conclusory allegations that Defendants engaged in the "deliberate and retaliatory weaponization of [his] blindness to obscure their ongoing violations of the Fair Housing Act (FHA) and the Americans with Disabilities Act (ADA)" by supposedly offering a studio apartment for him to rent. Dkt. 52 at 1. A "retaliation claim that is wholly conclusory may be dismissed on the pleading." *Komatsu v. City of N.Y.*, 2021 U.S. Dist. LEXIS 132991, at *22 (S.D.N.Y. July 16, 2021); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). According to Plaintiff, Defendants' supposed offer to rent a studio apartment "constitutes a blatant abuse of [some] process" that is "inten[ded] to mislead the Court and evade accountability." Dkt. 52 at 2. Plaintiff further contends that by supposedly offering the studio apartment, Defendants have "engaged in deliberate fraud to obscure their harmful practices" employing "similar tactics to conceal their discrimination and perpetuate systemic inequities" and "obscure their systemic violations of federal law" as in "*Philip Morris USA v. United States*, 566 U.S. 447 (2012)," *id.*—a non-existent case that diligent searching by your undersigned counsel has failed to unearth.

1. **This Court should not entertain Plaintiff's request for a hearing because he has not asserted a claim for retaliation and discrimination for which relief can be granted and the Court lacks jurisdiction.**

Plaintiff's argumentative and conclusory allegations obscure any straightforward account of what happened and fail to make a substantial showing about how the offer from a third party of a studio apartment for rent supports his claims of retaliation by City Defendants for reasons having anything to do with this action, fraud, or discrimination in violation of the FHA or ADA. Contrary to Plaintiff's claims, these units are not owned, controlled, or rented out by City Defendants and any personnel employed by the City merely provide the reasonable accommodation of assisting Plaintiff to find and apply for available units on the rental market, including NYC Housing Connect, to accommodate for his visual disability. *See* April 30, 2024 Declaration of Elizabeth Iannone, Esq., Special Counsel of Disability Affairs at the Office of Legal Affairs at the New York City Department of Social Services ("Iannone Decl."), Dkt. 15-1 at 2-3; Encl. Plaintiff has provided no authority that establishes a legal right under the FHA or ADA to have the City compel third-party landlords to invite him to rent a one-bedroom apartment in Manhattan. Separately, Plaintiff cannot demand shelter housing in a one-bedroom apartment in Manhattan because he "does not have a property right to placement in a particular type of shelter under New York law." *Jenkins v. N.Y.C. Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 512 (S.D.N.Y. 2009). "If state law gives government officials discretion to grant or deny a benefit, it is not a protected property

interest protected by the Due Process Clause." *Id.* citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

As the enclosed excerpts from Plaintiff's case file maintained by the NYC Department of Homeless Services demonstrate, Plaintiff has an active CityFHEPS housing voucher. *See* Plaintiff's DHS File, Encl. at 5. "CityFHEPS (the City Fighting Homelessness and Eviction Prevention Supplement) is a rental assistance program that helps individuals and families find and keep housing. CityFHEPS pays part of eligible tenants monthly rent anywhere in New York State for up to five years." NYC Dep't of Soc. Serv., *CityFHEPS*, https://www.nyc.gov/site/hra/help/cityfheps.page (last accessed February 6, 2025). A CityFHEPS voucher is a rental subsidy accepted through the affordable housing lottery. *See* NYC Housing Preservation & Development, *Affordable Housing Guide for People with Disabilities*, 5 (January 2022), https://www.nyc.gov/assets/hpd/downloads/pdfs/services/affordable-housing-guide-for-applicants-with-disabilities.pdf (last accessed February 6, 2025).

"Advertisements for affordable housing developments are on the "Open Lotteries" page of NYC Housing Connect … website at: HousingConnect.nyc.gov." *Id.* at 4. NYC Housing Connect is an "online portal to find and apply for affordable rental and homeownership opportunities across the five boroughs of New York City" offered by third-parties. *Id.* "[T]hese subsidized apartments are available to buy or rent through a randomized lottery system." *Id.* at 3.

"[A]ffordable housing applicants with a disability are not only considered for disability set-aside units. When a household applies for a lottery and has a member with a mobility, vision, or hearing disability, their application is considered for both disability set-aside units and any other units in that development that they qualify for." *Affordable Housing Guide for People with Disabilities* at 4. However, it is a *lottery*, and due to the volume of applications received, it can take several months or longer to hear back about an application and sometimes you might not hear back, even if you qualify:

> **Section 3b. After You Apply**
>
> After the application deadline, all online and paper applications are put into a random order and assigned a log number. Once all log numbers are randomly assigned, the Marketing Agent reviews the applications, beginning with set-aside units for people with disabilities and preferences.
>
> Due to the volume of applications we receive, it can take several months or longer to hear back about your application. Sometimes you might not hear back, even if you qualify.
>
> If you are not selected or do not hear back, keep searching for other apartments and apply when you are ready."

*Id.* at 6.

Assuming arguendo that Plaintiff is alleging a First Amendment retaliation claim for exercising his limited right to petition this Court, he "must show that (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Komatsu v. City of N.Y.*, 2021 U.S. Dist. LEXIS 132991, at *22 (S.D.N.Y. July 16, 2021).[2] This claim would not survive a motion to dismiss with prejudice if brought in a formal pleading because Plaintiff has not—and cannot—plausibly plead that his speech before this Court was chilled and therefore, Plaintiff cannot demonstrate an injury.

Regarding Plaintiff's claims of supposed discrimination, at the outset, Plaintiff would have to obey the Court's instruction to exhaust remedies available at the administrative and state court levels to avail of federal court jurisdiction:

> I have to deny your application for an injunction … [because] this Court doesn't have jurisdiction unless you have exhausted your administrative remedies in the state system… . And because you haven't done that, you are not properly in federal court.

May 9, 2024 Preliminary Injunction Hearing Tr., ECF 37-1 at 13:4-14:18. But Plaintiff has repeatedly refused to pay heed to the Court, claiming that he "is entitled to file a federal lawsuit without the need to exhaust administrative remedies," FAC, ECF 27 at 63, *see also* Plaintiff's Reply to City Defendants' Opposition to Plaintiff's Second Motion for Preliminary Injunction, Dkt. 34 at 10-12. Thus, by Plaintiff's own admission, he is not properly in federal court for a discrimination claim.

### 2. The Court should deny Plaintiff's request for a hearing because he has failed to state a claim for abuse of process.

Plaintiff has failed to state a claim for abuse of process because he does not "allege that the defendant (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Komatsu*, 2021 U.S. Dist. LEXIS 132991, at *25. "[T]he first prong requires the institution of some legal procedure, either civil or criminal." *Id.* Plaintiff "has not alleged that the City or any individual defendants instituted legal process against him regarding these events"; rather, he simply alleges that Defendants offered him a studio apartment for rent. *Id.* "Thus, all abuse of process claims must be dismissed with prejudice." *Id.* at *26.

---

[2] Internal citations and quotation marks omitted unless indicated.

3. **The Court should deny Plaintiff's request for a hearing because he is asserting frivolous complaints to obtain an apartment with separate bedrooms, which he is not entitled to as a reasonable accommodation.**

Plaintiff's claims are frivolous and the Court should deny his request for a hearing because he has not been denied a reasonable accommodation or public benefit. First, unlike the CityFHEPS voucher or placement in a shelter, any rental agreement he executes with a landlord—even one he finds through NYC Housing Connect—and the landlord's providing a unit to Plaintiff are not public assistance benefits. While Plaintiff has not, and cannot, cite any authority imposing a legal obligation upon the City to conjure up in the rental market an apartment that meets his desires, he is welcome to find and rent such an apartment on the market (including NYC Housing Connect) within his budget because "rent should be within maximum limits allowed by your [CityFHEPS] voucher or rental assistance program." *Affordable Housing Guide for People with Disabilities* at 5. Second, even if Plaintiff somehow had a right to the public assistance benefit of being provided housing for rent, he would not be entitled to a single room as a reasonable accommodation for his visual disability, but rather, "reduced density placement in a room with no more than four persons in total." Iannone Decl., Dkt. 15-1 at 3.

Contrary to Plaintiff's baseless complaints, in July of 2024, "the housing team began working on getting him Suitable permanent residence" and "will continue to assist the client with his housing plan until the client has suitable housing." Encl. at 64. Since then, multiple people have been working sincerely and diligently to help Plaintiff obtain housing. *See* Encl. However, Plaintiff "is self-sabotaging every housing opportunity that comes along" by "either fail[ing] to show up for [the viewing] or just blatantly refus[ing] the apartment" claiming it is "too small for his lifestyle" even though it is "suitable for the client's needs and impaired vision [and] enough for a single male or even a family of two." *See* Encl. "Franklin Mendez explained to me that he doesn't care about … [the] DHS rules and regulations [that] all clients must seek and accept the first suitable housing opportunity that comes along" because "he wants what he wants":—"an apartment with separate bedrooms"—"and if he can't get that, then he stated he is going to contact DHS and file another complaint," *id.* at 3-4:

- On July 18, 2024, upon receiving a determination that he was required to provide a recent, updated psychiatric evaluation to determine eligibility for some Supportive Housing opportunities, "**the client was very emotional and refused to accept the outcome**. DSS Dixon sympathizes with the **client's emotional outburst and frustration**; however, still rem[inds] client he has to present in a respectful manner. The client … continued his emotional outburst." *Id.* at 62 (emphasis added).

- "On 10/1/2024 Franklin Mendez was scheduled for his initial housing appointment and to further discuss his housing plan. The client failed to show for his scheduled appointment. HS, Mr. Thomas searched for the client in the facility. The client was not found. HS, Mr. Thomas attempted to contact the client by phone, but it went straight to voicemail. **Upon DHS rules and regulations, all clients must maintain all housing scheduled appointments.**" *Id.* at 41 (emphasis added).

- On October 6, 2024, it was noted that **Plaintiff "missed an important housing tour** with [Volunteers of America] referred by HRA via Supportive Housing on 9/25/2024 at 10:00 am. The site, 22 East 119th Street, NY, 10035, was in the client's preferred borough. The client stated that he … is not interested in rescheduling the viewing." *Id.* at 39 (emphasis added).

- On October 18, 2024, "ADSS Kebe called Mr. Franklin Mendez … [and] informed the client she is aware his borough of preference is Manhattan. ADSS asked Mr. Mendez if he was open to one-bedroom apartments in The Bronx. Mr. Mendez stated he is as long as there is public transportation within close proximity. … ADSS Kebe informed the client he will be referred for apartments in The Bronx, and he will be informed if there are available units and tours." *Id.* at 37.

- That same day, October 18, 2024, "DSS Dixon submitted a client Homeless Housing Application (HHA) for HPD/ DHS set-aside units with disability. Most recently, the housing team and CJC Pollard started exploring supportive housing options. The client's Supportive Housing was rejected due to an outdated Psychiatric Evaluation. However, **our team's dedication to the client's case was evident in the prompt update of the Psychiatric Evaluation and the successful resubmission and approval of the supportive housing application**." *Id.* at 35 (emphasis added).

- "On 10/26/2024 Franklin Mendez was scheduled for his initial housing appointment and to further discuss his housing plan. The client failed to show for his scheduled appointment. HS, Mr. Thomas searched for the client in the facility. The client was not found. HS, Mr. Thomas attempted to contact the client by phone, but it went straight to voicemail. Upon DHS rules and regulations, all clients must maintain all housing scheduled appointments. HS, Mr. Thomas will reschedule the client." *Id.* at 31.

- "On 11/12/2024,… . CM Malcolm asked Mr. Mendez if he was open to one-bedroom apartments in The Bronx. Mr. Mendez stated he is as long as there is public transportation within proximity. … Social services informed the client he will be referred to for apartments in The Bronx and he will be informed if there are available units and tours. **Mr. Mendez was reminded that HELPSEC does not penalize any clients and reminded him that our shared goal is to find him suitable permanent housing.**" *Id.* at 26 (emphasis added).

- On November 28, 2024, it was noted that "The client was recently referred to a scheduled housing tour from provider LUTHERAN SOCIAL SERVICES. The congregate housing site is called Muhlenberg Residence located at 510 ATLANTIC AVENUE, BROOKLYN, NY 11217. The facility has elevators to accommodate the client's needs due to blindness. The scheduled date for the housing tour is December 9th,2024." *Id.* at 22. **Mr. Mendez did appear to view the apartment.** *Id.* at 3.

- "On 1/3/2025 client Franklin Mendez was scheduled to view an apartment coordinated by Elsa Rose Farnam from Anthoshome. The unit is located at 2976 Third Avenue, Bronx, New York, 10455. The client exited the facility early in the morning without waiting for the housing team to escort him to the viewing. HD, Ms. Boateng following up on the outcome of the viewing with Ms. Farnam; and according to Ms. Farnam, Franklin Mendez declined the offer of the studio apartment and stated it was too small and preferred something in Manhattan instead of the Bronx. **Franklin Mendez has rejected several offers of housing and seems to offer additional demands on his failure to accept suitable housing.**" *Id.* at 12 (emphasis added).

- On January 11, 2025, "CM Malcolm reminded the client of his **failure to attend the scheduled house viewing** coordinated by Ms. Elsa Rose Farnam from Anthos home. The unit is located at 2976 Third Avenue, Bronx, New York, 10455. The client declined to comment and stated that he was "not interested". Franklin Mendez has rejected several offers of housing and seems to offer additional demands on his failure to accept suitable housing." *Id.* at 10 (emphasis added).

- "ON 1/21/2025 at 5:55pm, CM Malcolm was escorted by DHSPD Garcia to speak to inform Mr. Franklin Mendez of is upcoming housing viewing on 1/24/2025. The housing viewing is located at 267 Edgecombe Ave. CM Malcolm informed Mr. Mendez to please arrive on time as the viewing starts this week Friday morning at 11:30am on January 24,2025. Mr. HS Thomas/HS Rodriguez will escort and aide the client to his scheduled housing viewing." *Id.* at 9.

- "01/24/2025 11:41:05 AM DSS Dixon requests a DHS case conference for client Franklin Mendez. The **client continues to refuse suitable housing**. Today, the client attended a studio apartment in the Bronx at 267 Edgecombe Ave, New York, NY 10031, with the housing team. The client has various requests for the unit, which have been met with this unit. The unit, which is in Manhattan, is close to all services as requested by the client and close to transportation. With all client requests, **we secured the client a housing unit; however, he denied the unit, posing a challenge to his case**." *Id.* at 5 (emphasis added).

- On January 24, 2025, "Mr. Thomas escorted client Franklin Mendez on a housing tour. The viewing was at 261 Edgecombe Ave, Bronx, Ny 10031. The unit was provided by Anthos homes. **This is the second unit provided by Anthos in a 2-week period.** The first unit was located at 2967 3rd Ave Bronx, NY. *The client rejected the apartment stating it was too small for his lifestyle.* In my professional opinion **both units were well suited for the client**." *Id.* at 3 (emphasis added).

- "On 1/25/2025, CM Malcolm spoke to Mr. Franklin Mendez briefly about his scheduled Cityfheps housing unit that he visited yesterday with HS Thomas on 1/24/2025. According to his decision of the unit, the client stated that he was not interested and declined the unit. **The client's case is considered challenging as

**Mr. Mendez failed to accept the first suitable housing offer, despite all services requested of what he seeks.** DSS Dixon requests a DHS case conference for client Franklin Mendez. **The client continues to refuse suitable housing. With all client requests, we secured the client a housing unit; however, he denied the unit, posing a challenge to his case.**" *Id.* at 5 (emphasis added).

- On January 27, 2025, it was noted that "**The client decision to reject both apartments was very alarming to me because both were a suitable size for a single male**. The apartments had enough space to fit a full-size bed along with additional furniture such as a kitchen table and a dresser draw. The bathroom and tub **were suitable for the client's needs and impaired vision**." *Id.* at 3 (emphasis added).

- On January 27, 2025, it was noted that "The client made a comment stating that he would rather live in the shelter for the next 10 years before he moves into a studio apartment. **The client stated he's not leaving the shelter system until he has an apartment with separate bedrooms.** According to the HD of housing, the client has been provided with several different opportunities from Sept 2024 to current. VOA offered the client multiple housing opportunities starting from 9/20, 9/25, 10/17, 10/29, 11/1, 11/06/24 for the supportive housing unit located at 23 East 119th St. The client was also offered a housing opportunity with Muhlenberg residence located in Brooklyn, NY. **The client failed to attend any of the VOA SRO appointments for the date above.**" *Id.* at 3 (emphasis added).

- That same day, January 27, 2025, it was noted that "Franklin Mendez insisted on being considered for supportive housing and has yet accepted anything from supportive housing. In my opinion, **Franklin Mendez is self-sabotaging every housing opportunity that comes along.** The client made a comment to me and the broker who showed him the unit stating []**he is going to stay in shelter for the next 10 years if we don't find him an apartment with all separate rooms**. However, in the case of the last 2 units, they where [*sic*] suitable enough for a single male or even a family of two." Id. at 3-4 (emphasis added).

- On January 27, 2025, "Mr. Thomas explained to the client that upon DHS rules and regulations all clients must seek and accept the first suitable housing opportunity that comes along. Franklin Mendez explained to me that *he doesn't care about that*." *Id.* at 4 (emphasis added).

- On January 27, 2025, in response to Mr. Thomas, "The client stated **he wants what he wants and if he can't get that, then he stated he is going to contact DHS and file another complaint**. The social service team along with the housing team has done our due diligence in providing Franklin Mendez **with multiple housing opportunities** which **the client either failed to show up for or just blatantly refused**. Hs, Mr. Thomas will continue to help and assist the client with his housing plan until the client has permanent housing." Id. at 4 (emphasis added).

4. **The Court should deny Plaintiff's request for a hearing because it cannot grant any relief based on Plaintiff's unintelligible claim that Defendants are obscuring their actions.**

Plaintiff's additional claim, that "The defendants have attempted to further obscure their actions following the filing of the declaration of borough preference, aiming to give the impression of compliance while failing to fulfill their promise of securing a one-bedroom apartment in Manhattan," Dkt. 52 at 1, is blatantly and demonstrably false considering City Defendants' consistent representations to this Honorable Court. First, City Defendants do not have a legal obligation to obtain a one-bedroom apartment in Manhattan for Plaintiff to rent and have never made such a promise. Second, in response to Plaintiff's request for placement in a single room as a *reasonable accommodation in the shelter system*, he was "Granted an alternative of reduced density placement in a room with no more than four persons in total." Iannone Decl., Dkt. 15-1 at 3. "On April 9, 2024, Plaintiff appealed this decision, which, upon further review, was upheld the same day. 'If more than one accommodation is available to meet the need of the individual making the request, DHS will give primary consideration to the individual's preference, though DHS has the ultimate discretion to select and offer an accommodation that is appropriate and effective for both the Class Member and DHS.' *Butler*, 15-cv-03783-VEC (S.D.N.Y. Nov. 13, 2017), ECF 67 at 8." *Id.* at 3 n.1. "He has not been approved for a single room. That request was denied, and instead [DHS] determined that he was eligible for a reduced density placement," May 9, 2024 Preliminary Injunction Hearing Tr., ECF 37-1 at 11:9-12, "which means that he would be housed with, at most, three other people." *Id.* at 10:22-23. Nevertheless, Plaintiff is welcome to find on the market (including NYC Housing Connect) and rent an apartment in Manhattan with multiple rooms if he finds one within his budget because "rent should be within maximum limits allowed by your [CityFHEPS] voucher or rental assistance program." *Affordable Housing Guide for People with Disabilities* at 5.

5. **Reasonable filing restrictions upon Plaintiff are warranted.**

We respectfully request the Court for the third time now to impose filing restrictions upon Plaintiff. As Your Honor has explained, it is appropriate to restrict the litigation of abusive and vexatious litigants who have abused their litigation opportunities, as Plaintiff had done in this action. *See Komatsu v. City of N.Y.*, No. 20-CV-7046 (ER), 2020 U.S. Dist. LEXIS 235630, at *2 (S.D.N.Y. Dec. 15, 2020).

City Defendants respectfully submit that on October 11, 2024, the Court ordered Plaintiff to file an opposition to Defendants' motion to dismiss by December 2, 2024. Dkt. 42. Then, on November 15, 2024—without seeking our consent or obtaining our reasons for refusing consent, in violation of the Court's Individual Rule 1(E)(v)—Plaintiff requested an extension until March 3, 2025, to file his opposition to City Defendants' pending motion to dismiss. As reason for the request, Plaintiff claimed that the extension "will allow Plaintiff to thoroughly review these critical [new] findings, incorporate the relevant case law, and ensure that my response fully addresses the City's failure to meet its legal obligations under federal accessibility laws." Dkt. 43 at 3. The Court granted his extension request on November 20, 2024.

In the subsequent two months and eighteen days following the extension, instead of perfecting and filing his opposition to our pending motion by researching the law and articulating his arguments as Plaintiff had represented to the Court in Dkt. 43, he has filed five frivolous motions and letters on the Court's docket essentially to obtain a one-bedroom apartment in Manhattan even though he has been told that he has no right to one as a reasonable accommodation:

1. On December 16, 2024, twenty-six days after the November 20, 2024 grant of extension, Plaintiff filed a frivolous letter seeking untimely reconsideration of the Court's prior ruling and sanctions. *See* Dkt. 46.

2. Two days later, on December 18, 2024, Plaintiff filed a frivolous and prolix omnibus "Notice of Motion for Reconsideration Under Federal Rule of Civil Procedure 60(b)(2) and Request for Sanctions Under Federal Rule of Civil Procedure 11 for Violations of ADA, RA, FHA, and Misrepresentation of Federal Compliance." Dkt. 47. On January 8, 2025, Defendants had to file an opposition to this motion. Dkt. 50.

3. The next day, December 19, 2024, Plaintiff filed a frivolous "addendum" to his motion. Dkt. 49.

4. In another 25 days, on January 13, 2025, Plaintiff filed a frivolous "Supplemental Declaration of Franklin Mendez in Support of Motion for Injunction and Sanctions." Dkt. 51.

5. Two weeks later, on January 27, 2025, Plaintiff filed a frivolous letter requesting a hearing for sanctions, Dkt. 52, in response to which this letter was submitted.

We request that Plaintiff be injuncted from filing any further applications in any guise—be they named letters, motions, addendums, updates, urgent missives, declarations, memorandums, or otherwise—with the Court and directed (again) to exhaust all existing and applicable remedies available at the administrative and state court levels before filing any additional pleadings in this case and Federal Court. Further, we request that, before filing additional pleadings, Plaintiff be required to obtain the Court's written permission by: (1) submitting a one-page "Motion for Leave to File" that explains why he should be permitted to file the letter or motion; and (2) include a one-page statement, made under penalty of perjury, stating that the purpose of his submission is not frivolous or in bad faith, or for any improper purpose, such as to harass or cause unnecessary delay. *See Komatsu*, 2020 U.S. Dist. LEXIS 235630, at *4-5. Alternatively, Plaintiff should be required to provide to the Court an affidavit from a reputable attorney opining that Plaintiff's proposed claim is meritorious and ripe for relief. *See id*.

Additionally, Plaintiff should be ordered that, when he is granted approval to file, he must comply with, and certify that his filing complies with, this Court's orders, Your Honor's individual rules, this Court's Local Rules, and the Federal Rules of Civil Procedure; and certify that he has exhausted all existing and applicable administrative and state level remedies. Alternatively, Plaintiff should be required to provide to the Court an affidavit from a reputable attorney opining that Plaintiff's proposed claim is meritorious and ripe for relief. *See id.* at *4-5.

To ensure Plaintiff's compliance, we respectfully request that each of Plaintiff's subsequent filings that do not comply with the above filing restrictions be rejected from processing and struck from the docket. *Id.* at *5. Since Plaintiff is entitled to "notice and an opportunity to be heard," *id.* at *3, we request the Court to direct Plaintiff to show cause in writing why the Court should not enter an order imposing the above reasonable filing restrictions upon him. Plaintiff should be reminded that the Court can exercise against him its "power to impose further sanctions such as costs, attorney fees, and double costs for the filing of frivolous actions, as well as an outright ban on certain proceedings, whether *pro se* or counseled." *Id.* at *2-3.

### 6. Conclusion

For the reasons stated above, the Court should deny Plaintiff's request for a hearing to: address City Defendants' "retaliatory and discriminatory" and "bad-faith" offer of a studio apartment to Plaintiff, compel the City Defendants to provide him a one-bedroom apartment in Manhattan, and impose sanctions against the City Defendants.

Respectfully submitted,

_____
*Jaimini A. Vyas*
*Assistant Corporation Counsel*

cc:  **By email and ECF**
    *Pro se* Plaintiff
    Franklin Mendez
    fmendez3327@gmail.com
    +1 646-641-6805
    Help USA Shelter
    C-346
    111 Suken Garden Loop
    New York, NY 10035

Encl.