"ATTACHED RIDER SETS FORTH RIGHTS AND OBLIGATIONS OF TENANTS AND LANDLORDS UNDER THE RENT STABILIZATION LAW." ("LOS DERECHOS Y RESPONSABILIDADES DE INQUILINOS Y CASEROS ESTÁN DISPONIBLES EN ESPAÑOL").

## STANDARD FORM OF APARTMENT LEASE
## THE REAL ESTATE BOARD OF NEW YORK, INC.

©Copyright 2019 All Rights Reserved. Reproduction in whole or in part prohibited.

REBNY Apt. Stab. 2019 Rev 7.19

**PREAMBLE:** This Lease contains the agreements between You and Owner concerning Your rights and obligations and the rights and obligations of Owner. You and Owner have other rights and obligations which are set forth in government laws and regulations.

You should read this Lease and all of its attached parts carefully. If You have any questions, or if You do not understand any words or statements, get clarification. Once You and Owner sign this Lease You and Owner will be presumed to have read it and understood it. You and Owner admit that all agreements between You and Owner have been written into this Lease. You understand that any agreements made before or after this Lease was signed and not written into it will not be enforceable.

THIS LEASE is made on **March 21, 2025**
between Owner, **Red Apple Surf Realty III, LLC**
whose address is **800 Third Avenue, 5th Floor, New York, NY 10022**
and You, the Tenant, **Franklin Mendez**
whose address is **3514 Surf Avenue, Brooklyn, NY 11224** .

1. **APARTMENT AND USE**    Owner agrees to lease to You Apartment **W17J** in the Building at **2 Ocean Drive, Brooklyn, NY 11224**, Borough of Brooklyn, City and State of New York.

   You shall use the Apartment for living purposes only. The Apartment may be occupied by the tenant or tenants named above and by the immediate family of the tenant or tenants and by occupants as defined in and only in accordance with Real Property Law §235-f.

2. **LENGTH OF LEASE**    The term (that means the length) of this Lease is **1 year** beginning on **May 1, 2025** and ending on **April 30, 2026**.

   If you do not do everything You agree to do in this Lease, Owner may have the right to end it before the above date. If Owner does not do everything that owner agrees to do in this Lease, You may have the right to end the Lease before ending date.

3. **RENT**    Your monthly rent for the Apartment is **$3,303.41 and the preferential rent is $2,696.00** until adjusted pursuant to Article 4 below in addition to the monthly or weekly charge in consideration for Your use and occupation of the of building as set forth on any rider annexed to this Lease. You must pay Owner the rent, in advance, on the first day of each month either at Owner's office or at another place that Owner may inform You of by written notice. You must pay the first month's rent to Owner when You sign this Lease if the lease begins on the first day of the month. If the Lease begins after the first day of the month, Tenant must pay when Tenant signs this Lease one (1) full months' rent and for the next full calendar month Tenant shall pay a prorated rent based on the number of days the Lease began after the first day of the month (for example, if the beginning date of this Lease is the 16th day of the month, Tenant would pay for fifteen (15) out of thirty (30) days, or one-half (1/2), of a full months' rent for the second calendar month). In any event, if the lease commencement date shall not occur on the first day of a calendar month, the term shall also include the remainder of the month in which the lease commencement date occurred. If this Lease is a Renewal Lease, the rent for the first month of this Lease need not be paid until the first day of the month when the renewal term begins. Owner need not give notice each month to Tenant to pay the rent. Rent must be paid in full and no amount subtracted from it.

4. **RENT ADJUSTMENTS**    If this Lease is for a Rent Stabilized apartment, the rent shall be adjusted up or down during the Lease term, including retroactively, to conform to the Rent Guidelines. Where Owner, upon application to the State Division of Housing and Community Renewal ("authorized agency") is found to be entitled to an increase in rent or other relief, You and Owner agree: a. to be bound by such determination; b. where the authorized agency has granted an increase in rent, You shall pay such increase in the manner set forth by the authorized agency; c. except that in the event that an order is issued increasing the stabilization rent because of Owner hardship, You may, within (30) days of your receipt of a copy of the order, cancel your lease on sixty (60) days written notice to Owner. During said period You may continue in occupancy at no increase in rent.

   Pursuant to Real Property Law Section 238-a(2), You shall be obligated to pay a late fee if payment of rent has not been received within five days of the first day of each month. Late fee shall be the lesser of $50.00 or five percent of the monthly rent in addition to legal interest at the maximum amount allowable at law. You will also be liable to pay all bank fees and



1



charges for any check which is dishonored or returned.

5. **SECURITY DEPOSIT**   You are required to give Owner the sum of **$2,696.00** (such amount not to exceed one (1) months' rent pursuant to The Housing Stability and Tenant Protection Act of 2019) when You sign this Lease as a security deposit, which is called in law a trust. Owner will deposit this security at **Bank of America** bank at **1 Fleetway, Scranton, PA 18507**.

If the Building contains six or more apartments, the bank account will earn interest. If You carry out all of your agreements in this Lease, at the end of each calendar year Owner or the bank will pay to Owner 1% interest on the deposit for administrative costs and to You all other interest earned on the security deposit.

If You carry out all of your agreements in this Lease and if You move out of the Apartment and return it to Owner in the same condition it was in when You first occupied it, except for ordinary wear and tear or damage caused by fire or other casualty, Owner will return to You the full amount of the Security Deposit and interest where applicable, within fourteen (14) days after the later of (i) the date this Lease ends, or (ii) the date You vacate the Apartment. However, if You are in default of Your obligations under this Lease and/or there are any damages to the Apartment beyond ordinary wear and tear or damage caused by fire or other casualty, Owner may keep all or part of the Security Deposit to cover missed rent payments, other loses or expenses incurred and reasonable repairs of such damage and Owner shall provide You with an itemized statement indicating the basis for the amount of the Security Deposit retained within the aforementioned fourteen (14) day period.

If Owner sells or leases the building, Owner will turn over your security, with interest, either to You or to the person buying or leasing (lessee) the building within 5 days after the sale or lease. Owner will then notify You, by registered or certified mail, of the name and address of the person or company to whom the deposit has been turned over. In such case, Owner will have no further responsibility to You for the security deposit. The new owner or lessee will become responsible to You for the security deposit.

6. **IF YOU ARE UNABLE TO MOVE IN**   A situation could arise which might prevent Owner from letting You move into the Apartment on the beginning date set in this Lease. If this happens for reasons beyond Owner's reasonable control, Owner will not be responsible for Your damages or expenses, and this Lease will remain in effect. However, in such case, this Lease will start on the date when You can move in, and the ending date in Article 2 will be changed to a date reflecting the full term of years set forth in Article 2. You will not have to pay rent until the move-in date Owner gives You by written notice, or the date You move in, whichever is earlier. If Owner does not give You notice that the move-in date is within 30 days after the beginning date of the term of this Lease as stated in Article 2, You may tell Owner in writing, that Owner has 15 additional days to let You move in, or else the Lease will end. If Owner does not allow You to move in within those additional 15 days, then the Lease is ended. Any money paid by You on account of this Lease will then be refunded promptly by Owner.

7. **CAPTIONS**   In any dispute arising under this Lease, in the event of a conflict between the text and a caption, the text controls.

8. **WARRANTY OF HABITABILITY**

   A. All of the sections of this Lease are subject to the provisions of the Warranty of Habitability Law in the form it may have from time to time during this Lease. Nothing in this Lease can be interpreted to mean that You have given up any of your rights under that law. Under that law, Owner agrees that the Apartment and the Building are fit for human habitation and that there will be no conditions which will be detrimental to life, health or safety.

   B. You will do nothing to interfere or make more difficult Owner's efforts to provide You and all other occupants of the Building with the required facilities and services. Any condition caused by your misconduct or the misconduct of anyone under your direction or control shall not be a breach by Owner.

9. **CARE OF YOUR APARTMENT; END OF LEASE; MOVING OUT**

   A. At all times during the Term of this Lease, Tenant will take good care of the Apartment and will not permit or do any damage to it, except for damage which occurs through ordinary wear and tear. Tenant shall, at Tenant's own cost and expense, make all repairs caused or occasioned by Tenant or Tenant's agents, contractors, invitees, licensees, guests or servants (collectively hereinafter "Tenant Parties"). In addition, Tenant shall promptly notify Owner and/or the Building Superintendent/Building Manager in writing upon the occurrence of any problem, malfunction or damage to the Apartment. Tenant will move out on or before the ending date of this Lease and leave the Apartment in good order and in the same condition as it was when Tenant first occupied it, except for ordinary wear and tear and damage caused by fire or other casualty through no fault of Tenant.

   B. **Cleaning.**   Tenant is required to use only non-abrasive cleaning agents in the Apartment. Tenant is responsible for damage done by use of any improper cleaning agents.

   C. If Tenant fails to maintain the Apartment or make a needed repair or replacement as required hereunder, Owner may





hire a professional and make such maintenance, repairs or replacements at Tenant's sole cost and expense. Owner's reasonable expense will be payable by Tenant to Owner as additional rent within ten (10) business days after Tenant receives a bill from Owner

D. When this Lease ends, Tenant must remove all of Tenant's movable property. Tenant must also remove at Tenant's own expense, any wall covering, bookcases, cabinets, mirrors, painted murals or any other installation or attachment Tenant may have installed in the Apartment, even if it was done with Owner's consent. Tenant must restore and repair to its original condition those portions of the Apartment affected by those installations and removals. Tenant has not moved out until all persons, furniture and other property of Tenant's is also out of the Apartment. If Tenant's property remains in the Apartment after this Lease ends, Owner may either treat Tenant as still in occupancy and charge Tenant for use, or may consider that Tenant has given up the Apartment and any property remaining in the Apartment. In this event, Owner may either discard the property or store it at Tenant's expense. Tenant agrees to pay Owner for all costs and expenses incurred in removing such property. The provisions of this article will continue to be in effect after the end of this Lease.

E. Within a reasonable time after notification of either party's intention to terminate this Lease, unless Tenant provides less than two (2) weeks' notice of Tenant's intention to terminate, Owner shall notify Tenant in writing of Tenant's right to request an inspection before vacating the Apartment. Tenant shall have the right to be present at said inspection. Subject to the foregoing, if Tenant requests such inspection, the inspection shall be made no earlier than two (2) weeks and no later than one (1) week before the end of the tenancy. Owner shall provide at least forty-eight (48) hours written notice of the date and time of the inspection. After the inspection, Owner shall provide Tenant with an itemized statement specifying repairs, cleaning or other deficiencies that are proposed to be the basis of any deductions from the Security Deposit. If Tenant requests such inspection, Tenant shall be given an opportunity to remedy any identified deficiencies prior to the end of the tenancy (or, at Owner's sole option, if Tenant fails to remedy any such identified deficiencies, Owner may remedy such identified deficiencies at Tenant's sole cost and expense as described hereinafter). Any and all repairs or alterations made to the Apartment as a result of said inspection shall be at Tenant's sole cost and expense. Said repairs must be approved by Owner and shall be performed, at Owner's sole option by (i) licensed and adequately insured Tenant's contractors in a good and skillful manner with materials of quality and appearance comparable to existing materials and approved by Owner or (ii) by Owner's contractor(s).

## 10. CHANGES AND ALTERATIONS TO APARTMENT

A. Tenant cannot build in, add to, change or alter, the Apartment in any way, including, but not limited to, installing, changing, or altering any paneling, wallpaper, flooring, "built in" decorations, partitions, railings, paint, carpeting, plumbing, ventilating, air conditioning, electric, or heating systems without first obtaining the prior written consent of Owner which may be withheld in Owner's sole discretion. If Owner's consent is given, the alterations and installations shall become the property of Owner when completed and paid for by Tenant. They shall remain with and as part of the Apartment at the end of the Term. Notwithstanding the foregoing, Owner has the right to demand that Tenant remove the alterations and installations at the end of the Lease Term, and in such case Tenant shall repair all damage resulting from said removal and restore the Apartment to its original condition, including any holes in the wall or damage caused by the removal of any pictures, artwork or TV mounts hung by Tenant on the walls. Any and all work shall be performed by Tenant in accordance with the terms and conditions of this Lease and in accordance with all applicable laws, rules, regulations and codes of any governmental or quasi-governmental entity. Tenant's contractor shall also supply, before performing any such work, a certificate of insurance naming Owner and the Building's managing agent (if applicable) as additional insured.

B. Without Owner's prior written consent, Tenant cannot install or use in the Apartment any of the following: dishwasher machines, clothes washing or drying machines, electric stoves, garbage disposal units, heating, ventilating or air conditioning units or any other electrical equipment which, in Owner's reasonable opinion, will overload the existing wiring installation in the Building or interfere with the use of such electrical wiring facilities by other tenants of the Building. Also, Tenant cannot place in the Apartment water-filled furniture.

C. If a lien is filed on the Apartment or Building due to Tenant's fault, Tenant must promptly pay or bond the amount stated in the lien. Owner may pay or bond the Lien if Tenant fails to do so within ten (10) days after Tenant has written notice about the lien, in which case, Owner's costs shall be paid by Tenant as Additional Rent.

## 11. YOUR DUTY TO OBEY AND COMPLY WITH LAWS; REGULATIONS AND LEASE RULES

A. **Government Laws and Orders.** You will obey and comply (1) with all present and future city, state and federal laws and regulations, including the Rent Stabilization Code and Law, which affect the Building or the Apartment, and (2) with all orders and regulations of Insurance Rating Organizations which affect the Apartment and the Building. You will not allow any windows in the Apartment to be cleaned from the outside, unless the equipment and safety devices required by law are used.

B. **Owner's Rules Affecting You.** You will obey all Owner's rules listed in this Lease and all future reasonable rules of





Owner or Owner's agent. Notice of all additional rules shall be delivered to You in writing or posted in the lobby or other public place in the building. Owner shall not be responsible to You for not enforcing any rules, regulations or provisions of another tenant's lease except to the extent required by law.

C. **Your Responsibility.** You are responsible for the behavior of yourself, of your immediate family, your servants and people who are visiting You. You will reimburse Owner as additional rent upon demand for the cost of all losses, damages, fines, penalties and reasonable legal expenses incurred by Owner because You, members of your immediate family, servants or people visiting You have not obeyed government laws and orders or the provisions and rules of this Lease.

12. **OBJECTIONABLE CONDUCT** As a tenant in the Building, You will not engage in nor permit family members, guests or invitees to engage in objectionable conduct. Objectionable conduct means behavior which makes or will make the Apartment or the Building less fit to live in for You or other occupants. It also means anything which interferes with the right of others to properly and peacefully enjoy their Apartments, or causes conditions that are dangerous, hazardous, unsanitary and detrimental to other tenants in the Building. Objectionable conduct by You gives Owner the right to end this Lease.

13. **SERVICES AND FACILITIES**

   A. **Required Services.** Owner will provide cold and hot water and heat as required by law, repairs to the Apartment, as required by law, elevator service if the Building has elevator equipment, and the utilities, if any, included in the rent, as set forth in sub-paragraph B. You are not entitled to any rent reduction because of a stoppage or reduction of any of the above services unless it is provided by law.

   B. The following utilities are included in the rent: **Heat, hot water, cooking gas**.

   C. If Owner provides electricity or gas and the charge is included in the rent on Page 1, or if You buy electricity or gas from Owner for a separate (sub metered) charge, your obligations are described in the Rider attached to this Lease. If electricity or gas is not included in the rent or is not charged separately by Owner, You must arrange for this service directly with the utility company. You must also pay directly for telephone service if it is not included in the rent.

   D. **Appliances.** Appliances supplied by Owner in the Apartment are for your use. They will be maintained and repaired or replaced by Owner, but if repairs or replacement are made necessary because of your negligence or misuse, You will pay Owner for the cost of such repair or replacement as additional rent.

   E. **Elevator Service.** If the elevator is the kind that requires an employee of Owner to operate it, Owner may end this service without reducing the rent if: (1) Owner gives You 10 days notice that this service will end; and (2) within a reasonable time after the end of this 10-day notice, Owner begins to substitute an automatic control type of elevator and proceeds diligently with its installation. All non-automatic passenger and service elevators shall be operated only by employees of Owner and must not in any event be interfered with by Tenants. The service elevators, if any, shall be used by servants, messengers and trades people for entering and leaving, and the passenger elevators, if any, shall not be used by them for any purpose. Nurses with children, however, may use the passenger elevators.

   F. **Storeroom Use.** If Owner permits You to use any storeroom, laundry or any other facility located in the building but outside of the Apartment, the use of this storeroom or facility will be furnished to You free of charge and at your own risk, except for loss suffered by You due to Owner's negligence. You will operate at your expense any coin operated appliances located in such storerooms or laundries.

14. **INABILITY TO PROVIDE SERVICES** Because of a strike, labor trouble, national emergency, repairs, or any other cause beyond Owner's reasonable control, Owner may not be able to provide or may be delayed in providing any services or in making any repairs to the Building.

   In any of these events, any rights You may have against Owner are only those rights which are allowed by laws in effect when the reduction in service occurs.

15. **ENTRY TO APARTMENT** During reasonable hours and with reasonable notice, except in emergencies, Owner may enter the Apartment for the following reasons:

   A. To erect, use and maintain pipes and conduits in and through the walls and ceilings of the Apartment; to inspect the Apartment and to make any necessary repairs or changes Owner decides are necessary. Your rent will not be reduced because of any of this work, unless required by law.

   B. To show the Apartment to persons who may wish to become owners or lessees of the entire Building or may be interested in lending money to Owner;

   C. For four months before the end of the Lease, to show the Apartment to persons who wish to rent it;

   D. If during the last month of the Lease You have moved out and removed all or almost all of your property from the Apartment, Owner may enter to make changes, repairs, or redecorations. Your rent will not be reduced for that month





and this Lease will not be ended by Owner's entry.

E. If at any time You are not personally present to permit Owner or Owner's representative to enter the Apartment and entry is necessary or allowed by law or under this lease, Owner or Owner's representatives may nevertheless enter the Apartment. Owner may enter by force in an emergency. Owner will not be responsible to You, unless during this entry, Owner or Owner's representative is negligent or misuses your property.

16. **ASSIGNING; SUBLETTING; ABANDONMENT**

    A. Assigning and Subletting. You cannot assign this Lease or sublet the Apartment without Owner's advance written consent in each instance to a request made by You in the manner required by Real Property Law §226-b. and in accordance with the provisions of the Rent Stabilization Code and Law, relating to subletting. Owner may refuse to consent to a lease assignment for any reason or no reason, but if Owner unreasonably refuses to consent to request for a Lease assignment properly made, at your request in writing, Owner will end this Lease effective as of thirty days after your request. The first and every other time you wish to sublet the Apartment, You must get the written consent of Owner unless Owner unreasonably withholds consent following your request to sublet in the manner provided by Real Property Law §226-b. Owner may impose a reasonable credit check fee on You in connection with an application to assign or sublet. If You fail to pay your rent Owner may collect rent from subtenant or occupant without releasing You from the Lease. Owner will credit the amount collected against the rent due from You. However, Owner's acceptance of such rent does not change the status of the subtenant or occupant to that of direct tenant of Owner and does not release You from this Lease.

    B. Abandonment. If You move out of the Apartment (abandonment) before the end of this Lease without the consent of Owner, this Lease will not be ended (except as provided by law following Owner's unreasonable refusal to con- sent to an assignment or subletting requested by You.) You will remain responsible for each monthly payment of rent as it becomes due until the end of this Lease subject to Real Property Law §227-e.

17. **DEFAULT**    You default under the Lease if You act in any of the following ways:

    A. You fail to carry out any agreement or provision of this Lease other than Article 12 of this Lease;

    B. You do not take possession or move into the Apartment 15 days after the beginning of this Lease;

    C. You and other legal occupants of the Apartment move out permanently before this Lease ends.

    If You do default in any one of these ways, other than a default in the agreement to pay rent, Owner may serve You with a written notice to stop or correct the specified default within ten days (the "Cure Period"). You must then either stop or correct the default within the Cure Period, or, if You need more than the Cure Period, You must begin to correct the default within the Cure Period and continue to do all that is necessary to correct the default as soon as possible.

    If You do not stop or begin to correct a default in the Cure Period or if You or other legal occupants or guests engage in Objectionable Conduct as defined in this Lease, Owner shall give You a written notice that this Lease will end seven (7) days after the date the written notice is sent to You. At the end of the seven (7) day period, this Lease will end and You then must move out of the Apartment. If you fail to vacate on the date set forth in the termination notice, Owner shall commence an action or proceeding to recover possession. Even though this Lease ends, You will remain liable to Owner for unpaid rent up to the end of the term of this Lease set forth in Article 2 or any renewal thereof, the fair market value of your occupancy, if any, after the end of the Lease, and damages caused to Owner after that time as stated in Article 18 and as permitted by law.

    If You do not pay your rent when this Lease requires, Owner or Owner's agent shall send you by certified mail a written notice stating the Owner or Owner's agent did not receive payment for rent within five (5) days of the date specified in the Lease. This does not waive, impair or modify Your obligation to pay rent by the first day of each month. If You fail to pay Owner the rent as demanded in a 14 day statutory written rent demand, Owner may commence an action or summary nonpayment eviction proceeding based upon the non-payment of rent.

    Once this Lease has been ended, whether because of default or otherwise, You give up any right You might otherwise have to reinstate or renew the Lease.

18. **REMEDIES OF OWNER AND YOUR LIABILITY**    If this Lease is ended by Owner because of your default, the following are the rights and obligations of You and Owner:

    A. You must pay your rent until this Lease has ended. Thereafter, You must pay an equal amount for what the law calls "use and occupancy" until You actually move out.

    B. Once You are out, Owner may re-rent the Apartment or any portion of it for a period of time which may end before or after the ending date of this Lease. Owner may re-rent to a new tenant at a lesser rent or may charge a higher rent than the rent in this Lease. Notwithstanding the foregoing, if You vacate the Apartment in violation of the terms of this Lease, only then shall Owner use reasonable efforts to re-rent the Apartment at the lesser of the fair market value of



5



the Apartment or the rent paid under this Lease pursuant to Real Property Law §227-e.

C. Whether the Apartment is re-rented or not, You must pay to Owner as damages:
 1. the difference between the rent in this Lease and the amount, if any, of the rents collected in any later lease or leases of the Apartment for what would have been the remaining period of this Lease except to the extent limited by Real Property Law §227-e if applicable; and
 2. Owner's expenses for advertisements, broker's fees and the cost of putting the Apartment in good condition for re-rental; and
 3. Owner's expenses for attorney's fees except in the event of a default judgment.

D. You shall pay all damages due in monthly installments on the rent day established in this Lease. Any legal action brought to collect one or more monthly installments of damages shall not prejudice in any way Owner's right to collect the damages for a later month by a similar action. If the rent collected by Owner from a subsequent tenant of the Apartment is more than the unpaid rent and damages which You owe Owner, You cannot receive the difference. Owner's failure to re-rent to another tenant will not release or change your liability for damages, unless the failure is due to Owner's deliberate inaction.

19. **ADDITIONAL OWNER REMEDIES**   If You do not do everything You have agreed to do, or if You do anything which shows that You intend not to do what You have agreed to do, Owner has the right to ask a court to make You carry out your agreement or to give the Owner such other relief as the Court can provide. This is in addition to the remedies in Article 17 and 18 of this lease.

20. **FEES AND EXPENSES**

A. **Owner's Right.**   You must reimburse Owner for any of the following fees and expenses incurred by Owner:
 1. Making any repairs to the Apartment or the Building, including any appliances in the Apartment, which result from misuse, omissions or negligence by Tenant, the permitted occupants of the Apartment, the Tenant Parties or any other visitors to the Apartment;
 2. Correcting any violations of city, state or federal laws or orders and regulations of insurance rating organization concerning the Apartment or the Building which Tenant, the permitted occupants of the Apartment, the Tenant Parties, or any other persons who visit the Apartment or work for Tenant have caused;
 3. Preparing the Apartment for the next tenant if Tenant moves out of the Apartment before the Lease ending date without Owner's prior written consent;
 4. Any legal fees and disbursements for the preparation and service of legal notices; legal actions or proceedings brought by Owner against Tenant because of a default by Tenant under this Lease; or for defending lawsuits brought against Owner because of the actions of Tenant, the permitted occupants of the Apartment, the Tenant Parties or any other persons who visit the Apartment;
 5. Removing any of Tenant's property from the Apartment after this Lease is ended;
 6. Any miscellaneous charges payable to the Owner for services Tenant requested that are not required to be furnished Tenant under this Lease for which Tenant has failed to pay the Owner and which Owner has paid;
 7. All other fees and expenses incurred by Owner because of the failure to obey any other provisions and agreements of this Lease by Tenant, the permitted occupants of the Apartment, the Tenant Parties or any other persons who visit the Apartment or work for Tenant.

These fees and expenses shall be paid by You to Owner as additional rent within 30 days after You receive Owner's bill or statement. If this Lease has ended when these fees and expenses are incurred, You will still be liable to Owner for the same amount as damages.

B. **Tenant's Right.**   Owner agrees that unless sub-paragraph 4 of this Article 20 has been stricken out of this Lease You have the right to collect reasonable legal fees and expenses incurred in a successful defense by You of a lawsuit brought by Owner against You or brought by You against Owner to the extent provided by Real Property Law§ 234.

21. **PROPERTY LOSS, DAMAGES OR INCONVENIENCE**   Unless caused by the negligence or misconduct of Owner or Owner's agents or employees, Owner or Owner's agents and employees are not responsible to You for any of the following: (1) any loss of or damage to You or your property in the Apartment or the Building due to any accidental or intentional cause, even a theft or another crime committed in the Apartment or elsewhere in the Building; (2) any loss of or damage to your property delivered to any employee of the Building (i.e., doorman, superintendent, etc.); or (3) any damage or inconvenience caused to You by actions, negligence or violations of a Lease by any other tenant or person in the Building except to the extent required by law.

Owner will not be liable for any temporary interference with light, ventilation, or view caused by construction by or in behalf of Owner. Owner will not be liable for any such interference on a permanent basis caused by construction on any parcel of land not owned by Owner. Also, Owner will not be liable to You for such interference caused by the permanent closing,





darkening or blocking up of windows, if such action is required by law. None of the foregoing events will cause a suspension or reduction of the rent or allow You to cancel the Lease.

**22. FIRE OR CASUALTY**

A. If the Apartment becomes unusable, in part or totally, because of fire, accident or other casualty, this Lease will continue unless ended by Owner under C below or by You under D below. But the rent will be reduced immediately. This reduction will be based upon the part of the Apartment which is unusable.

B. Owner will repair and restore the Apartment, unless Owner decides to take actions described in paragraph C below.

C. After a fire, accident or other casualty in the Building, Owner may decide to tear down the Building or to substantially rebuild it. In such case, Owner need not restore the Apartment but may end this Lease. Owner may do this even if the Apartment has not been damaged, by giving You written notice of this decision within 30 days after the date when the damage occurred. If the Apartment is usable when Owner gives You such notice, this Lease will end 60 days from the last day of the calendar month in which You were given the notice.

D. If the Apartment is completely unusable because of fire, accident or other casualty and it is not repaired in 30 days, You may give Owner written notice that You end the Lease. If You give that notice, this Lease is considered ended on the day that the fire, accident or casualty occurred. Owner will refund your security deposit and the pro-rata portion of rents paid for the month in which the casualty happened.

E. Unless prohibited by the applicable insurance policies, to the extent that such insurance is collected, You and Owner release and waive all right of recovery against the other or anyone claiming through or under each by way of subrogation.

**23. PUBLIC TAKING**    The entire building or a part of it can be acquired (condemned) by any government or government agency for a public or quasi-public use or purpose. If this happens, this Lease shall end on the date the government or agency take title, You shall have no claim against Owner for any damage resulting; You also agree that by signing this Lease, You assign to Owner any claim against the Government or Government agency for the value of the unexpired portion of this Lease.

**24. SUBORDINATION CERTIFICATE AND ACKNOWLEDGEMENTS**    All leases and mortgages of the Building or of the land on which the Building is located, now in effect or made after this Lease is signed, come ahead of this Lease. In other words, this Lease is "subject and subordinate to" any existing or future lease or mortgage on the Building or land, including any renewals, consolidations, modifications and replacements of these leases or mortgages. If certain provisions of any of these leases or mortgages come into effect, the holder of such lease or mortgage can end this Lease. If this happens, You agree that You have no claim against Owner or such lease or mortgage holder. If Owner requests, You will sign promptly an acknowledgement of the "subordination" in the form that Owner requires.

You also agree to sign (if accurate) a written acknowledgement to any third party designated by Owner that this Lease is in effect, that Owner is performing Owner's obligations under this Lease and that you have no present claim against Owner.

**25. TENANT'S RIGHT TO LIVE IN AND USE THE APARTMENT**    If You pay the rent and any required additional rent on time and You do everything You have agreed to do in this Lease, your tenancy cannot be cut off before the ending date, except as provided for in Articles 22, 23, and 24.

**26. BILLS AND NOTICE; ELECTRONIC SIGNATURES**

A. **Notices to You.**    Any notice from Owner or Owner's agent or attorney will be considered properly given to You if it (1) is in writing; (2) is signed by or in the name of Owner or Owner's agent; and (3) is (a) addressed to You at the Apartment and delivered to You personally or sent by registered or certified mail to You at the Apartment or (b) sent to You electronically to an email address You have provided to Owner or an email address from which You communicated by email to Owner. The date of service of any written notice by Owner to You under this Lease is the date of delivery or mailing of such notice.

B. **Notices to Owner.**    If You wish to give a notice to Owner, You must write it and deliver it or send it by registered, or certified mail to Owner at the address noted on page 1 of this Lease, or at another address of which Owner or Agent has given You written notice.

C. An electronic signature on this Lease, rider or any renewal of Owner or Tenant shall be deemed an original document and a binding signature pursuant to the Electronic Signatures and Records Act of the State Technology Law.

**27. NO SHORT-TERM RENTAL**    Under no circumstances shall Tenant put a listing for the Apartment on Airbnb or for other similar short term rental (i.e., a rental for less than thirty (30) days), or use the Apartment for same. If Tenant does so, Owner has the right to immediately terminate this Lease.

TENANT ACKNOWLEDGES AND AGREES THAT THE FOREGOING IS A MATERIAL INDUCEMENT FOR OWNER TO ENTER INTO THIS LEASE, AND BUT FOR SAID COVENANT, OWNER WOULD NOT HAVE EXECUTED THIS LEASE





AGREEMENT. IF TENANT DISREGARDS THIS AGREEMENT, IN ADDITION TO THE RIGHT OF INJUNCTION, AND THE RIGHT TO TERMINATE THIS LEASE ON SEVEN (7) DAYS' WRITTEN NOTICE TO TENANT WITHOUT ANY RIGHT TO A CURE PERIOD, AND ANY AND ALL REMEDIES AVAILABLE UNDER THIS LEASE AND AT LAW OR EQUITY, TENANT SHALL ALSO BE RESPONSIBLE FOR ANY AND ALL FINES AND PENALTIES IMPOSED BY ANY GOVERNMENTAL OR QUASI-GOVERNEMENTAL AGENCY OR BODY.

28. **GIVING UP RIGHT TO TRIAL BY JURY AND COUNTERCLAIM**   Both You and Owner agree to give up the right to a trial by jury in a court action, proceeding or counter claim on any matters concerning this Lease, the relationship of You and Owner as Tenant and Landlord or your use or occupancy of the Apartment. This agreement to give up the right to a jury trial does not include claims for personal injury or property damage.

   If Owner begins any court action or proceeding against You which asks that You be compelled to move out, You cannot make a counterclaim unless You are claiming that Owner has not done what Owner is supposed to do about the condition of the Apartment or the Building.

29. **NO WAIVER OF LEASE PROVISIONS**

   A. Even if Owner accepts your rent or fails once or more often to take action against You when You have not done what You have agreed to do in this Lease, the failure of Owner to take action or Owner's acceptance of rent does not prevent Owner from taking action at a later date if You again do not do what You have agreed to do.

   B. Only a written agreement between You and Owner can waive any violation of this Lease.

   C. If You pay and Owner accepts an amount less than all the rent due, the amount received shall be considered to be in payment of all or a part of the earliest rent due. It will not be considered an agreement by Owner to accept this lesser amount in full satisfaction of all of the rent due.

   D. Any agreement to end this Lease and also to end the rights and obligations of You and Owner must be in writing, signed by You and Owner or Owner's agent. Even if You give keys to the Apartment and they are accepted by any employee, or agent, or Owner, this Lease is not ended.

30. **CONDITION OF THE APARTMENT; APARTMENT RENTED "AS IS"**   By signing this Lease Tenant acknowledges that Owner, Owner's representatives or superintendent has not made any representations or promises with respect to the Building or the Apartment except as herein expressly set forth. After signing this Lease but before Tenant begins occupancy, Tenant shall have the opportunity to inspect the Apartment with Owner or Owner's agent to determine the condition of the Apartment. If Tenant requests such inspection, the parties shall execute a written agreement before Tenant begins occupancy of the Apartment attesting to the condition of the Apartment and specifically noting any existing defects or damages. Before taking occupancy of the Apartment, Tenant has inspected the Apartment (or Tenant has waived such inspection) and Tenant accepts it in its present condition "as is," except for any condition which Tenant could not reasonably have seen during Tenant's inspection. Tenant agrees that Owner has not promised to do any work in the Apartment except as specified in a rider to be annexed hereto (if any) and made apart hereof.

31. **RENT INCREASE FOR MAJOR CAPITAL IMPROVEMENT**   Owner advises you that an application for increase in stabilized rent on the ground of a building-wide major capital improvement dated _____ Docket No. _____ is now pending before the State Division of Housing and Community Renewal ("Agency"). Such application involves the following major capital improvements which are now completed or in progress:

   _____

   You agree that the stabilized rent herein may be increased during the term of this lease by reason of such improvement as of a date and in the amount permitted by an order from the Agency.

32. **DEFINITIONS**

   A. **Owner:** The term "Owner" means the person or organization receiving or entitled to receive rent from You or the Apartment at any particular time other than a rent collector or managing agent of Owner. "Owner" includes the owner of the land or Building, a lessor, or sublessor of the land or Building and a mortgagee in possession. It does not include a former owner, even if the former owner signed this Lease.

   B. **You:** The Term "You" means the person or persons signing this Lease as Tenant and the successors and assigns of the signer. This Lease has established a tenant-landlord relationship between You and Owner.

33. **SUCCESSOR INTERESTS**   The agreements in this Lease shall be binding on Owner and You and on those who succeed to the interest of Owner or You by law, by approved assignment or by transfer.

34. **PUBLIC ACCESS WAYS**

   A. Tenant shall not block or leave anything in or on fire escapes, the sidewalks, entrances, driveways, elevators, stairways, or halls. Public access ways shall be used only for entering and leaving the Apartment and the Building.



8



Only those elevators and passageways designated by Owner can be used or deliveries.

B. Baby carriages, bicycles or other property of Tenant shall not be allowed to stand in the halls, passageways, public areas or courts of the Building.

35. **LAUNDRY**   Laundry and drying apparatus, if any, shall be used by Tenant in the manner and at the times that the superintendent or other representative of Owner may direct. Tenant shall not dry or air clothes on the roof, balcony, terrace or outside the windows of Apartment.

36. **KEYS AND LOCKS**   Owner may retain a pass key to the Apartment. Tenant may install on the entrance of the Apartment an additional lock of not more than three inches in circumference. Tenant may also install a lock on any window but only in the manner provided by law. Immediately upon making any installation of either type, Tenant shall notify Owner or Owner's agent and shall give Owner or Owner's agent a duplicate key. If changes are made to the locks or mechanism installed by Tenant, Tenant must deliver keys to Owner. At the end of this Lease, Tenant must return to Owner all keys either furnished or otherwise obtained. If Tenant loses or fails to return any keys which were furnished to Tenant, Tenant shall pay to Owner the cost of replacing them.

37. **NOISE**   Tenant, Tenant Parties and permitted occupants shall not make or permit any disturbing noises in the Apartment or Building or permit anything to be done that will interfere with the rights, comforts or convenience of other tenants and shall not play a musical instrument or operate or allow to be operated a phonograph, radio or television set so as to disturb or annoy any other tenant in the Building.

38. **NO PROJECTIONS**   An aerial may not be erected on the roof or outside wall of the Building without the written consent of Owner. Also, awnings or other projections shall not be attached to the outside walls of the Building or to any balcony or terrace.

39. **NO PETS**   Dogs or animals of any kind shall not be kept or harbored in the Apartment, unless in each instance it be expressly permitted in writing by Owner. This consent, if given, can be taken back by Owner at any time for good cause on reasonably given notice. Unless carried or on a leash, a dog shall not be permitted on any passenger elevator or in any public portion of the building. Also, dogs are not permitted on any grass or garden plot under any condition. BECAUSE OF THE HEALTH HAZARD AND POSSIBLE DISTURBANCE OF OTHER TENANTS WHICH ARISE FROM THE UNCONTROLLED PRESENCE OF ANIMALS, ESPECIALLY DOGS, IN THE BUILDING, THE STRICT ADHERENCE TO THE PROVISIONS OF THIS RULE BY EACH TENANT IS A MATERIAL REQUIREMENT OF EACH LEASE. TENANT'S FAILURE TO OBEY THIS RULE SHALL BE CONSIDERED A SERIOUS VIOLATION OF AN IMPORTANT OBLIGATION BY TENANT UNDER THIS LEASE. OWNER MAY ELECT TO END THIS LEASE BASED UPON THIS VIOLATION.

40. **MOVING**   Tenant can use the elevator to move furniture and possessions only on designated days and hours. Owner shall not be liable for any costs, expenses or damages incurred by Tenant in moving because of delays caused by the unavailability of the elevator.

41. **FLOORS**   Apartment floors shall be covered with rugs or carpeting to the extent of at least 80% of the floor area of each room excepting only kitchens, pantries, bathrooms and hallways. The tacking strip for wall-to-wall carpeting will be glued, not nailed to the floor.

42. **COUNTERPARTS**   This Lease may be executed in any number of identical counterparts and by scanned or facsimile signature, and each counterpart hereof shall be deemed to be an original instrument, but all counterparts hereof taken together shall constitute but a single instrument.

43. **GARBAGE, REFUSE AND RECYLCLING**   Tenant shall comply with the rules and regulations of the Building in all respects, including, but not limited to, those regarding garbage and recycling laws. Tenant shall not place any large articles outside of the Apartment except in compliance with the rules and regulations of the Building in all respects. Carpets, rugs or other articles shall not be hung or shaken out of any window of the Building. Tenant shall not sweep or throw or permit to be swept or thrown any dirt, garbage or other substances out of the windows or into any of the halls, elevators or elevator shafts.

44. **TERRACE/BALCONY (IF APPLICABLE)**   All of the terms and conditions of this Lease apply to the terrace, balcony and/or backyard (as applicable). Tenant's use of the terrace or balcony must comply with any rules that may be provided to Tenant by Owner. Tenant shall clean the terrace or balcony and keep the terrace or balcony free from snow, ice, garbage and other debris. No cooking is allowed on the terrace or balcony except as may be otherwise permitted by law. Tenant may not install a fence or any addition on the terrace or balcony. Tenant is responsible for making all repairs to the terrace or balcony if caused by Tenant, the Tenant Parties or any other visitor to the Apartment, at Tenant's sole expense.

45. **TOILETS/PLUMBING FIXTURES**   The toilets and plumbing fixtures shall only be used for the purposes for which they were designed or built for. No feminine hygiene products or, sweepings, rubbish bags, acids may be discarded in the toilets or plumbing fixtures.

 

46. **EMERGENCIES**   Tenant will provide Owner with list of persons to contact in the event of an emergency. Emergencies include, but are not limited to: health and safety of Tenant or guests, water damage or fire, or unauthorized persons attempting entry into the Apartment without Owner's knowledge.

47. **MOVING IN, VACATING APARTMENT AND TERMINATION**
    A. Should Owner become concerned with the inadequate care and/or supervision of Tenant's moving company's crew, Tenant shall instruct moving personnel to comply with Owner's reasonable request for added protection throughout the Apartment. All moving personnel must be fully insured and reasonable proof of such insurance must be supplied to Owner before moving will be permitted on or in the Apartment.
    B. In the course of Tenant's moving in, out or having items delivered to the Apartment, should there be any damage to the halls, doors or any other part of the Apartment or the Building, Tenant shall be responsible to pay for the repair of such damage.

48. **LEAD BASED PAINT**   Owner and Tenant shall sign and complete the lead-based paint and/or lead-based hazard disclosure annexed as a rider to this Lease.

49. **WINDOW GUARDS**   Simultaneously with the execution of this Lease, Tenant shall complete and deliver to Owner a notice with respect to the installation of window guards in the Apartment in the form required by the City of New York annexed as a rider attached to this Lease. Tenant acknowledges that it is a violation of law to refuse, interfere with installation, or remove window guards where required.

50. **BED BUG DISCLOSURE**   Tenant and Owner shall sign and complete the disclosure of bedbug infestation history annexed as a rider attached to this Lease.

51. **SPRINKLER DISCLOSURE**   Tenant and Owner shall sign and complete the sprinkler disclosure annexed as a rider to this Lease.

52. **OCCUPANCY NOTICE FOR INDOOR ALLERGEN HAZARDS**   Owner shall complete and deliver to Tenant the Occupancy Notice for Indoor Allergen Hazards annexed as a rider attached to this Lease. Owner acknowledges that it has delivered to Tenant "What Every Tenant Should Know About Indoor Allergens" and Tenant acknowledges receipt of such notice.

53. **STOVE KNOB COVERS**   Simultaneously with the execution of this Lease, Tenant shall complete and deliver to Owner the Annual Notice for Tenants in Multiple Dwelling Units with gas-powered stoves annexed as a rider attached to this Lease.

54. **SMOKING POLICY**   Owner has attached as a rider the smoking policy for the Building.

**SIGNATURES CONTINUED ON NEXT PAGE**




TO CONFIRM OUR AGREEMENTS, OWNER AND YOU RESPECTIVELY SIGN THIS LEASE AS OF THE DAY AND YEAR FIRST WRITTEN ON PAGE 1.

BY: RED APPLE SURF REALTY III, LLC

_____    _____
(Landlord)                                 Date

_____/s/ Franklin Mendez_____    _____
Franklin Mendez (Tenant)                   Date


